1  Stephen P. Berzon (SBN 46540)
   Scott A. Kronland (SBN 171693)
2  Jonathan Weissglass (SBN 185008)
   Linda Lye (SBN 215584)
3  Danielle E. Leonard (SBN 218201)
   ALTSHULER BERZON LLP
4  177 Post Street, Suite 300
   San Francisco, CA 94108
5  Telephone: (415) 421-7151
   Facsimile: (415) 362-8064
6  Email: skronland@altshulerberzon.com
   Email: llye@altshulerberzon.com
7  Email: dleonard@altshulerberzon.com

8  *Attorneys for Plaintiffs*

9  Jonathan P. Hiatt (SBN 63533)
   James B. Coppess (*Pro Hac Vice* Application forthcoming)
10 Ana L. Avendaño (SBN 160676)
   AFL-CIO
11 815 Sixteenth Street, N.W.
   Washington, D.C. 20006
12 Telephone: (202) 637-5053
   Facsimile: (202) 637-5323
13 Email: aavendan@aflcio.org

14 *Attorneys for Plaintiff AFL-CIO*

15 (Counsel list continued on next page)

16              UNITED STATES DISTRICT COURT

17              NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 18 AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS; 19 SAN FRANCISCO LABOR COUNCIL; SAN FRANCISCO BUILDING AND CONSTRUCTION 20 TRADES COUNCIL; and CENTRAL LABOR COUNCIL OF ALAMEDA COUNTY, 21      Plaintiffs, 22   v. 23 MICHAEL CHERTOFF, Secretary of Homeland Security; 24 DEPARTMENT OF HOMELAND SECURITY; JULIE MYERS, Assistant Secretary of Homeland 25 Security; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; MICHAEL ASTRUE, Commissioner 26 of Social Security; and SOCIAL SECURITY ADMINISTRATION, 27      Defendants. 28 | Case No. _____ **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, Case No. _____

(Counsel list continued from first page)

Linton Joaquin (SBN 73547)
Marielena Hincapi (SBN 188199)
Monica T. Guizar (SBN 202480)
NATIONAL IMMIGRATION LAW CENTER
3435 Wilshire Blvd., Suite 2850
Los Angeles, CA 90010
Telephone: (213) 674-2850
Facsimile: (213) 639-3911
Email: guizar@nilc.org

Lucas Guttentag (SBN 90208)
Jennifer C. Chang (SBN 233033)
Mónica M. Ramírez (SBN 234893)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
Immigrants' Rights Project
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0770
Facsimile: (415) 395-0950
E-mail: jchang@aclu.org

Omar C. Jadwat (*Pro Hac Vice* Application forthcoming)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2620
Facsimile: (212)-549-2654
Email: ojadwat@aclu.org

Alan L. Schlosser (SBN 49957)
Julia Harumi Mass (SBN 189649)
ACLU FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-1478
E-mail: aschlosser@aclu.org

*Attorneys for Plaintiff Central Labor Council of Alameda County*

David A. Rosenfeld (SBN 58163)
Manjari Chawla (SBN 218556)
WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501-1091
Telephone: (510) 337-1001
Facsimile: (510) 337-1023
Email: drosenfeld@unioncounsel.net

*Attorneys for Plaintiffs San Francisco Labor Council,*
*San Francisco Building and Construction Trades Council,*
*and Alameda County Central Labor Council*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, Case No. _____

Plaintiffs allege as follows:

## INTRODUCTION

1. This action challenges a new Department of Homeland Security ("DHS") rule that would commandeer the Social Security tax system for immigration-enforcement purposes. The new rule would place in jeopardy the jobs of U.S. citizens and non-citizens legally authorized to work simply because of discrepancies in the government's error-prone Social Security earnings database. The rule also would provide a further incentive for unauthorized work to take place off-the-books, causing the government to lose Social Security taxes now paid on those wages.

2. The new rule, "Safe Harbor Procedures for Employers That Receive a No Match Letter," 72 Fed. Reg. 45611 (Aug. 15, 2007), would threaten employers with liability for illegally employing unauthorized workers if the employer receives a "no-match" letter from the Social Security Administration ("SSA"), unless the employer complies with specified "safe harbor" procedures. Those procedures include terminating employees who cannot resolve data discrepancies within 90 days. But the SSA's no-match letters, which SSA sends to employers when an employee name and Social Security number on a W-2 form do not match the SSA database, have nothing to do with a worker's immigration status. The new rule greatly expands liability in a manner contrary to the governing statute adopted by Congress.

3. This action also alleges that the Defendants' plan to implement the new rule exceeds the authority that Congress granted to DHS and SSA. Congress carefully balanced many policies in adopting and amending the nation's immigration laws and tax laws. Whether to now begin using SSA's confidential earnings database for immigration-enforcement purposes is a decision only Congress can make.

4. Plaintiffs seek a temporary restraining order, preliminary injunction, and permanent injunction to prohibit Defendants from implementing the new rule and a declaratory judgment that the new rule is invalid.

## JURISDICTION

5. This Court has jurisdiction over the claims alleged in this Complaint pursuant to 28 U.S.C. §1331 (federal question), 28 U.S.C. §2201 (declaratory relief), and 5 U.S.C. §§701-706

(Administrative Procedures Act).

## VENUE AND INTRA-DISTRICT ASSIGNMENT

6. Venue is proper in this Court pursuant to 28 U.S.C. §1391(e) because Plaintiffs San Francisco Labor Council, San Francisco Building and Construction Trades Council, and Central Labor Council of Alameda County reside in this judicial district.

7. Pursuant to Local Rule 3-2(d), an intra-district assignment to the San Francisco or Oakland Division is proper because a substantial part of the events giving rise to the claims in this action will occur in the County of San Francisco. Plaintiffs San Francisco Labor Council and San Francisco Building and Construction Trades Council reside in the City and County of San Francisco, Defendant Social Security Administration maintains a Regional Office in San Francisco, and Plaintiff American Federation of Labor and Congress of Industrial Organizations' affiliated unions have members employed in San Francisco who would be subject to the challenged government action.

## PARTIES

8. Plaintiff American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO") is a labor federation comprised of 55 national and international labor unions that collectively represent more than ten million working men and women throughout the United States, in virtually every type of job and industry. The mission of the AFL-CIO is to serve as an advocate for workers, to improve the lives of working families, and to bring fairness and dignity to the workplace.

9. In the past, workers represented by AFL-CIO's affiliated unions who are U.S. citizens or non-citizens lawfully working in the United States have been the subject of "no-match" letters sent by the SSA to their employers. The Government Accountability Office reports that about four percent of all Forms W-2 submitted by employers report earnings that cannot be matched with SSA records and that are therefore placed in SSA's Earnings Suspense File. On information and belief, the AFL-CIO's affiliated unions would represent tens of thousands or hundreds of thousands of workers who are lawfully working in the United States but have earnings in the Earnings Suspense File.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, Case No. _____   2

10.     Plaintiff San Francisco Labor Council is a labor federation comprised of about 150 affiliated member unions that collectively represent more than 150,000 men and women working in San Francisco. The mission of San Francisco Labor Council is to improve the lives of workers, their families, and others by bringing economic justice to the workplace and social justice to the community. In the past, workers represented by the San Francisco Labor Council's affiliates have been the subject of no-match letters issued by the SSA.

11.     Plaintiff San Francisco Building and Construction Trades Council is a labor organization consisting of 28 affiliates who collectively represent approximately 10,000 building and construction trade workers in San Francisco. San Francisco Building and Construction Trades Council is dedicated to representing and protecting the interests of San Francisco's building and construction trades workers.

12.     Plaintiff Central Labor Council of Alameda County ("Alameda County CLC"), a chartered affiliate of the AFL-CIO, is a local labor federation whose affiliates are 130 labor unions that collectively represent more than 76,000 diverse workers working in Alameda County in private industry and public institutions. These workers together speak nearly 100 languages and hail from scores of countries. The Alameda County CLC advocates for workers so that they can earn a better living and is committed to fighting workplace discrimination. It has also led campaigns to pass living wage ordinances to improve conditions for non-members, with which the Alameda County CLC often works on a variety of public interest causes related to minimum wage laws, healthcare, quality schools and affordable housing.

13.     Members of the Alameda County CLC's affiliated unions who are U.S. citizens or non-citizens authorized to work have been the subject of SSA "no-match" letters in the past. These letters have significantly impacted low-income workers of Latin American and Asian descent who use compound last names or inconsistently transliterate their names, which may result in inadvertent errors or discrepancies in their SSA records. Employers have harassed and intimidated many of these workers, especially those who work in construction, manufacturing, healthcare and the expanding service and janitorial sector, because of "no-match" letters. The Alameda County CLC is less able to organize and advocate for workers effectively when workers fear "no-match" abuse by

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, Case No. _____     3

employers.

14. Plaintiffs AFL-CIO, San Francisco Labor Council, San Francisco Building and Construction Trades Council, and Central Labor Council of Alameda County are also employers subject to the Immigration Reform and Control Act of 1986 ("IRCA"), 8 U.S.C. §1324a-§1324b.

15. Defendant Michael Chertoff is the Secretary of the Department of Homeland Security and is responsible for all functions of DHS and its component organizations. He is sued in his official capacity.

16. Defendant Department of Homeland Security is a federal agency charged with, *inter alia*, the administration and enforcement of federal immigration laws. DHS promulgated the rule entitled "Safe Harbor Procedures for Employers That Receive a No Match Letter," 72 Fed. Reg. 45611 (Aug.15, 2007), that is challenged in this litigation.

17. Defendant U.S. Immigration and Customs Enforcement ("ICE") is a federal agency within DHS responsible for investigating and enforcing immigration laws, including 8 U.S.C. §1324a. DHS and ICE created the Guidance Letter regarding the DHS Final Rule that the SSA intends to send to employers along with its "no-match" letters.

18. Defendant Julie Myers is the Assistant Secretary of Homeland Security for ICE and is responsible for all functions of ICE and its component organizations. She is sued in her official capacity.

19. Defendant Social Security Administration is a federal agency charged with administration of the Social Security Act, and with processing tax information for the purpose of administering the Social Security program. Defendant SSA maintains databases of tax information and periodically generates "no-match" letters to employers that submit Forms W-2 to report employee earnings if employee names and Social Security Numbers do not match SSA records. *See* 42 U.S.C. §432; 20 C.F.R. §422.120. Beginning on September 4, 2007, defendant SSA intends to send the DHS/ICE Guidance Letter to employers along with its "no-match" letters.

20. Defendant Michael Astrue is the Commissioner of Social Security and is responsible for all programs administered by the SSA. He is sued in his official capacity.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, Case No. _____    4

# BACKGROUND

**Social Security Administration "No Match" Letters**

21. The Social Security Act of 1935 authorizes the SSA to establish a record-keeping system to manage the Social Security program. Congress also granted SSA authority to process tax information for purposes of administering the Social Security program, as a specific exception to the exclusive tax authority of the Internal Revenue Service ("IRS"). *See* 26 U.S.C. §6103 (l)(5); 42 U.S.C. §432. Pursuant to that delegation of authority, the IRS and SSA created a joint system for the processing of Forms W-2 called the Combined Annual Wage Reporting System ("CAWR"). 43 Fed. Reg. 60158 (Dec. 26, 1978) (codified at 26 C.F.R. §31.6051).

22. Under the CAWR, employers annually report employee earnings using Forms W-2, and SSA posts those earnings to individual workers' Social Security records so workers will receive credit for those earnings when they apply for Social Security. The SSA then forwards the Forms W-2 to the IRS.

23. If the SSA cannot match the name and Social Security Number ("SSN") on a Form W-2 with SSA's records, the SSA places the earnings report in its Earnings Suspense File. *See* 20 C.F.R §422.120. The earnings remain in the Earnings Suspense File until SSA can link them to a name and SSN.

24. Every year, the SSA receives millions of earnings reports that the SSA cannot match with its records. The Earnings Suspense File is a huge database that contains more than 255 million unmatched earnings records and that is growing at the rate of 8 to 11 million unmatched records per year. About four percent of annual Form W-2 earnings reports are placed in the SSA's Earnings Suspense File.

25. Although some mismatched SSA records result from employees without work authorization using false SSNs, there also are many reasons unrelated to immigration status for mismatched records. These include a) clerical errors by either an employer or the SSA in spelling an employee's name or recording the SSN; b) the SSA's issuance of duplicate SSNs or reissuance of SSNs of deceased individuals; c) employee name changes after marriage or divorce; d) employees that use a less "foreign" sounding first name for work purposes; and e) different naming conventions

(such as the use of multiple surnames) that are commonplace in many parts of the world, particularly in some Latin American and Asian countries.

26. The most recent Government Accountability Office ("GAO") report on the SSA's Earnings Suspense File concluded that the file "[c]ontains information about many U.S. citizens as well as non-citizens" and that "the overall percentage of unauthorized workers is *unknown*." GAO-06-814R, at 8 (emphasis added). When the SSA ultimately has been able to resolve data discrepancies, "most . . . belong to U.S.-born citizens, not to unauthorized workers," which GAO concluded "is an indication that a significant number of earnings reports in the [Earnings Suspense File] belong to U.S. Citizens and work-authorized noncitizens." *Id.*

27. As part of its administration of the Social Security program, SSA periodically sends out letters, commonly known as "no-match" letters, informing employers that SSNs and employee names reported on Forms W-2 did not match SSA's records. *See* 20 C.F.R. § 422.120.

28. SSA no-match letters are purely advisory. SSA has no authority to sanction employers that fail to respond to no-match letters.

29. Pursuant to its regulations, SSA notifies the IRS of incomplete or inaccurate earnings reports. 20 C.F.R. §422.120. In 1986, Congress authorized IRS to impose sanctions on employers that submit false or inaccurate tax information. 26 U.S.C. §6721; *see also* 26 C.F.R. §301.6721-1. Under IRS regulations, an employer is not subject to sanction if the employer accurately and in good faith transmits the name and SSN provided by an employee. 26 U.S.C. §6724(a); 26 C.F.R. §301.6724-1. Insofar as the Internal Revenue Code is concerned, a reasonable employer response to a no-match letter is to confirm that the employer is accurately transmitting the name and SSN provided by the employee and to advise the employee that SSA is reporting a no-match. *Id.*

30. SSA is not an immigration agency and does not know whether a particular SSN listed in a no-match letter relates to unauthorized work. SSA also is prohibited by tax privacy statutes from sharing the information in the Earnings Suspense File with the DHS. Until now, SSA's no-match letters explained to employers: "This letter does not imply that you or your employee intentionally gave the government wrong information" and "makes no statement regarding an

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, Case No. _____     6

employee's immigration status."  Until now, the SSA has never included information from an immigration-enforcement agency with its no-match letters.

### Employer Verification of Work Authorization and Employer Sanctions

31.     The Immigration Reform and Control Act of 1986 ("IRCA") made it unlawful for employers to "to hire . . . for employment in the United States an alien *knowing* the alien is an unauthorized alien."  8 U.S.C. §1324a(a)(1)(A) (emphasis added).

32.     IRCA also separately made it unlawful for employers to hire without complying with an initial verification process established by Congress.  8 U.S.C. §1324a(a)(1)(B).  That verification process requires the employee to present the employer with documents to show proof of identity and work authorization and requires the employer and employee to complete an I-9 verification form.  8 U.S.C. §1324a(b); 8 C.F.R. §274a.2.

33.      IRCA also makes it unlawful for an employer "to continue to employ an alien . . . *knowing* the alien is (or has become) an unauthorized alien with respect to such employment."  8 U.S.C. §1324a(a)(2) (emphasis added).

34.     IRCA specifically exempted workers hired before IRCA's enactment on November 6, 1986, from the hiring prohibition and the verification process.  Pub. L. No. 99-603 § 101(a)(3), 100 Stat. 3359 (1986) (codified at 8 U.S.C. § 1324a note).

35.      Employers that violate IRCA are subject to civil and criminal liability.  8 U.S.C. §1324a(e)(4)-(5), (f).

36.     At the same time that Congress imposed employer sanctions, Congress also wanted to prevent employer discrimination based on national origin or citizenship status.  IRCA therefore makes it illegal for employers to discriminate based on national origin or citizenship status, including by requesting "more or different documents than are required" for the initial I-9 verification or "refusing to honor documents . . . that on their face reasonably appear to be genuine." 8 U.S.C. §1324b(a)(1),(6).

37.     Congress intentionally did not impose in IRCA any employment authorization verification for existing employees.  Congress also chose not to impose ongoing re-verification requirements after the initial hire.

### New Department of Homeland Security Rule

38. Until now, neither DHS nor its predecessor immigration-enforcement agencies had taken the position that an employer's failure to inquire into the work-authorization status of an employee subject to an SSA no-match letter meant that the employer had knowledge that it was employing an unauthorized worker. The Immigration and Naturalization Service had recognized that no-match discrepancies occur for many innocent reasons and therefore consistently advised employers in opinion letters that "[w]e would not consider notice of this discrepancy from SSA to an employer by itself to put the employer on notice that the employee is unauthorized to work."

39. On June 14, 2006, DHS gave notice of a proposed rule that would address the responsibilities of employers that receive SSA no-match letters. More than 5,000 comments were received by DHS during the 60-day comment period, including comments that disputed DHS' authority to adopt the rule. Plaintiff AFL-CIO was among those who submitted comments objecting to the rule. After the comment period closed on August 14, 2006, the proposed rule lay dormant for a year.

40. Shortly after Congress left for recess without enacting immigration reform legislation urged by DHS, the agency issued a final rule on August 15, 2007 (hereinafter, the "DHS Final Rule"). The DHS Final Rule is entitled "Safe-Harbor Procedures for Employers Who Receive a No-Match Letter" and published at 72 Fed. Reg. 45611. The DHS Final Rule will become legally effective on September 14, 2007.

41. The DHS Final Rule will amend the definition of "*knowing*" in 8 C.F.R. §274a.1(l)(1), the regulatory subsection that defines the term "knowing" for purposes of IRCA. The amended regulation will list, as an example of an employer that has "constructive knowledge" that an employee is an "unauthorized alien," an employer that receives a SSA no-match letter and then "fails to take reasonable steps." The first part of the amended regulation will provide:

> (1)(1) The term *knowing* includes having actual or constructive knowledge. . . .
> Examples of situations where the employer may, depending upon the totality of the
> relevant circumstances, have constructive knowledge that an employee is an
> unauthorized alien include, but are not limited to, situations where the employer:

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, Case No. _____  8

. . . .

    (iii) Fails to take reasonable steps after receiving information indicating that the employee may be an alien who is not employment authorized, such as –

. . . .

    (B) Written notice to the employer from the Social Security Administration reporting earnings on a Form W-2 that employees' names and corresponding social security account numbers fail to match Social Security Administration records . . . .

42. Having created a threat of IRCA liability for employers receiving SSA no-match letters, the DHS Final Rule then offers employers a "safe harbor." An employer receiving a SSA no-match letter "will be considered by the Department of Homeland Security to have taken reasonable steps – and receipt of the written notice will therefore not be used as evidence of constructive knowledge – if the employer" takes the actions specified by DHS. These are "the only combination of steps that will guarantee that DHS will not use the employer's receipt of the notices from SSA . . . as evidence of constructive knowledge that an employee is an unauthorized alien." 72 Fed. Reg. at 45618.

43. To qualify for the DHS "safe harbor," an employer that determines the SSA no-match was not the result of its own clerical error must instruct an employee who claims the name and SSN are correct to resolve the discrepancy with SSA within 90 days after receipt of the no-match letter. If the employee is unable to resolve the discrepancy with SSA within 90 days, the employer cannot continue to employ the worker unless the worker can complete within three days a new immigration verification, on a new I-9 form, using only documents that contain photo identification and no documents that contain the disputed SSN, even if the employee still insists the SSN is correct. If employees insist their names and SSNs on their identification documents are correct but have not resolved the discrepancy with SSA by the deadline, or cannot produce the required additional photo identification, the employer would have to fire them.

**Implementation of the DHS Final Rule by DHS and SSA**

44. On September 4, 2007, DHS and SSA intend to begin sending employers no-match letters that will be accompanied by a letter from DHS and ICE (hereinafter the "DHS/ICE Guidance

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, Case No. _____  9

Letter"). The DHS/ICE Guidance Letter states that it will "provide guidance on how to respond to the enclosed letter from the Social Security Administration (SSA) . . . in a manner that is consistent with your obligations under United States Immigration Laws."

45. The DHS/ICE Guidance Letter contains questions and answers, which begin with the following:

> **Q:   Can I simply disregard the letter from SSA?**
>
> **A:**   **No.** You have received official notification of a problem that may have significant legal consequences for your employees. If you elect to disregard the notice you have received and it is determined that some employees listed in the enclosed letter were not authorized to work, the Department of Homeland Security (DHS) could determine that you have violated the law by knowingly continuing to employ unauthorized persons. This could lead to civil and criminal sanctions.

46. After threatening employers with civil and criminal liability, the DHS/ICE Guidance Letter then asks: **"Q:   What should I do?"** and responds that "You should" follow the steps set out in the DHS Final Rule.

47. The DHS/ICE Guidance Letter assures employers that, if they follow those procedures for every no-match, they will not be liable for discrimination if they terminate employees:

> **Q:   Will I be liable for discrimination charges brought by the United States if I terminate the employee after I follow the steps outlined above?**
>
> **A:**   **No.** . . . ."

48. SSA has revised its no-match letters so that they direct employers to follow the instructions in the accompanying DHS/ICE Guidance Letter.

49. SSA and DHS intend to commence sending the revised no-match letters and the DHS/ICE Guidance Letter to employers on September 4, 2007. Between September 4, 2007 and November 9, 2007, the SSA expects to mail no-match letters to approximately 140,000 employers around the country. Each letter will list at least 10 mismatched SSNs and some letters will list 500 or more. Approximately 8.7 million employees will be affected by this initial wave of mailings.

50. SSA will continue to mail additional batches of no-match letters after November 9, 2007, to hundreds of thousands of other employers.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, Case No. _____   10

**Effect of Implementation of the New DHS Final Rule**

51. Adoption of the DHS Final Rule on September 14, 2007 will immediately impose new obligations in violation of law on every employer governed by IRCA. The imminent SSA mailing on September 4, 2007 will immediately impose substantial administrative costs on at least 140,000 employers, and additional employers will be affected as SSA continues in the future to send out no-match letters accompanied by the DHS/ICE Guidance Letter.

52. The receipt of the SSA no-match letter and DHS/ICE Guidance Letter will lead some employers to immediately fire workers with SSN no-matches, even though they are lawfully entitled to work, because the worker's "foreign" appearance or accent causes the employer to fear IRCA liability. Such firings have occurred in the past after no-match letters were issued, and the DHS Final Rule will exacerbate this problem.

53. A substantial portion of the several million no-match SSNs that are listed in the initial round of SSA no-match letters will relate to U.S. citizens or non-citizens lawfully entitled to work. On information and belief, a substantial number of these workers are members of unions affiliated with Plaintiffs.

54. As a result of implementation of the DHS Final Rule, including the DHS/ICE Guidance Letter, lawfully employed workers will immediately be forced to expend time and effort to resolve SSA data discrepancies, including taking time off work without pay to visit SSA field offices that are open only during business hours and that will be overwhelmed with similar requests from other workers.

55. Many lawfully employed workers will be unable to resolve data discrepancies with the SSA bureaucracy within the 90-day deadline set out in the DHS Final Rule and will for that reason be terminated from their jobs. SSA already has told DHS that in "difficult cases," SSA may be unable to resolve discrepancies within the 90-day timeframe.

### FIRST CLAIM FOR RELIEF

**(Violation by DHS of 8 U.S.C. §1324a and 5 U.S.C. §706(2)(A))**

56. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

57. The DHS Final Rule is inconsistent with the governing statute, 8 U.S.C. §1324a, because it expands civil and criminal liability for employers based on a definition of "knowing" that is not what Congress meant by the term "knowing" in IRCA. The DHS Final Rule is also inconsistent with the governing statute because it establishes a system for reverification of the work authorization status of continuing employees that is not consistent with Congress' intent to establish a system of verification of work-authorization status only upon initial hire. The DHS Final Rule is agency action "not in accordance with law" and violates 5 U.S.C. §706(2)(A).

**SECOND CLAIM FOR RELIEF**

**(Violation by DHS of 5 U.S.C. §706(2)(A))**

58. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

59. The DHS Final Rule is "arbitrary" and "capricious" agency action in violation of 5 U.S.C. §706(2)(A) because it treats the receipt of an SSA no-match letter as indicating a high probability that a mismatched SSN relates to unauthorized work when DHS does not have access to the Earnings Suspense File and does not know the probability that an SSN relates to unauthorized work.

**THIRD CLAIM FOR RELIEF**

**(Violation by DHS of 5 U.S.C. §706(2)(C))**

60. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

61. The DHS Final Rule exceeds DHS' statutory authority, in violation of 5 U.S.C. §706(2)(C), by seeking to impose immigration-law obligations on employers and employees in responding to an SSA no-match letter.

**FOURTH CLAIM FOR RELIEF**

**(Violation by DHS, ICE and SSA of 5 U.S.C. §706(2)(B) and Due Process Clause)**

62. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

63. The DHS Final Rule and DHS/ICE Guidance Letter, and SSA's distribution of that letter with its no-match letters, will impose unreasonable deadlines on employers and employees and will cause some lawfully employed workers to be fired from their jobs without due process because of erroneous government data bases, and because SSA is not able to resolve a data discrepancy by an arbitrary deadline. As such, Defendants' actions violate 5 U.S.C. §706(C) and the Due Process Clause of the U.S. Constitution.

### FIFTH CLAIM FOR RELIEF

(*Ultra Vires* Agency Action by DHS and ICE)

64. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

65. The DHS' Rule and DHS/ICE Guidance Letter are *ultra vires* actions in excess of statutory authority granted to DHS, ICE, and SSA by Congress.

### SIXTH CLAIM FOR RELIEF

(Violation by DHS, ICE and SSA of 5 U.S.C. §706(2)(C))

66. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

67. DHS, ICE, and SSA have no statutory authority to use the SSA tax information processing system in general, and the SSA no-match letters in particular, as tools for the enforcement of immigration laws.

68. The plan by DHS, ICE, and SSA to include the DHS/ICE Guidance Letter to employers along with SSA no-match letters is agency action in excess of the statutory authority of DHS, ICE, and SSA, and therefore violates 5 U.S.C. §706(2)(C).

### SEVENTH CLAIM FOR RELIEF

(*Ultra Vires* Agency Action by SSA, DHS, and ICE)

69. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

1      70.    DHS, ICE, and SSA have no statutory authority to use the SSA tax information processing system in general, and the SSA no-match letters in particular, as tools for the enforcement of immigration laws.

    71.    The plan by DHS, ICE, and SSA to include the DHS/ICE Guidance Letter to employers along with SSA no-match letters exceeds the statutory authority of DHS, ICE, and SSA, and therefore each agency is acting *ultra vires* and in violation of the statutes delegating authority to those agencies.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court:

1.    Enter a temporary restraining order and a preliminary injunction, pending a decision on the merits, that enjoins Defendants from implementing the Department of Homeland Security rule entitled "Safe Harbor Procedures for Employers That Receive a No Match Letter," 72 Fed. Reg. 45611 (Aug.15, 2007), including by commencing the mailing of new SSA "no-match" letter packets that include the DHS/ICE Guidance Letter concerning the DHS Final Rule.

2.    Upon hearing the merits, enter a declaratory judgment that the DHS Final Rule is invalid and a permanent injunction to prohibit Defendants from implementing or otherwise giving effect to the DHS Final Rule.

3.    Award Plaintiffs their costs and expenses, including reasonable attorney's fees and expert witness fees; and

4.    Award such further and additional relief as is just and proper.

Dated: August 28, 2007

    Stephen P. Berzon
    Scott A. Kronland
    Jonathan Weissglass
    Linda Lye
    Danielle E. Leonard
    ALTSHULER BERZON LLP

    Jonathan P. Hiatt
    James B. Coppess
    Ana Avendaño
    AFL-CIO

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, Case No. _____     14

1  Linton Joaquin
   Marielena Hincapi
2  Monica T. Guizar
   NATIONAL IMMIGRATION LAW CENTER
3
   Lucas Guttentag
4  Jennifer C. Chang
   Mónica M. Ramírez
5  AMERICAN CIVIL LIBERTIES UNION FOUNDATION

6  Omar C. Jadwat
   AMERICAN CIVIL LIBERTIES UNION FOUNDATION
7
   Alan L. Schlosser
8  Julia Harumi Mass
   ACLU FOUNDATION OF NORTHERN CALIFORNIA
9
   David A. Rosenfeld
10 Manjari Chawla
   WEINBERG, ROGER & ROSENFELD
11

12

13 by:  /s/Scott A. Kronland
             Scott A. Kronland
14
   Attorneys for Plaintiffs
15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, Case No. _____     15