1  Stephen P. Berzon (SBN 46540)
   Scott A. Kronland (SBN 171693)
2  Jonathan Weissglass (SBN 185008)
   Linda Lye (SBN 215584)
3  Danielle E. Leonard (SBN 218201)
   ALTSHULER BERZON LLP
4  177 Post Street, Suite 300
   San Francisco, CA 94108
5  Telephone: (415) 421-7151
   Facsimile: (415) 362-8064
6  Email: skronland@altshulerberzon.com
   Email: llye@altshulerberzon.com
7  Email: dleonard@altshulerberzon.com

8  *Attorneys for Plaintiffs*

9  Jonathan P. Hiatt (SBN 63533)
   James B. Coppess (*Pro Hac Vice* Application forthcoming)
10 Ana L. Avendaño (SBN 160676)
   AFL-CIO
11 815 Sixteenth Street, N.W.
   Washington, D.C. 20006
12 Telephone: (202) 637-5053
   Facsimile: (202) 637-5323
13 Email: aavendan@aflcio.org

14 *Attorneys for Plaintiff AFL-CIO*

15 (Counsel list continued on next page)

16                 UNITED STATES DISTRICT COURT

17               NORTHERN DISTRICT OF CALIFORNIA

18 AMERICAN FEDERATION OF LABOR AND          )  Case No. _____
   CONGRESS OF INDUSTRIAL ORGANIZATIONS;     )
19 SAN FRANCISCO LABOR COUNCIL; SAN          )
   FRANCISCO BUILDING AND CONSTRUCTION       )  **EX PARTE APPLICATION FOR**
20 TRADES COUNCIL; and CENTRAL LABOR COUNCIL )  **TEMPORARY RESTRAINING**
   OF ALAMEDA COUNTY,                        )  **ORDER AND ORDER TO SHOW**
21                                           )  **CAUSE WHY PRELIMINARY**
                  Plaintiffs,                )  **INJUNCTION SHOULD NOT**
22                                           )  **ISSUE**
                                             )
23        v.                                 )
                                             )
24 MICHAEL CHERTOFF, Secretary of Homeland Security; )
   DEPARTMENT OF HOMELAND SECURITY;          )
25 JULIE MYERS, Assistant Secretary of Homeland )
   Security; U.S. IMMIGRATION AND CUSTOMS     )
26 ENFORCEMENT; MICHAEL ASTRUE, Commissioner  )
   of Social Security; and SOCIAL SECURITY    )
27 ADMINISTRATION,                           )
                                             )
28                Defendants.                )
   _____ )

1  (Counsel list continued from first page)

2  Linton Joaquin (SBN 73547)
   Marielena Hincapi  (SBN 188199)
3  Monica T. Guizar (SBN 202480)
   NATIONAL IMMIGRATION LAW CENTER
4  3435 Wilshire Blvd., Suite 2850
   Los Angeles, CA 90010
5  Telephone: (213) 674-2850
   Facsimile: (213) 639-3911
6  Email: guizar@nilc.org

7  Lucas Guttentag (SBN 90208)
   Jennifer C. Chang (SBN 233033)
8  Mónica M. Ramírez (SBN 234893)
   AMERICAN CIVIL LIBERTIES UNION FOUNDATION
9  Immigrants' Rights Project
   39 Drumm Street
10 San Francisco, CA 94111
   Telephone: (415) 343-0770
11 Facsimile: (415) 395-0950
   E-mail: jchang@aclu.org
12
   Omar C. Jadwat (*Pro Hac Vice* Application forthcoming)
13 AMERICAN CIVIL LIBERTIES UNION FOUNDATION
   Immigrants' Rights Project
14 125 Broad Street, 18th Floor
   New York, NY 10004
15 Telephone: (212) 549-2620
   Facsimile: (212)-549-2654
16 Email: ojadwat@aclu.org

17 Alan L. Schlosser (SBN 49957)
   Julia Harumi Mass (SBN 189649)
18 ACLU FOUNDATION OF NORTHERN CALIFORNIA
   39 Drumm Street
19 San Francisco, CA 94111
   Telephone: (415) 621-2493
20 Facsimile: (415) 255-1478
   E-mail: aschlosser@aclu.org
21
   *Attorneys for Plaintiff Central Labor Council of Alameda County*
22
   David A. Rosenfeld (SBN 58163)
23 Manjari Chawla (SBN 218556)
   WEINBERG, ROGER & ROSENFELD
24 A Professional Corporation
   1001 Marina Village Parkway, Suite 200
25 Alameda, California 94501-1091
   Telephone: (510) 337-1001
26 Facsimile: (510) 337-1023
   Email: drosenfeld@unioncounsel.net
27
   *Attorneys for Plaintiffs San Francisco Labor Council,*
28 *San Francisco Building and Construction Trades Council,*
   *and Central Labor Council of Alameda County*

**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

Plaintiffs hereby request, pursuant to FRCP 65 and Civil Local Rules 7-10 and 65-1, that the Court issue a temporary restraining order and an order to show cause why a preliminary injunction should not issue.

**NEED FOR TEMPORARY RESTRAINING ORDER**

On August 15, 2007, the Department of Homeland Security ("DHS") published a Final Rule that would commandeer the Social Security tax system for immigration-enforcement purposes. The new rule would place millions of U.S. citizens and non-citizens with work authorization at risk of losing their jobs because of discrepancies in the Social Security Administration ("SSA") tax database. The new rule becomes legally effective on September 14, 2007, but DHS and SSA plan to jump the gun by beginning on September 4, 2007 to mail SSA "no-match" letter packets to employers that will include a separate DHS guidance letter about compliance with the new rule.

The SSA generates no-match letters to employers when names and Social Security Numbers ("SSNs") submitted by the employer on Forms W-2 cannot be matched with SSA records. The DHS guidance letter will inform employers that they face civil and criminal liability under the immigration laws unless they address the no-match letter and that workers should be fired if the no-match cannot be resolved with SSA within 90 days.

The initial round of SSA/DHS mailings to employers is scheduled to run from September 4 to November 9, 2007. This round of mailings would reach about 140,000 employers and affect about eight million employees. It would be the first time that the SSA's Earnings Suspense File, an error-prone database that contains more than 255 million mismatched records, has been used as an immigration-enforcement tool. The SSA receives about 8 to 11 million earnings reports per year that fail to match with SSA records. There are many reasons for mismatches that are unrelated to unauthorized work, so a no-match is not an indication of immigration status. When the SSA has been able to reconcile no-matches, most involved U.S. citizens.

This lawsuit contends that the new DHS rule is invalid because it is contrary to the governing statute adopted by Congress. This lawsuit further contends that DHS and SSA are

1  exceeding the authority they were granted by Congress by using SSA's confidential Earnings
2  Suspense File for purposes of immigration enforcement instead of for purposes of the Social
3  Security program.  Plaintiffs seek a temporary restraining order to push back the September 4, 2007
4  start of the new DHS/SSA mailings until their motion for a preliminary injunction can be heard.
5  Plaintiffs also seek a hearing date for their motion for a preliminary injunction before September 14,
6  2007, when the DHS Final Rule would become legally effective.

### GROUNDS FOR APPLICATION

8  The application is made on the ground that Plaintiffs meet the requirements for a temporary
9  restraining order because they have demonstrated:  1) a likelihood of success on the merits and the
10  possibility of irreparable injury, or 2) serious questions about the legality of Defendants' conduct
11  and that the balance of hardships tips sharply in Plaintiffs' favor.  *Lands Council v. Martin*, 479
12  F.3d 636, 639 (9th Cir. 2007).

13  Plaintiffs have a strong likelihood of success on the merits because the DHS Rule and letter
14  are contrary to the governing statute.  They would expand civil and criminal liability under the
15  Immigration Reform and Control Act ("IRCA") far beyond what Congress intended.  Congress
16  provided for IRCA liability when an employer continues to employ a worker "*knowing*" the worker
17  is an "unauthorized alien."  8 U.S.C. §1324a(a)(2) (emphasis added).  The word "*knowing*" is  "a
18  familiar term of art" that describes a state of mind necessary for civil or criminal liability; it has a
19  meaning that "Congress is presumed to have known and adopted."  *United States v. Jewell*, 532
20  F.2d. 697, 703 (9th Cir. 1976) (en banc).  Given that there are many reasons for no-matches that
21  have nothing to do with unauthorized work (*e.g.* clerical errors, employee name changes after
22  marriage and divorce, different naming conventions, such as use of multiple surnames, in many
23  parts of the world), the DHS rule is premised on a definition of the term "*knowing*" that the term
24  will not bear.  The DHS rule also is contrary to the governing statute because it effectively would
25  establish a continuing work-authorization verification process for existing employees that Congress
26  declined to establish, disturbing the delicate balance of policy interests that Congress has made in
27  the immigration laws.

28

1    The DHS/SSA scheme to use the "no-match" mailings as an immigration-enforcement tool

2  also is beyond the statutory authority that Congress granted to these agencies.  SSA is only

3  permitted to use the Earnings Suspense File for purposes of the Social Security program.  And DHS

4  lacks the authority to attach immigration-law obligations to SSA no-match letters, which are purely

5  advisory and relate solely to the tax system.

6    The balance of equities also overwhelmingly favors a stay to preserve the status quo until

7  Plaintiffs' request for a preliminary injunction can be heard.  The government will suffer no real

8  harm if the start of the SSA/DHS mailings is briefly delayed pending judicial review.  The DHS rule

9  is a major change in existing policy, and the proposed rule lay dormant for an entire year until DHS

10  published it as a Final Rule after Congress recessed without adopting immigration legislation that

11  DHS had supported.  No law or emergency requires that the rule be implemented immediately.

12  There certainly is no law or emergency that requires the DHS/SSA mailings to begin before the

13  Final Rule even becomes legally effective.

14    On the other hand, once the mailings commence, employees who are U.S. citizens or non-

15  citizens with legal work authorization, many of whom will be workers represented by Plaintiffs, will

16  face the loss of their jobs unless they can resolve an SSA data discrepancy within a 90-day deadline.

17  These employees will have to take off work without pay to visit SSA field offices that will be

18  inundated with similar requests for no-match corrections.  Some workers will lack birth certificates

19  or other necessary identification documents, and SSA already has informed DHS that in "difficult

20  cases" no-match issues will not be resolved by the deadline.  Those workers would be fired.

21  Additionally, based on past-experience with no-match letters, it is clear that some employers

22  receiving the SSA/DHS mailing will just terminate workers immediately because they fear IRCA

23  liability, particularly when the workers have a "foreign" appearance or accent.  It will be impossible

24  to completely "unring the bell" later if the DHS rule is struck down.

25                                    **RELIEF SOUGHT**

26    Plaintiffs respectfully request that the Court grant this ex parte motion as follows:

27    1.    The Court should issue an immediate temporary restraining order, pending a hearing

28  on the request for a preliminary injunction, that enjoins Defendants, their officers, agents, servants,

1  employees, and attorneys, and all persons acting by, through, under, or in concert with them, from

2  taking any action to implement the Final Rule adopted by the Department of Homeland Security

3  entitled "Safe Harbor Procedures For Employers Who Receive a No-Match Letter," 77 Fed. Reg.

4  45611 (Aug. 15, 2007), including by causing to be mailed Social Security Administration no-match

5  letters that are accompanied by the Department of Homeland Security guidance letter about the

6  Final Rule.

7       2. The Court should issue an order to show cause why a preliminary injunction should

8  not issue to enjoin Defendants from implementing the Final Rule and set a hearing on the motion for

9  a preliminary injunction for before September 14, 2007, when the Final Rule would become legally

10  effective.

11      **SUPPORTING DOCUMENTS**

12       The motion is based on this Ex Parte Application and the following documents that are

13  being filed herewith: the Complaint For Injunctive And Declaratory Relief; the Memorandum of

14  Points and Authorities in Support of Motion for Temporary Restraining Order and Preliminary

15  Injunction; the Declarations of Kenneth S. Apfel, Ana Avendaño, Linda Chavez-Thompson, Laura

16  Foote Reiffe, Tyler Moran, Nik Theodore in Support of Temporary Restraining Order and

17  Preliminary Injunction; the Declaration of Notice to Opposition; the Request for Judicial Notice; the

18  Declaration in Support of Request for Judicial Notice; the Motion to Exceed Page Limitations; the

19  Declaration in Support of Motion to Exceed Page Limitations; the [Proposed] Order Granting

20  Motion to Exceed Page Limitations; and the accompanying [Proposed] Temporary Restraining

21  Order And Order To Show Re: Preliminary Injunction; the complete files and records of this action;

22  and such other and further matters as the Court may properly consider.

23

24  Dated: August 28, 2007       Respectfully submitted

25        Stephen P. Berzon

26        Scott A. Kronland
      Jonathan Weissglass
      Linda Lye

27        Danielle E. Leonard
      ALTSHULER BERZON LLP

28

1

Jonathan P. Hiatt
James B. Coppess

2

Ana Avendaño
AFL-CIO

3

4

Linton Joaquin
Marielena Hincapi
Monica T. Guizar

5

NATIONAL IMMIGRATION LAW CENTER

6

Lucas Guttentag
Jennifer C. Chang

7

Mónica M. Ramírez

8

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

9

Omar C. Jadwat
AMERICAN CIVIL LIBERTIES UNION FOUNDATION

10

Alan L. Schlosser
Julia Harumi Mass

11

ACLU FOUNDATION OF NORTHERN CALIFORNIA

12

David A. Rosenfeld
Manjari Chawla

13

WEINBERG, ROGER & ROSENFELD

14

15

16

by:___/s/Scott A. Kronland_____
        Scott A. Kronland

17

Attorneys for Plaintiffs

18

19

20

21

22

23

24

25

26

27

28

---

EX PARTE APPLICATION FOR TRO & OSC RE: PRELIMINARY INJUNCTION, Case No. _____    5