# Proposed Rules

Federal Register
Vol. 71, No. 114
Wednesday, June 14, 2006

This section of the FEDERAL REGISTER contains notices to the public of the proposed issuance of rules and regulations. The purpose of these notices is to give interested persons an opportunity to participate in the rule making prior to the adoption of the final rules.

---

## DEPARTMENT OF HOMELAND SECURITY

**8 CFR Part 274a**

**[ICE 2377–06; Docket No. ICEB–2006–0004]**

**RIN 1653–AA50**

**Safe-Harbor Procedures for Employers Who Receive a No-Match Letter**

**AGENCY:** Bureau of Immigration and Customs Enforcement, Department of Homeland Security.

**ACTION:** Proposed rule.

**SUMMARY:** The Bureau of Immigration and Customs Enforcement proposes to amend the regulations relating to the unlawful hiring or continued employment of unauthorized aliens. The amended regulation describes the legal obligations of an employer, under current immigration law, when the employer receives a no-match letter from the Social Security Administration or the Department of Homeland Security. It also describes "safe-harbor" procedures that the employer can follow in response to such a letter and thereby be certain that DHS will not find that the employer had constructive knowledge that the employee referred to in the letter was an alien not authorized to work in the United States. The proposed rule adds two more examples of situations that may lead to a finding that an employer had such constructive knowledge to the current regulation's definition of "knowing." These additional examples involve an employer's failure to take reasonable steps in response to either of two events: (1) The employer receives written notice from the Social Security Administration (SSA) that the combination of name and social security account number submitted to SSA for an employee does not match agency records; or (2) the employer receives written notice from the Department of Homeland Security (DHS) that the immigration-status or employment-authorization documentation presented or referenced by the employee in completing Form I–9 was not assigned to the employee according to DHS records. (Form I–9 is retained by the employer and made available to DHS investigators on request, such as during an audit.) The proposed rule also states that whether DHS will actually find that an employer had constructive knowledge that an employee was an unauthorized alien in a situation described in any of the regulation's examples will depend on the totality of relevant circumstances. The "safe-harbor" procedures include attempting to resolve the no-match and, if it cannot be resolved within a certain period of time, verifying again the employee's identity and employment authorization through a specified process.

**DATES:** Written comments must be submitted on or before August 14, 2006.

**ADDRESSES:** You may submit comments, identified by DHS Docket No. ICEB–2006–0004, by one of the following methods:

• Federal eRulemaking Portal: *http://www.regulations.gov*. Follow the instructions for submitting comments.

• E-mail: You may submit comments directly to ICE by email at *rfs.regs@dhs.gov*. Include docket number in the subject line of the message.

• Mail: Director, Regulatory Management Division, U.S. Citizenship and Immigration Services, Department of Homeland Security, 111 Massachusetts Avenue, NW., 2nd Floor, Washington, DC 20529, Contact Telephone Number (202) 272–8377. To ensure proper handling, please reference DHS Docket No. ICEB–2006–0004 on your correspondence. This mailing address may also be used for paper, disk, or CD–ROM submissions.

• Hand Delivery/Courier: Regulatory Management Division, U.S. Citizenship and Immigration Services, Department of Homeland Security, 111 Massachusetts Avenue, NW., 2nd Floor, Washington, DC 20529, Contact Telephone Number (202) 272–8377.

**FOR FURTHER INFORMATION CONTACT:** Charles Wood, Regulatory Counsel, Office of the Principal Legal Advisor, Bureau of Immigration and Customs Enforcement, Department of Homeland Security, 425 I Street, NW., Washington, DC 20536. Contact Telephone Number (202) 514–2895.

**SUPPLEMENTARY INFORMATION:**

### I. Public Participation

Interested persons are invited to participate in this rulemaking by submitting written data, views, or arguments on all aspects of the proposed rule. The Bureau of Immigration and Customs Enforcement (ICE) also invites comments that relate to the potential economic, environmental, or federalism effects of this proposed rule. Comments that will provide the most assistance to ICE in developing these procedures will reference a specific portion of the proposed rule, explain the reason for any recommended change, and include data, information, or authority that support such recommended change. ICE would be particularly interested in comments on the time limits described in the rule. Comments that will provide the most assistance to ICE will include specific factual support, including examples of circumstances under which it would be difficult for the commenting employer to resolve the issues raised in a no-match letter within the stated time frame.

*Instructions:* All submissions received must include the agency name and DHS docket No. ICEB–2006–0004 for this rulemaking. All comments received will be posted without change to *http://www.regulations.gov*, including any personal information provided. See **ADDRESSES** above for information on how to submit comments.

Docket: For access to the docket to read background documents or comments received, go to *http://www.regulations.gov*. Submitted comments may also be inspected at the office of the Director, Regulatory Management Division, U.S. Citizenship and Immigration Services, Department of Homeland Security, 111 Massachusetts Avenue, NW., 2nd Floor, Washington, DC 20529, Contact Telephone Number (202) 272–8377.

### II. Background

Employers annually send the Social Security Administration (SSA) millions of earnings reports (W–2 Forms) in which the combination of employee name and social security number (SSN) does not match SSA records. In some of these cases, SSA sends a letter that informs the employer of this fact. The letter is commonly referred to as a "no-match letter." There are many causes for such a no-match, including clerical

error and name changes. But one of the causes is the submission of information for an alien who is not authorized to work in the United States and is using a false SSN or a SSN assigned to someone else. Such a letter may be one of the only indicators to an employer that one of its employees may be an unauthorized alien.

ICE sends a similar letter after it has inspected an employer's Employment Eligibility Verification forms (Forms I–9) and after unsuccessfully attempting to confirm, in agency records, that an immigration status document or employment authorization document presented or referenced by the employee in completing the Form I–9 was assigned to that person. (After a Form I–9 is completed by an employer and employee, it is retained by the employer and made available to DHS investigators on request, such as during an audit.)

This proposed regulation describes an employer's current obligations under the immigration laws, and its options for avoiding liability, after receiving a no-match letter from either SSA or DHS. The proposed regulation specifies the steps to be taken by the employer that will be considered by DHS to be a reasonable response to receiving a no-match letter—a response that will eliminate the possibility that DHS, when seeking civil money penalties against an employer, will allege, based on the totality of relevant circumstances, that an employer had constructive knowledge that it was employing an alien not authorized to work in the United States, in violation of section 274A(a)(2) of the Immigration and Nationality Act (INA), 8 U.S.C. 1324a(a)(2). This provision of the Act states:

> It is unlawful for a person or other entity, after hiring an alien for employment in accordance with paragraph (1), to continue to employ the alien in the United States *knowing* the alien is (or has become) an unauthorized alien with respect to such employment. [Emphasis added.]

Both regulation and case law support the view that an employer can be in violation of section 274A(a)(2), 8 U.S.C. 1324a(a)(2) by having constructive rather than actual knowledge that an employee is unauthorized to work. A definition of "knowing" first appeared in the regulations on June 25, 1990 at 8 CFR 274a.1(l)(1). See 55 FR 25928. That definition stated:

> The term "knowing" includes not only actual knowledge but also knowledge which may fairly be inferred through notice of certain facts and circumstances which would lead a person, through the exercise of reasonable care, to know about a certain condition.

As noted in the preamble to the original regulation, that definition, which is essentially the same as the definition adopted in this rule, is consistent with the Ninth Circuit's holding in *Mester Mfg. Co.* v. *INS*, 879 F.2d 561, 567 (9th Cir. 1989) (an employer who received information that some employees were suspected of having presented a false document to show work authorization was held to have had constructive knowledge of their unauthorized status when he failed to make any inquiries or take appropriate corrective action). The court cited its opinion in *United States* v. *Jewell*, 532 F.2d 697 (9th Cir.) (en banc), and explained its ruling in *Jewell* as follows: "deliberate failure to investigate suspicious circumstances imputes knowledge." 879 F.2d at 567. See also *New El Rey Sausage Co.* v. *INS*, 925 F.2d 1153, 1158 (9th Cir. 1991).

The regulatory language quoted above also begins the current regulatory definition of "knowing," which is still at 8 CFR 274a.1(l)(1). In the current definition, additional language follows this passage, describing situations that may involve constructive knowledge by the employer that an employee is an unauthorized alien. The Immigration and Naturalization Service added this language on August 23, 1991. See 56 FR 41767. The current definition contains an additional, concluding paragraph, which relates to foreign appearance or accent, and to the documents that may be requested by an employer as part of the verification system that must be used at the time of hiring, as required by INA section 274A(a)(1)(B), 8 U.S.C. 1324a(a)(1)(B). This paragraph will be described in greater detail below. The verification system referenced in this paragraph is described in INA section 274A(b), 8 U.S.C. 1324a(b).

### III. Proposed rule

The proposed rule would amend the definition of "knowing" in 8 CFR 274a.1(l)(1), in the portion relating to "constructive knowledge." First, it would add two more examples to the existing examples of information available to an employer indicating that an employee could be an alien who is not authorized to work in the United States. It also explicitly states the employer's obligations under current law, which is that if the employer fails to take reasonable steps after receiving such information, and if the employee is in fact an unauthorized alien, the employer may be found to have had constructive knowledge of that fact. The proposed rule would also state explicitly another implication of the employer's obligation under current law—whether an employer would be found to have constructive knowledge in particular cases of the kind described in each of the examples (the ones in the current regulation and in the proposed regulation) depends on the "totality of relevant circumstances" present in the particular case.

The additional examples are:

(1) Written notice from SSA that the combination of name and SSN submitted for an employee does not match SSA records; and

(2) written notice from DHS that the immigration status document, or employment authorization document, presented or referenced by the employee in completing Form I–9 was assigned to another person, or that there is no agency record that the document was assigned to anyone.

The proposed regulation also describes more specifically the steps that an employer might take after receiving a no-match letter, steps that DHS considers reasonable. By taking these steps in a timely fashion, an employer would avoid the risk that DHS may find, based on the totality of circumstance present in the particular case, that the employer had constructive knowledge that the employee was not authorized to work in the United States. The steps that a reasonable employer may take include one or more of the following:

(I) A reasonable employer would check its records promptly after receiving a no-match letter, to determine whether the discrepancy results from a typographical, transcribing, or similar clerical error in the employer's records or in its communication to the SSA or DHS. If there is such an error, the employer would correct its records, inform the relevant agencies (in accordance with the letter's instructions, if any; otherwise in any reasonable way), and verify that the name and number, as corrected, match agency records—in other words, verify with the relevant agency that the discrepancy has been resolved—and make a record of the manner, date, and time of the verification. ICE would consider a reasonable employer to have acted promptly if the employer took such steps within 14 days of receipt of the no-match letter.

(II) If such actions do not resolve the discrepancy, the reasonable employer would promptly request the employee to confirm that the employer's records are correct. If they are not correct, the employer would take the actions needed to correct them, inform the relevant agencies (in accordance with the letter's instructions, if any; otherwise in any reasonable way), and verify the corrected records with the relevant

agency. If the records are correct according to the employee, the reasonable employer would ask the employee to pursue the matter personally with the relevant agency, such as by visiting a local SSA office, bringing original documents or certified copies required by SSA, which might include documents that prove age, identity, citizenship or alien status, and other relevant documents, such as proof of a name change, or by mailing these documents or certified copies to the SSA office, if permitted by SSA. ICE would consider a reasonable employer to have acted promptly if the employer took such steps within 14 days of receipt of the no-match letter. The proposed regulation provides that a discrepancy will be considered resolved only if the employer verifies with SSA or DHS, as the case may be, that the employee's name matches in SSA's records a number assigned to that name, and the number is valid for work or is valid for work with DHS authorization (and, with respect to the latter, verifies the authorization with DHS) or that DHS records indicate that the immigration status document or employment authorization document was assigned to the employee. In the case of a number from SSA, the valid number may be the number that was the subject of the no-match letter or a different number, for example a new number resulting from the employee's contacting SSA to resolve the discrepancy. Employers may verify a SSN with SSA by telephoning toll-free 1–800–772–6270, weekdays from 7 a.m. to 7 p.m. EST. See http://www.ssa.gov/employer/ssnvadditional.htm. For info on SSA's online verification procedure, see http://www.ssa.gov/employer/ssnv.htm. Employers should make a record of the manner, date, and time of any such verification, as SSA may not provide any documentation.

(III) The proposed regulation also describes a verification procedure that the employer may follow if the discrepancy is not resolved within 60 days of receipt of the no-match letter. This procedure would verify (or fail to verify) the employee's identity and work authorization. If the described procedure is completed, and the employee is verified, then even if the employee is in fact an unauthorized alien, the employer will not be considered to have constructive knowledge of that fact. Please note that, as stated in the "PUBLIC PARTICIPATION" section above, ICE is interested in receiving public comments on the time frames in this proposed regulation. That would include the 60-day period, and also possible alternatives, such as a 30-day or 90-day time frame. In determining the time frame to be included in the final rule, ICE will consider all comments received. As further stated in "PUBLIC PARTICIPATION," the comments that will provide the most assistance to ICE on this issue will include specific factual support, including examples of circumstances under which it would be difficult for the commenting employer to resolve the issues raised in a no-match letter within 60 days of receipt of the letter.

If the discrepancy referred to in the no-match letter is not resolved, and if the employee's identity and work authorization cannot be verified using a reasonable verification procedure, such as that described in the proposed rule (see below), then the employer must choose between taking action to terminate the employee or facing the risk that DHS may find that the employer had constructive knowledge that the employee was an unauthorized alien and therefore, by continuing to employ the alien, violated INA section 274A(a)(2), 8 U.S.C. 1324a(a)(2).

The procedure to verify the employee's identity and work authorization described in the proposed rule would involve the employer and employee completing a new Form I-9, Employment Eligibility Verification Form, using the same procedures as if the employee were newly hired, as described in 8 CFR 274a.2, with certain restrictions. The proposed rule identifies these restrictions:

(*1*) Under the proposed rule, both Section 1 ("Employee Information and Verification") and Section 2 ("Employer Review and Verification") would have to be completed within 63 days of receipt of the no-match letter. Therefore, if an employer tried to resolve the discrepancy described in the no-match letter for the full 60 days provided for in the proposed rule, it would have an additional 3 days to complete a new I–9. Under current regulations, three days are provided for the completion of the form after a new hire. 8 CFR 274a.2(b)(1)(ii).

(*2*) No document containing the SSN or alien number that is the subject of the no-match letter, and no receipt for an application for a replacement of such a document, may be used to establish employment authorization or identity or both.

(*3*) No document without a photograph may be used to establish identity (or both identity and employment authorization). (This is consistent with the documentary requirements of the Basic Pilot Program. See http://uscis.gov/graphics/services/SAVE.htm.)

Employers should apply these procedures uniformly to all of their employees having unresolved no-match indicators. If they do not do so, they may violate applicable anti-discrimination laws. In this regard, the proposed regulation also amends the last paragraph of the current definition of "knowing." The current rule provides, in relevant part, that—

Nothing in this definition should be interpreted as permitting an employer to request more or different documents than are required under section 274(b)[1] of the Act or to refuse to honor documents tendered that on their face reasonably appear to be genuine and to relate to the individual.

The proposed rule clarifies that this language applies to employers who receive no-match letters, but that employers who follow the safe harbor procedures set forth in this rule will not be found to have violated the provisions of 274B(a)(6) of the INA. This clarification is accomplished by adding the following language after "individual": ", except a document about which the employer has received a notice described in paragraph (l)(1)(iii) of this section and with respect to which the employer has received no verification as described in paragraph (l)(2)(i)(B) or (l)(2)(ii)(B) of this section.". Alternative documents that show work authorization are specified in 8 CFR 274a.2(b)(1)(v). Examples are a U.S. passport (unexpired or expired), a U.S. birth certificate, or any of several documents issued to lawful permanent resident aliens or to nonimmigrants with work authorization.

There may be other procedures a particular employer could follow in response to a no-match letter, procedures that would be considered reasonable by DHS and inconsistent with a finding that the employer had constructive knowledge that the employee was an unauthorized alien. But such a finding would depend on the totality of relevant circumstances. An employer that followed a procedure other than the "safe-harbor" procedures described in the regulation would face the risk that DHS may not agree.

It is important that employers understand that the proposed regulation describes the meaning of constructive knowledge and specifies "safe-harbor" procedures that employers could follow to avoid the risk of being found to have constructive knowledge that an employee is not authorized to work in the United States. The regulation would not preclude DHS from finding that an employer had actual knowledge that an employee was an unauthorized alien. An employer with actual knowledge

---

[1] Please note, this citation is inaccurate and should read "section 274(b) of the Act." The proposed rule makes this correction.

**34284** Federal Register/Vol. 71, No. 114/Wednesday, June 14, 2006/Proposed Rules

that one of its employees is an unauthorized alien could not avoid liability by following the procedures described in the proposed regulation. The burden of proving actual knowledge would, however, be on the government. Finally, it is important that employers understand that the resolution of discrepancies in a no-match letter, or other information that an employee's Social Security Number presented to an employer matches the records for the employee held by the Social Security Administration, does not, in and of itself, demonstrate that the employee is authorized to work in the United States.

### IV. Regulatory Requirements

*A. Regulatory Flexibility Act*

The Secretary of Homeland Security, in accordance with the Regulatory Flexibility Act, 5 U.S.C. 605(b), has reviewed this regulation and, by approving it, certifies that this rule would not have a significant economic impact on a substantial number of small entities. This rule would not affect small entities as that term is defined in 5 U.S.C. 601(6). This rule would describe when receipt by an employer of a no-match letter from the Social Security Administration or the Department of Homeland Security may result in a finding that the employer had constructive knowledge that it was employing an alien not authorized to work in the United States. The rule would also describe steps that DHS would consider a reasonable response by an employer to receipt of a no-match letter. The rule would not mandate any new burdens on the employer and would not impose any new or additional costs on the employer, but would merely add specific examples and a description of a "safe harbor" to an existing DHS regulation for purposes of enforcing the immigration laws and providing guidance to employers.

*B. Unfunded Mandates Reform Act of 1995*

This rule would not result in the expenditure by State, local and tribal governments, in the aggregate, or by the private sector, of $100 million or more in one year, and it would not significantly or uniquely affect small governments. Therefore, no actions were deemed necessary under the provisions of the Unfunded Mandates Reform Act of 1995.

*C. Small Business Regulatory Enforcement Fairness Act of 1996*

This rule is not a major rule as defined by section 804 of the Small Business Regulatory Enforcement Act of 1996. This rule would not result in an annual effect on the economy of $100 million or more; a major increase in costs or prices; or significant adverse effects on competition, employment, investment, productivity, innovation, or on the ability of United States-based companies to compete with foreign-based companies in domestic or foreign markets.

*D. Executive Order 12866 (Regulatory Planning and Review)*

This proposed rule is considered by the Department of Homeland Security (DHS) to be a "significant regulatory action" under Executive Order 12866. Under Executive Order 12866, a significant regulatory action is subject to an Office of Management and Budget (OMB) review and to the requirements of the Executive Order. The Executive Order defines "significant regulatory action" as one that is likely to result in a rule that may: (1) Have an annual effect on the economy of $100 million or more or adversely affect in a material way the economy, a sector of the economy, productivity, competition, jobs, the environment, public health or safety, or State, local, or tribal governments or communities; (2) create a serious inconsistency or otherwise interfere with an action taken or planned by another agency; (3) materially alter the budgetary impact of entitlements, grants, user fees, or loan programs or the rights or obligations of recipients thereof; or (4) raise novel legal or policy issues arising out of legal mandates, the President's priorities, or the principles set forth in the Executive Order. Because this rule would describe what specific steps an employer that has received a no-match letter could take that would eliminate the possibility that DHS would find that the employer had constructive knowledge that it is employing an unauthorized alien, this rule may raise novel policy issues.

*E. Executive Order 13132 (Federalism)*

This rule would not have substantial direct effects on the States, on the relationship between the National Government and the States, or on the distribution of power and responsibilities among the various levels of government. Therefore, in accordance with section 6 of Executive Order 13132, it is determined that this rule does not have sufficient federalism implications to warrant the preparation of a federalism summary impact statement.

*F. Executive Order 12988 (Civil Justice Reform)*

This rule meets the applicable standards set forth in sections 3(a) and 3(b)(2) of Executive Order 12988.

*G. Paperwork Reduction Act*

Under the Paperwork Reduction Act of 1995, Public Law 104–13, all Departments are required to submit to the Office of Management and Budget (OMB), for review and approval, any reporting requirements inherent in a rule. This proposed rule would not impose any additional information collection burden or affect information currently collected by ICE.

### List of Subjects in 8 CFR Part 274a

Administrative practice and procedure, Aliens, Employment, Penalties, Reporting and recordkeeping requirements.

Accordingly, part 274a of chapter I of title 8 of the Code of Federal Regulations is amended as follows:

### PART 274a—CONTROL OF EMPLOYMENT OF ALIENS

1. The authority citation for part 274a continues to read as follows:

**Authority:** 8 U.S.C. 1101, 1103, 1324a; 8 CFR part 2.

2. Section 274a.1(l) is revised to read as follows:

**§ 274a.1  Definitions.**

\*      \*      \*      \*      \*

(l)(1) The term *knowing* includes having actual or constructive knowledge. Constructive knowledge is knowledge which may fairly be inferred through notice of certain facts and circumstances that would lead a person, through the exercise of reasonable care, to know about a certain condition. Examples of situations where the employer may, depending on the totality of relevant circumstances, have constructive knowledge that an employee is an unauthorized alien include, but are not limited to, situations where the employer:

(i) Fails to complete or improperly completes the Employment Eligibility Verification Form, I-9;

(ii) Acts with reckless and wanton disregard for the legal consequences of permitting another individual to introduce an unauthorized alien into its work force or to act on its behalf;

(iii) Fails to take reasonable steps after receiving information indicating that the employee may be an alien who is not employment authorized, such as—

(A) Labor Certification or an Application for Prospective Employer;

(B) Written notice from the Social Security Administration that the combination of name and social security account number submitted for the employee does not match Social Security Administration records; or

(C) Written notice from the Department of Homeland Security that the immigration status document or employment authorization document presented or referenced by the employee in completing Form I–9 was assigned to another person, or that there is no agency record that the document was assigned to any person.

(2)(i) An employer who receives the notice from SSA described in paragraph (l)(1)(iii)(B) of this section will not be deemed to have constructive knowledge that the employee is an unauthorized alien if—

(A) The employer takes reasonable steps, within 14 days, to attempt to resolve the discrepancy; such steps may include:

(1) Checking the employer's records promptly after receiving the notice, to determine whether the discrepancy results from a typographical, transcribing, or similar clerical error, and if so, correcting the error(s), informing the Social Security Administration of the correct information (in accordance with the letter's instructions, if any; otherwise in any reasonable way), verifying with the Social Security Administration that the employee's name and social security account number, as corrected, match in Social Security Administration records, and making a record of the manner, date, and time of such verification; and

(2) If no such error is found, promptly requesting the employee to confirm that the name and social security account number in the employer's records are correct—and, if they are correct according to the employee, requesting the employee to resolve the discrepancy with the Social Security Administration, such as by visiting a Social Security Administration office, bringing original documents or certified copies required by SSA, which might include documents that prove age, identity, and citizenship or alien status, and other documents that may be relevant, such as those that prove a name change, or, if the employee states that the employer's records are in error, taking the actions to correct, inform, verify, and make a record described in paragraph (l)(2)(i)(A)(1) of this section; and

(B) In the event that, within 60 days of receiving the notice, the employer does not verify with the Social Security Administration that the employee's name matches in the Social Security Administration's records a number assigned to that name and that the number is valid for work or is valid for work with DHS authorization (and, with respect to the latter, verify the authorization with DHS), the employer takes reasonable steps, within an additional 3 days, to verify the employee's employment authorization and identity, such as by following the verification procedure specified in paragraph (l)(2)(iii) of this section.

(ii) An employer who receives the notice from DHS described in paragraph (l)(1)(iii)(C) of this section will not be deemed to have constructive knowledge that the employee is an unauthorized alien if—

(A) The employer takes reasonable steps, within 14 days of receiving the notice, to attempt to resolve the question raised by DHS about the immigration status document or the employment authorization document; and

(B) In the event that, within 60 days of receiving the notice, the employer does not verify with DHS that the document was assigned to the employee, the employer takes reasonable steps, within an additional 3 days, to verify the employee's employment authorization and identity, such as by following the verification procedure specified in paragraph (l)(2)(iii) of this section.

(iii) The verification procedure referenced in paragraphs (l)(2)(i)(B) and (l)(2)(ii)(B) of this section is as follows:

(A) The employer completes a new Form I–9 for the employee, using the same procedures as if the employee were newly hired, as described in § 274a.2(a) and (b) of this part, except that—

(1) Both Section 1—"Employee Information and Verification"—and Section 2—"Employer Review and Verification"—of the new Form I–9 should be completed within 63 days of receiving the notice referred to in paragraph (l)(1)(iii)(B) or (C) of this section;

(2) No document containing the social security account number or alien number that is the subject of a written notice referred to in paragraph (l)(1)(iii)(B) or (C) of this section, and no receipt for an application for a replacement of such document, may be used to establish employment authorization or identity or both; and

(3) No document without a photograph may be used to establish identity or both identity and employment authorization; and

(B) The employer retains the new Form I–9 with the prior Form(s) I–9 for the same period and in the same manner as if the employee were newly hired at the time the new Form I–9 is completed, as described in § 274a.2(b) of this part.

(3) Knowledge that an employee is unauthorized may not be inferred from an employee's foreign appearance or accent. Nothing in this definition should be interpreted as permitting an employer to request more or different documents than are required under section 274A(b) of the Act or to refuse to honor documents tendered that on their face reasonably appear to be genuine and to relate to the individual, except a document about which the employer has received a notice described in paragraph (l)(1)(iii) of this section and with respect to which the employer has received no verification as described in paragraph (l)(2)(i)(B) or (l)(2)(ii)(B) of this section.

Dated: June 8, 2006.

**Michael Chertoff,**
*Secretary.*
[FR Doc. E6–9303 Filed 6–13–06; 8:45 am]
BILLING CODE 4410–10–P

---

**NUCLEAR REGULATORY COMMISSION**

**10 CFR Part 35**

[Docket No. PRM–35–19]

**William Stein III, M.D.; Receipt of Petition for Rulemaking**

**AGENCY:** Nuclear Regulatory Commission.

**ACTION:** Petition for rulemaking; Notice of receipt.

**SUMMARY:** The Nuclear Regulatory Commission (NRC) has received and requests public comment on a petition for rulemaking filed by William Stein III, M.D. (petitioner). The petition has been docketed by the NRC and has been assigned Docket No. PRM–35–19. The petitioner is requesting that the NRC amend the regulations that govern medical use of byproduct material concerning training for parenteral administration of certain radioactive drugs used to treat cancer. The petitioner believes that these regulations do not adequately consider the training necessary for a class of physicians, namely medical oncologists and hemotologists, to qualify as an Authorized User (AU) physician to administer these drugs. The petitioner requests that the regulations be amended to clearly codify an 80-hour training and experience requirement as appropriate and sufficient for physicians desiring to attain AU status for these unsealed byproduct materials.