JAN-11-2000  17:47          INS GENERAL COUNSEL                    202 514 8044    P.02/05



U.S. Department of Justice
Immigration and Naturalization Service

HQCOU 90/10.15-C

Office of the General Counsel                    *425 I Street NW*
                                                 *Washington, DC 20536*

                                                 APR 12 1999

David C. Whitlock, Esq.
Fisher & Phillips LLP
1500 Resurgens Plaza
945 East Paces Ferry Road
Atlanta, GA 30326-1125

Dear Mr. Whitlock:

Thank you for your letter of June 1, 1998, posing questions about our letter of December
23, 1997 to an attorney regarding employers' responsibilities under section 274A of the
Immigration and Nationality Act (INA) with respect to information on Social Security numbers.
Please accept our apologies for the delay.

Our letter stated that notice from the Social Security Administration (SSA) to an
employer notifying it of a discrepancy between wage reporting information and SSA records
with respect to an employee does not, by itself, put an employer on notice that the employee is
not authorized to work. We explained that because there are a number of reasons why there
might be such a discrepancy that do not relate to a lack of work authorization, and because actual
or constructive knowledge of unauthorized status is a case-by-case determination, we would not
consider notice from SSA of a discrepancy, without more, to constitute actual or constructive
notice of unauthorized status. Your letter takes the position that in situations other than a
reported discrepancy that "clearly relates to a misspelled name or transposed digits in the SSN,"
the report would constitute not only constructive, but actual knowledge of unauthorized status,
given that the employee necessarily used a Social Security card as proof of employment
eligibility. You also suggest that, in light of section 274A's goal of preventing the employment
of unauthorized aliens, the employer should "assume an irregularity in this situation" and require
new documentation confirming employment eligibility and/or suspend the employee until the
situation has been resolved.

We disagree. Section 274A does indeed serve the important goal of deterring illegal
immigration by reducing opportunities for unauthorized employment, but the statute, in
conjunction with section 274B, couples this goal with appropriate concern that U.S. citizens or
noncitizen nationals, lawful permanent resident aliens and other work-authorized aliens not lose

employment opportunities unnecessarily as a result of section 274A. It is simply not true that notice of a discrepancy with SSA records is actual notice of a lack of work authorization unless the error is clearly a minor typographical one. For example, consider the hypothetical case of employee Pat Smith, whose W-2 is a mismatch because SSA records indicate that the SSN pertains to Patricia Jones. That is an entirely different name, but in our hypothetical is explained by the fact that Ms. Jones has become Mrs. Smith but has neglected to report that change to SSA. Does notice of this discrepancy by itself immediately put the employer on actual notice that Mrs. Smith is an unauthorized alien, as you suggest, and therefore put it in violation of section 274A if it does not immediately suspend her? It does not. Furthermore, your assumption that an employee about whom SSA has reported a discrepancy necessarily has used a Social Security card as proof of work authorization is incorrect. The Social Security number may be written in section 1 of the Form I-9, but the employee may have presented a List A document, or a List C document other than a Social Security card in conjunction with a List B document.

We emphasize that although it is incorrect to assume that an SSA discrepancy necessarily indicates unauthorized status, it would be equally incorrect for an employer to assume that in all cases it may safely ignore any possible INA relevance or consequences of SSA discrepancies. For example, perhaps an employer receives information from some other source (such as a tip from another employee) indicating that an employee is unauthorized, and also receives notice from SSA that the employee's SSN does not match. In considering whether the totality of the circumstances rises to actual or constructive knowledge, the SSA notice is a relevant fact that would support a conclusion that it does. This is the type of situation we had in mind when we said in our December 23, 1997 letter that although an SSA notice of discrepancy standing alone does not itself put the employer on notice of unauthorized status, there may be situations in which such notice would cause or contribute to a determination that the employer has been put on notice.

In addition, an employer should not ignore the consequences of the follow-up activity it should perform in response to an SSA notice in order to reconcile its records for SSA purposes, such as verifying names and SSNs by examining Social Security cards. While this activity is not required by the INA (nor is it prohibited by it), the knowledge obtained by an employer through this process may have INA implications. For example, consider the case of an employee who, when asked to show his Social Security card for SSA reconciliation purposes, states that he is an unauthorized alien and does not have one. If that employee's employment is continued, the employer has violated section 274A. There is no safe harbor for such information just because it was learned as a result of non-INA-related business activity. As explained in our December 23, 1997 letter, if the employer learns reliable information that contradicts the Form I-9, such as a different Social Security number or name, the Form I-9 should be corrected in a non-destructive manner and, if the contradiction is with section 2 information, the employer should review acceptable Form I-9 documentation showing the correct information. Furthermore, if an employee has been given the opportunity for wage reporting purposes to explain and reconcile a reported discrepancy with SSA records, and has failed to do so satisfactorily, that is an entirely different situation from an initial SSA notice standing alone. The INS would be much more likely at that point to consider that employer to have violated section 274A if it continues the employment without taking appropriate steps to reverify work authorization, and the employee is in fact unauthorized.

David C. Whitlock, Esq.
Page 3

Your letter also asks for clarification of our previous statement that an employer could be held liable for knowingly employing an unauthorized alien if it hires someone using a known invalid SSN. Again, let us consider a fact pattern: An employer knows (as all employers reasonably should) that all SSNs have 9 digits. An employee provides an SSN (either in section 1 or section 2 of the Form I-9) that has only 6 digits. If that employee is unauthorized, the INS may charge that employer with the knowing hire of an unauthorized alien. Further, the employer attests under penalty of perjury in section 2 of the Form I-9 that "to the best of my knowledge the employee is eligible to work in the United States." If, in fact, to the best of the employer's knowledge the employee is using an invalid SSN, that is a false attestation.

Your letter questions why the employer may be liable "for the employee's failure to record the SSN correctly," when it is the employee rather than the employer who declares under penalty of perjury that the information in section 1 of the Form I-9 is correct. It is true that the employer is not the guarantor of the section 1 information supplied by the employee and is not required to investigate its truthfulness, but the employer's certification in section 2 that to the best of its knowledge the employee is work authorized (as well as potential liability for aiding and abetting an employee's perjury), means that it cannot knowingly condone a false section 1. If the employer knows at the time of hire that section 1 information is incorrect, it cannot execute the section 2 certification. In the scenario in the preceding paragraph, the employer may be liable under section 274A not because the SSN is incorrect, but because it knew that it was incorrect and accepted it anyway.

This information pertains as well to your question about our statement that an employer should not rely on a Form I-9 as a verification of employment eligibility if the employer determines that the employee has fraudulently executed it. You point out that a false statement on the Form I-9 (for example, a false date of birth) may have "nothing to do with the individual's right to work." Our prior letter used the term "fraudulently" advisedly, according to its common-law meaning of a material misrepresentation upon which the recipient of the misrepresentation detrimentally relies. There may be circumstances in which an employee's false statement on the Form I-9 is unrelated to the purpose of the Form – verification of authorization to work – and therefore would not be "fraudulent." However, employers should exercise caution about drawing that conclusion, as all the information on the Form I-9 is there for a reason. For example – using the examples you mention, lies about age or address – the false statement would be entirely material to the purpose of the Form I-9 if it was made to reconcile the section 1 information with the age or address shown in false documents presented for section 2. As a general matter, a Form I-9 that contains a statement by an employee that was knowingly false when it was made is not a trustworthy document. We believe that an employer who discovers that its employee has lied on a Form I-9 about any fact is fully entitled to take reasonable steps (such as a reverification) to ensure that the employee has not also lied about his or her work authorization or anything else on the form, and that if it continues the employment without doing so, it is taking a risk that it may be held liable if in fact the employee is not authorized.

David C. Whitlock, Esq.
Page 4


You state that the Internal Revenue Service issues to aliens who lack employment authorization but who need to file tax returns "Individual Taxpayer Identification Numbers ('ITINs') that resemble SSNs with respect to numbers and order of digits, but begin with a '9,'" and that in cases where an authorized worker has not received an SSN "the worker would expect to record the ITIN in section 1 of the I-9 form." That would be incorrect. No number other than a Social Security account number should be recorded in the designated space in section 1 of the Form I-9. Social Security numbers do not begin with a "9" and, except in extremely rare situations as individually determined by SSA on a case-by-case basis for extraordinary and compelling reasons, they do not change; an individual's SSN is his or her number for life.

I hope this information is useful. If we may be of assistance in the future, please let us know.

Sincerely,

Paul W. Virtue
General Counsel