

Immigration and Naturalization Service

Office of the General Counsel

425 I Street, N.W.
Washington, D.C. 20536

HQCOU 90/10.10-C

Bruce R. Larson, Esq.                        DEC 23 1997
Littler Mendelson
1100 Peachtree St., N.E.
Suite 2000
Atlanta, GA  30309-4520

Dear Mr. Larson:

Thank you for your letter asking about the responsibilities under section 274A of the Immigration and Nationality Act (INA) of an employer who has received information from the Social Security Administration (SSA) indicating that Forms W-2 filed by the employer show names or Social Security numbers (SSNs) of employees that do not agree with SSA records. Although we are unable to provide you with legal advice specific to your client, we are able to make some general observations which may be helpful to you.

As you correctly note, there may be many legitimate reasons for a discrepancy between the name and SSN reported by an employee on the W-2 and/or Form I-9 and SSA records. We would not consider notice of this discrepancy from SSA to an employer by itself to put the employer on notice that the employee is unauthorized to work, or to require reverification of documents or further inquiry as to the employee's work authorization. Whether an employer has been put on notice of an unauthorized employment situation is, however, an individualized determination that depends on all the relevant facts, and there may be specific situations in which SSA notice of an SSN irregularity would either cause, or contribute to, such a determination.

In particular, we note that SSA has provided to your client employer the following information:

> A valid SSN must have a total of nine digits. The first three digits are referred to as the area, the next two as the group, and the last four as the serial. No SSNs with a 000 area number, or an area number in the 800 or 900 series, have been issued. Also, no SSNs with a 00 group or 0000 serial number have been issued.

An SSN containing an unissued area, group or serial number as described above, or a number of digits other than nine, is an invalid SSN. If an employee provides to an employer with knowledge of these facts an invalid SSN (either in section 1 of the Form I-9 or on a Social Security card presented to the employer and recorded in section 2), it is possible that the INS

could consider a failure to follow up on this knowledge with further inquiry to constitute knowing employment of an unauthorized alien, should the employee turn out to be unauthorized to work. An employer that knows the above quoted SSA information but employs an individual using a known invalid SSN conceivably could be subject to penalties not only under section 274A of the INA, but to civil or even criminal penalties under section 274C of the INA and Title 18 of the U.S. Code for document fraud or false attestations.

Your letter raises the question of an employer's responsibilities if it learns from its employee that the employee's name or SSN is different from that shown on the Form I-9. Upon receipt of information from the employee indicating that any information recorded on the employee's Form I-9 is erroneous, the employer should correct it in a manner that shows the correct information without obliterating the formerly recorded information. For example, a way to do this is to draw a single line through the incorrect information, record the correct information in the nearest available space on the Form I-9, and initial and date the correction. If the correction is to section 1 of the Form I-9, the employee should also initial the correction. If the new information contradicts Form I-9 section 2 information, such as the name or SSN of the employee as shown on previously presented documentation, the employer may request to see acceptable Form I-9 documentation showing the correct information in order to ensure accuracy. These corrections will protect the employee as well as the employer by ensuring that INS or other federal officers authorized to inspect the Form I-9 will receive up-to-date and accurate information regarding the employee.

Learning of a change to an employee's Social Security information does not by itself put the employer on notice that the employee is presently not work authorized. Indeed, one scenario that has come to the attention of the INS on occasion is the following: An employee has been working under a false SSN. The employee subsequently becomes work authorized and obtains a legitimate SSN. Wishing to ensure that his earnings are credited, the employee tells his employer that his SSN has changed. Depending on the circumstances, this notification may put the employer on notice not that the employee is unauthorized, but that the employee has committed fraud. Knowing false statements on the Form I-9, or the use of false documents to obtain employment, are felonies that are not excused by subsequent grants of work authorization or lawful status. An employer who suspects them may apply, in a nondiscriminatory manner, any policies it applies generally to suspected criminal conduct in its workplace, or to suspected false statements in employment documentation. If an employer determines that an employee has fraudulently executed the Form I-9, the employer should not continue to rely on that form as a verification of employment eligibility, and should require that the employee complete a new Form I-9 if the employer continues the employment (while retaining the original form for the designated period as evidence of compliance with the verification requirements at the time of hire). Criminal conduct involving the Form I-9 may be reported to the INS.

We strongly emphasize that this does not mean that all changes to name or SSN information recorded on the Form I-9 mean that fraud has taken place. Each such case should be considered on its particular facts. One fact of general application is that names may change for a variety of reasons, but SSNs do not change (although they may be recorded erroneously on forms). For this reason, a claimed change of SSN is arguably a situation that raises more of a red flag than a

claimed change of name. Of course, all such situations should be reviewed in the light of common sense. A change to an SSN that merely corrects a transcription error, such as recording one or two digits erroneously, would be an unlikely indicator of fraud, but if an employee reports what is clearly an entirely different SSN than the one he or she previously has used, something is wrong. Similarly, receipt of information showing that an employee has been working under a completely different name than his or her actual name reasonably raises questions about an employee's identity that are not raised by change of a last name due to marriage, correction of a middle initial, reconciliation of an incorrectly or differently recorded ethnic name, or other legitimate corrections.

This information relates to an employer's responsibilities under section 274A of the INA. For specific advice relating to immigration-related discrimination concerns, we recommend that you contact the Office of Special Counsel for Immigration-Related Unfair Employment Practices within the Civil Rights Division of the Department of Justice.

I hope this information is helpful. If you have any further questions, please contact ███, ███████, Associate General Counsel, at (202) ███████.

Very truly yours,

*[signature]* for
David A. Martin
General Counsel