**GAO**

**United States Government Accountability Office**

Report to the Chairman, Subcommittee on Immigration, Border Security and Claims, Committee on the Judiciary, House of Representatives

August 2004

# TAX ADMINISTRATION

# IRS Needs to Consider Options for Revising Regulations to Increase the Accuracy of Social Security Numbers on Wage Statements



**G A O**
Accountability ★ Integrity ★ Reliability

GAO-04-712

**G A O**
Accountability·Integrity·Reliability

# Highlights

Highlights of GAO-04-712, a report to
Chairman of the Subcommittee on
Immigration, Border Security and Claims,
Committee on the Judiciary, House of
Representatives

August 2004

## TAX ADMINISTRATION

## IRS Needs to Consider Options for Revising Regulations to Increase the Accuracy of Social Security Numbers on Wage Statements

### Why GAO Did This Study

Inaccurate social security numbers (SSN) on wage statements contribute to growth in the Social Security Administration's (SSA) Earnings Suspense File, increase the Internal Revenue Service's (IRS) workload to ensure that wages are properly identified for those earning them, and burden individuals who must work with SSA and IRS to resolve disputes that may affect their social security benefits and tax obligations. IRS's ability to penalize employers for submitting inaccurate SSNs on wage statements is intended to promote SSN accuracy. Items GAO was asked to describe included:

- the statutory provisions authorizing IRS to penalize employers who file wage statements with inaccurate SSNs;
- IRS's program to penalize such employers; and
- the extent IRS's program meets legislative requirements, the likelihood of any penalties, and any program changes being considered.

### What GAO Recommends

GAO recommends that IRS consider options for revising the reasonable cause waiver and consult with other agencies that could be affected by such a change prior to issuing any proposed regulations. IRS agreed with our recommendations and said that IRS must proactively work with other potentially affected agencies on possible changes.

www.gao.gov/cgi-bin/getrpt?GAO-04-712.

To view the full product, including the scope and methodology, click on the link above. For more information, contact Michael Brostek at (202) 512-9110 or brostekm@gao.gov.

### What GAO Found

IRS is authorized to penalize employers who fail to file information returns or fail to include complete and correct information on them. Prior to 1986, IRS was authorized to assess penalties for failure to file information returns. The Tax Reform Act of 1986 added penalties for failure to include complete and correct information, established penalty amounts, and had two provisions limiting those penalties—the "reasonable cause waiver" and a maximum of $20,000 in penalties per filer per calendar year. The Omnibus Budget Reconciliation Act (OBRA) of 1989 increased the penalty amounts and the maximum total penalty amounts, ranging from $25,000 to $250,000 per filer per calendar year and added a third limit—a "de minimis provision" limiting the number of penalties that can be assessed. These statutes apply to employers who submit wage statements with inaccurate SSNs. Both acts authorize penalties as a tool to help ensure that information returns include complete and accurate information.

According to IRS officials, IRS has the capability to identify employers who file wage statements with inaccurate SSNs but does not have a dedicated compliance program for penalizing them. Currently employers may be penalized based on an employment tax examination. IRS regulations define the steps an employer needs to take to demonstrate that any filing of wage statements with inaccurate SSNs was due to reasonable cause. If reasonable cause exists, any potential penalty will be waived. To qualify for the reasonable cause waiver, employers must be able to demonstrate they solicited an SSN from each employee one to three times, depending on the circumstances, and that they used this information to complete the wage statements. Employers are not responsible for verifying the accuracy of an SSN. IRS is conducting a review of 100 "egregious" employers who filed large numbers or percentages of wage statements with inaccurate SSNs to determine whether and how to implement a penalty program.

IRS's regulations that implement the penalty provisions meet the statutory requirements; however, the criteria for meeting the reasonable cause waiver is such that few if any employers are likely to be penalized for filing inaccurate SSNs. IRS has no record of ever penalizing an employer, including the employers who were contacted during IRS's review of "egregious" employers.

IRS officials said they would consider changes, including requiring employers to verify SSNs provided by employees, as part of the "egregious" employer study. Requiring SSN verification, however, may affect employers and other federal agencies with roles related to federal immigration policy since some portion of inaccurate SSNs on wage statements is attributable to illegal aliens using invalid SSNs. IRS officials said they would likely take the views of other agencies into account after drafting regulations.

_____ **United States Government Accountability Office**

# Contents

## Letter

|  | 1 |
|---|---|
| Results in Brief | 2 |
| Background | 5 |
| Legislation Authorizes IRS to Penalize Employers Who File Inaccurate SSNs | 7 |
| IRS Does Not Have a Dedicated Compliance Program to Penalize Employers Who File Wage Statements with Inaccurate SSNs | 9 |
| Although IRS's Regulations Meet Statutory Requirements, It Is Unlikely Employers Will Be Penalized; IRS Will Consider Changes | 15 |
| IRS Plans to Design an Evaluation of Its Penalty Program if a Program Is Adopted | 20 |
| Conclusions | 21 |
| Recommendations | 22 |
| Agency Comments and Our Evaluation | 22 |

## Appendixes

| Appendix I: | Objectives, Scope, and Methodology | 24 |
|---|---|---|
| Appendix II: | Comments from the Internal Revenue Service | 26 |
| Appendix III: | Comments from the Social Security Administration | 28 |

## Table

| Table 1: | Individual Penalty Amounts and Maximum Total Penalty Amounts under OBRA of 1989 | 8 |
|---|---|---|

This is a work of the U.S. government and is not subject to copyright protection in the United States. It may be reproduced and distributed in its entirety without further permission from GAO. However, because this work may contain copyrighted images or other material, permission from the copyright holder may be necessary if you wish to reproduce this material separately.



**United States Government Accountability Office**
**Washington, D.C. 20548**

August 31, 2004

The Honorable John N. Hostettler
Chairman,
Subcommittee on Immigration, Border Security and Claims
Committee on the Judiciary
House of Representatives

Dear Mr. Chairman:

Inaccurate social security numbers (SSN) on wage statements contribute to growth in the Social Security Administration's (SSA) Earnings Suspense File, increase the Internal Revenue Service's (IRS) workload to ensure that wages are properly identified for the individual earning them, and burden individuals who must work with SSA and IRS to resolve disputes that may affect their social security benefits and tax obligations. For example, one of SSA's goals is to ensure that individuals receive the social security benefits to which they are entitled. To do so, SSA uses annual earnings information recorded in each person's social security account that is established in the individual's name with a unique social security number to calculate their benefits. Employers use IRS Form W-2 (Wage and Tax Statements) to report this information to SSA. Due to name and SSN inaccuracies on the Forms W-2 (hereafter referred to as wage statements), SSA has been unable to assign billions of dollars of social security wages earned each year to the individuals who earned them. The IRS, as well as others, has responsibility for taking steps to assure information submitted on wage statements is accurate. One tool that IRS can use to do this, which is authorized by legislation, is penalizing employers who file wage statements with inaccurate information; such penalties were established to help ensure employers would report accurate information.

Because of your interest, this report describes:

- the statutory provisions authorizing IRS to penalize employers who file wage statements with inaccurate SSNs;

- IRS's current program for identifying and penalizing employers who file wage statements with inaccurate SSNs;

- whether the current program meets legislative requirements, the likelihood that employers will be penalized for filing wage statements with inaccurate SSNs, and any program changes being considered; and

GAO-04-712 Tax Administration

- how IRS is evaluating or planning to evaluate the effectiveness of its program on curtailing the filing of wage statements with inaccurate SSNs.

To address these objectives, we reviewed pertinent legislation, regulations, legal files, penalty assessment records, and Treasury Inspector General for Tax Administration (TIGTA) and IRS's Large and Mid-Size Business (LMSB) Division reports. We interviewed IRS officials including those in the Office of Chief Counsel, the National Program for Penalties and Interest office, the Small Business/Self Employed (SBSE) Division, and the LMSB Division. We also examined the design of IRS's study for determining whether and how to implement a program for penalizing employers who file wage statements with inaccurate SSNs by reviewing documents and interviewing officials. In addition, we interviewed SSA officials to obtain information about the number of wage statements filed by employers with names and SSNs that do not match SSA's records, the relationship between wage statements with inaccurate SSNs and social security benefits, and the tools SSA makes available to employers to verify SSNs. We also reviewed literature and reports related to the use of SSNs by the Department of Homeland Security (DHS) and discussed this use with knowledgeable GAO staff. We did not conduct a data reliability assessment because IRS does not collect data on penalties related to wage statements filed with inaccurate SSNs. We performed our work from November 2003 through June 2004 in accordance with generally accepted government auditing standards. Our scope and methodology are discussed in greater detail in appendix I.

## Results in Brief

Internal Revenue Code Section 6721 authorizes IRS to penalize employers for failure to file an information return by the required filing date, failure to include complete information, and failure to include correct information including accurate SSNs.[1] The Tax Reform Act of 1986 authorized IRS to assess penalties against employers for failure to include complete or correct information, including correct SSNs, on an information return filed

---

[1] Internal Revenue Code Section 6724 lists the information returns covered by these penalty provisions. For example, they apply to banks, stockbrokers, and other financial institutions that pay interest and dividends, as well as to employers. Because our focus is on wage statements filed by employers with inaccurate SSNs, we refer only to this issue when discussing the statutory and regulatory provisions except when reference to other information return providers is needed for clarity.

with the IRS.[2] Wage statements, which are filed by employers, are one type of information return falling under this statutory authority. Under this Act, the penalty was $5 for each problem information return up to a maximum of $20,000 assessed against an employer in any calendar year. As under prior law that authorized penalties when employers failed to file information returns, the Act included an exception, referred to as the "reasonable cause waiver," if the failure to include complete or correct information was due to reasonable cause and not to willful neglect. The Omnibus Budget Reconciliation Act (OBRA) of 1989 consolidated the penalty for failure to include complete or correct information on an information return with the penalty for failure to file an information return.[3] This Act also included the reasonable cause waiver and revised the amounts of penalties that could be assessed against employers. OBRA imposed a penalty of $15 to $50 per offense depending on the circumstances with a maximum of $250,000 per calendar year per employer regardless of the number of information returns that were either not filed or were filed with incomplete or incorrect information. OBRA also reduced the penalty if corrections were made within a specified time period and eliminated the penalties in some cases if information returns are completed or corrected by a specific date, referred to as the "de minimis provision." Even though both Acts included provisions that limited or waived penalties, they authorized the use of penalties as a tool to help ensure that employers and others file information returns with complete and accurate information.

According to IRS officials, IRS has the capability to identify employers who file wage statements with inaccurate SSNs but does not have a dedicated compliance program for penalizing them. However, at times, this is done within the context of employment tax examinations. IRS does have regulations for implementing the penalty provisions and has been conducting an assessment to determine whether and how to implement a penalty program that would create incentives for employers to improve the accuracy of SSNs included on wage statements. The regulations include the steps an employer must take to qualify for the reasonable cause waiver and avoid a penalty. To comply with the regulations and avoid a penalty, employers must request each employee to provide an SSN, use that SSN to prepare the employee's wage statement, and if notified by IRS that the SSN

---

[2] Public Law 99-514, October 22, 1986.

[3] Public Law 101-239, December 19, 1989.

is incorrect, make up to two annual solicitations for a correct SSN from the employee. If the employer takes these steps and still files a wage statement with an inaccurate SSN that was provided by the employee, then in most cases, the employer qualifies for the reasonable cause waiver and no penalty will be assessed. Employers are not responsible for verifying the accuracy of the SSNs. IRS is also reviewing 100 "egregious" employers who were selected based on the number or percentage of wage statements they filed with inaccurate SSNs for tax year 2000.[4] IRS plans to use the reviews to determine what actions, if any, it will take to best implement a penalty program.

IRS's regulations that implement the provisions penalizing employers who file wage statements with inaccurate SSNs meet the statutory requirements; however under current regulations, employers are unlikely to be penalized for filing wage statements with inaccurate SSNs. Under the legislation, penalties are to be waived if the employers meet the reasonable cause waiver. The criteria in IRS's regulations for meeting the waiver are such that few, if any, employers are likely to be penalized for submitting inaccurate SSNs. In fact, IRS has no record of ever penalizing an employer for inaccurate SSNs on a wage statement. This is borne out, in part, by IRS's review of the 100 "egregious" employers, i.e., employers who have made high numbers of SSN errors on wage statements or who had high rates of errors. After reviewing 78 of 100 employers, IRS did not identify any who should be penalized because these employers were able to demonstrate they made the required solicitations.

As part of their study of "egregious" employers, IRS officials said they would consider a range of changes, including requiring employers to verify SSNs provided by employees. This option was among draft recommendations based on the portion of IRS's study looking at the 50 employers with high numbers of SSN errors. Regarding the part of the review related to small and self-employed businesses, IRS's SBSE Division concluded that for the employers reviewed to date, many of their employees for whom inaccurate SSNs had been filed appeared to be aliens. TIGTA has estimated that in tax year 2000, at least 265,000 illegal aliens had wage statements with invalid SSNs. In part because illegal aliens contribute to inaccurate SSNs, corrective measures like requiring employers to verify SSNs provided by employees may affect employers and other federal agencies that have roles related to federal immigration policy.

---

[4] As of May 2004, IRS had completed 78 of these reviews.

For example, verification requirements might lead to additional employer responsibilities to verify employees' employment eligibility, which is in the purview of the DHS. In addition, the Office of Special Counsel for Immigration Related Unfair Employment Practices in the Department of Justice could oversee employers' actions vis-à-vis employees. Although IRS officials said that they likely would take the views of these other agencies into account in considering revisions to IRS's regulations, this most likely would not occur until the agencies comment on draft regulations.

IRS officials have indicated that if a penalty program is developed and implemented, they do plan to evaluate its effectiveness on curtailing the filing of wage statements with inaccurate SSNs. Officials said they would determine the specific design for an evaluation after a program is adopted.

Given the central role that the reasonable cause standard plays in defining the responsibilities of employers and thereby potential progress in improving the accuracy of SSNs on wage statements, we recommend that the Commissioner of Internal Revenue consider options for revising this standard. Further, because changes to this standard likely would have consequences for other federal agencies, the Commissioner should ensure that as IRS officials consider whether and how to modify this standard, representatives of other potentially affected federal agencies are consulted prior to issuing any proposed regulations. The Commissioner agreed with our recommendations and said that IRS must proactively work with other potentially affected agencies on possible changes.

## Background

When employees are hired, they must complete an IRS Form W-4 (Employee's Withholding Allowance Certificate) so that the employer can withhold the correct federal income tax from their pay. Shortly after the end of each calendar year, every employer who pays employees remuneration for services must furnish a wage statement to each employee and submit this information to SSA. Wage statements include the employee's name, SSN, and the amount of wages earned, among other things and generally, employers use the employee names and SSNs on the Forms W-4 to prepare them.

Wage statements are the critical documents used by SSA for assigning social security benefits. When an employer submits a wage statement to SSA, SSA posts the employee's earnings to the employee's earnings record, which is then used to determine an individual's eligibility for, and amount

of, retirement, disability, or survivor benefits administered by the agency. When the wage statement contains a name/SSN combination that does not match SSA's records, SSA conducts a series of procedures to try and match them to its records. If these procedures do not result in a match, then SSA is unable to post the employee's earnings to the employee's earnings record and instead, the wage statement and the associated wages are placed in the Earnings Suspense File (ESF).

The ESF represents the cumulative amount of wage statements for 1937 through 2003 for which SSA does not have a matching name/SSN. Through tax year 2001, which is the most recent year for which complete data are available, the ESF included over 244 million records involving wages of over $421 billion. Since 1990, this file has been increasing by an average of 5 million records and at least $17 billion annually.[5] These records and their associated earnings are only removed from the ESF when the wages can be matched and posted to an individual's earnings record. Items can be removed through SSA efforts to match names and SSNs or when a person provides an accurate name/SSN combination and information that proves he or she earned the wages. If they are not removed, employees will not receive benefits based on these wages.

Besides affecting SSA's workload and burdening individuals with trying to work with SSA to prove they earned certain wages, errors in SSNs on wage statements also affect IRS and individual taxpayers. For example, an individual may give an employer someone else's name and SSN. The employer then files a wage statement with the SSN. The person to whom the SSN belongs will not claim the wages on his or her tax return. IRS will then send a notice to the individual about the unclaimed wages. IRS and the individual must then work together to resolve the problem, adding to both IRS's workload and the burden on the taxpayer to comply with the tax laws. In addition, IRS must try to identify which individual actually earned the wages.

---

[5] *The Social Security Administration's Earnings Suspense File Tactical Plan and Efforts to Reduce the File's Growth and Size*, Office of the Inspector General, Social Security Administration A-03-97-31003 (February 2000).

GAO-04-712 Tax Administration

## Legislation Authorizes IRS to Penalize Employers Who File Inaccurate SSNs

Internal Revenue Code Section 6721 authorizes IRS to penalize employers for failure to file an information return by the required filing date, failure to include complete information, and failure to include correct information including accurate SSNs. This legislation also places limits on the penalties including providing for the waiver of penalties if the behavior of employers in failing to provide information or report complete and accurate information was due to reasonable cause and not a result of willful neglect. The penalties were authorized as a tool to help IRS ensure that employers and others file information returns with complete and accurate information.

Prior to the enactment of the Tax Reform Act of 1986, IRS was authorized to assess penalties for failure to file information returns including wage statements filed by employers. The 1986 Act authorized IRS to assess penalties for failure to include all required information on information returns and for failure to include correct information, including accurate SSNs. The 1986 Act also established the amount of a penalty, $5 per information return, limited those penalties to a maximum of $20,000 per filer in any calendar year except in cases of intentional disregard, and included the reasonable cause waiver.[6]

OBRA of 1989 increased the penalty amounts to $15 to $50 for each non-filed, incomplete, or inaccurate information return with the amount depending on if and when corrections were made and included three provisions that limit penalties assessed against employers. The first provision, which was included in previous legislation, is the reasonable cause waiver. IRS regulations, which are discussed later in this report, provide guidance for determining if someone acted with reasonable cause rather than with willful neglect.

The second provision limits total penalties assessed against an employer to a maximum dollar amount in any calendar year. The maximums range from $25,000 to $100,000 for small businesses and from $75,000 to $250,000 for large businesses with the penalty amount depending on if and when

---

[6] In cases of intentional disregard, the penalty will be $100 or greater for each failure but there is no limit on the total amount of penalties that can be assessed. IRS regulations, which are discussed later in this report, provide guidance for determining if someone acted with intentional disregard.

corrections are made.[7]  The maximum penalty amounts, which are presented in table 1, are the total maximum penalty amounts that can be assessed against an entity regardless of how many information returns it must file and for any of the three reasons for which a penalty can be assessed.  For example, if a large business could be assessed a $200,000 penalty for failing to file dividend information returns and a $100,000 penalty for failing to file wage statements with accurate SSNs, the maximum penalty that could be assessed is not $300,000 but rather $250,000.  These penalty amounts are for unintentional failures.

**Table 1:  Individual Penalty Amounts and Maximum Total Penalty Amounts under OBRA of 1989**

| Reason for penalty | Penalty per failure | Small business | Large business |
|---|---|---|---|
| Failure to file, to include complete information, or to include correct information | $50 | $100,000 | $250,000 |
| Corrected return filed within 30 days | $15 | $25,000 | $75,000 |
| Corrected return filed after 30 days but on or before August 1 of the calendar year in which the required filing date occurs | $30 | $50,000 | $150,000 |

Source: OBRA of 1989.

The third provision limiting penalties is the "de minimis provision."  Under this provision, penalties will not be assessed for incomplete or inaccurate information returns if they are corrected on or before August 1 of the calendar year in which the required filing date occurs.  The number of information returns this provision applies to shall not exceed the greater of 10 returns or one-half of 1 percent of the total number of returns to be filed.

---

[7] By law, a business is defined as small if for any calendar year the average annual gross receipts for the most recent 3 taxable years ending before such calendar year do not exceed $5,000,000.

GAO-04-712 Tax Administration

## IRS Does Not Have a Dedicated Compliance Program to Penalize Employers Who File Wage Statements with Inaccurate SSNs

According to IRS officials, IRS has the capability to identify employers who file wage statements with inaccurate SSNs but does not have a dedicated compliance program for penalizing them. However, at times, this is done within the context of an employer's employment tax examination. IRS's regulations for implementing the penalty provisions include the steps an employer can take to demonstrate that any filing of wage statements with inaccurate SSNs was due to reasonable cause and not willful neglect. In addition, IRS has been conducting an assessment of 100 "egregious" employers who filed large numbers of wage statements with inaccurate SSNs or had a high rate of such filings to determine whether and how to implement a penalty program that would create incentives for employers to improve the accuracy of SSNs included on wage statements.

### No Dedicated Compliance Program for Penalizing Employers

According to IRS officials, although IRS has the capability to identify employers who file wage statements with inaccurate SSNs, it does not have a dedicated compliance program for penalizing them. In September 2002, TIGTA also reported that IRS did not have such a compliance program and recommended that IRS initiate a regularly scheduled program for proposing penalties when employers file wage statements with inaccurate SSNs.[8] In response to the TIGTA report, IRS management said that IRS did not develop a regularly scheduled program because of concerns about the level of resources needed to administer the program and the complexity of administering such a program in comparison to the benefits that it would have for tax administration. Management added that they are developing a program for identifying and penalizing employers when warranted.

According to IRS officials, when the legislation was passed to authorize penalties for failure to file complete and accurate information returns, Congress was primarily concerned with Form 1099 information returns, such as for interest income and dividends and distributions, rather than wage statements because of the possible effect on tax revenues. IRS officials said that the non-reporting of Form 1099 income by taxpayers had a greater effect on tax revenues since no taxes had been withheld from income reported on Forms 1099, whereas, in most cases, some taxes had been withheld from income reported on wage statements. IRS started

---

[8] *The Internal Revenue Service Does Not Penalize Employers that File Wage and Tax Statements with Inaccurate Social Security Numbers*, TIGTA Reference Number 2002-30-156 (September 2002).

assessing penalties related to some Forms 1099 in the early 1990s and has gradually added other types of Forms 1099 to the penalty program. Now IRS believes that compliance associated with Forms 1099 has shown improvement allowing the agency to focus on developing a penalty program for employers that file wage statements with inaccurate SSNs.

## Employment Tax Examinations Can Be Used to Assess Penalties

Employment tax examinations may result in penalties for filing wage statements with inaccurate SSNs.  Employment tax examinations cover areas such as determining if social security and Medicare taxes were properly withheld, whether persons were properly classified as either employees or as independent contractors, and whether the employers provided the appropriate information returns to IRS and their employees.[9] According to the Director of the SBSE Office of Employment Tax, IRS staff may review the accuracy of SSNs on wage statements to determine if penalties should be proposed when conducting an employment tax examination.  Even though the filing of wage statements with inaccurate SSNs is not a criterion used to select employers for an employment tax examination, if IRS has an indication that there is a problem with inaccurate SSNs, the tax examiner is to draw a sample of wage statements to determine if the SSNs on them are the same as the SSNs on the Forms W-4.  If they are the same, then no penalty is proposed.  If any or all are dissimilar, the employer would be instructed to make annual solicitations as described later in this report or face an IRS penalty.[10]  LMSB employment tax examination officials said that they do not routinely compare SSNs on wage statements to the SSNs on Forms W-4; however, an examination could result in the assessment of a penalty.

[9] IRS's SBSE Division is responsible for providing program leadership for all IRS employment tax matters.  SBSE officials conduct employment tax examinations related to small businesses and self-employed taxpayers and LMSB officials do the same for large and mid-size businesses.

[10] An employer cannot avoid a penalty simply by making an annual solicitation.  The annual solicitation is necessary to establish reasonable cause; and if after making an annual solicitation, an employee provides a new SSN, the employer must use the recently provided SSN on any subsequent wage statements.

## IRS Regulations Require Employers to Solicit Employees' SSNs

The IRS regulations that implement the penalty provisions require employers to solicit SSNs from their employees but they are not required to verify them.[11]  Draft temporary regulations for assessing penalties for failing to provide complete and correct information on information returns related to the Tax Reform Act of 1986 were circulating within the IRS as early as December 1986.  IRS issued temporary regulations in September 1987 that included a solicitation for public comments.[12]  IRS received public comments on the draft regulations and issued final regulations in April of 1991.[13]  Although OBRA of 1989 subsequently revised the penalty provisions, these initial regulations did not reflect any revisions relative to OBRA even though they were issued almost a year and a half after OBRA was passed.  IRS issued temporary regulations for OBRA in February 1991,[14] and after receiving public comments and holding a public hearing, issued final regulations for the revised penalty provisions in December 1991.[15]

The regulations include guidance for implementing the reasonable cause waiver included in the legislation.  IRS officials said that when they developed this guidance, they tried to balance encouraging voluntary compliance with the law with the burden placed on filers for complying.  Under the waiver, filers of information returns will not be assessed a penalty for any of the three types of failures included in the legislation, including failing to file a wage statement with an accurate SSN, if they can show that the failure was due to reasonable cause and not willful neglect.  To do so, they must demonstrate either there were significant mitigating factors for the failure or that the failure arose from events beyond their control.  In addition, they must demonstrate they acted in a responsible manner both before and after filing the information returns including wage statements.

---

[11] 26 CFR 301.6721 through 301.6724.

[12] 52 FR 34355, September 10, 1987; employers and other information return filers were to follow the temporary regulations from the date of their publication.

[13] 56 FR 15040, April 15, 1991.

[14] 56 FR 6969, February 21, 1991; employers and other information return filers were to follow the temporary regulations from the date of their publication.

[15] 56 FR 67178, December 30, 1991.

| | |
|---|---|
| **Significant Mitigating Factors and Events Beyond the Filer's Control** | The regulations include examples of significant mitigating factors or events beyond the filer's control.  Examples of significant mitigating factors are that the filer was never required to file this type of information return before or the filer has an established history of complying with the information return reporting requirements.  Examples of events beyond the filer's control are the unavailability of business records due to unforeseen conditions, such as a fire, that damaged business records or actions of other parties such as IRS, the filer's agent, or the payee of the item included in the information return.  In the case of the latter, the filer must show that the failure resulted from the failure of the payee to provide the information to the filer or that the payee provided incorrect information to the filer.  Thus, an employer may claim that the failure to include correct information on a wage statement was due to the actions of the payee if the employer received an SSN from the employee, relied on that number in good faith, and used it on a wage statement. |
| **Acting in a Responsible Manner** | Acting in a responsible manner means that the filer exercised the same degree of care that a reasonably prudent person would use under the circumstances both before and after the failure. It also includes taking steps to avoid the failure such as attempting to prevent it if it was foreseeable, acting to remove the cause of the failure, or correcting the failure as promptly as possible. |
| | When a penalty is proposed for an incorrect SSN, filers must then comply with special rules to demonstrate they acted in a responsible manner.  In the case of an employer who files wage statements, the employer needs to make an initial solicitation for an employee's SSN at the time the employee begins work.  The employee's SSN is documented upon IRS Form W-4.  Following the initial solicitation, no additional solicitation for the SSN is required unless the IRS notifies the employer that the employee's reported SSN is incorrect.  Following the receipt of such notice, the employer may be required to make up to two annual solicitations for the correct SSN. |
| | The first annual solicitation of an employee's SSN is required only if the IRS notifies the employer that the employee's SSN is incorrect and if the employer's records contain that incorrect SSN at the time it receives the |

notice.[16] The solicitation for the SSN must be made by December 31 of the year in which the notice was received (or by January 31 of the following year if notified in December) and may be made in person or by mail or telephone. The solicitation is necessary only if there will be reportable payments to that employee in that year. A second annual solicitation would be required if the employer receives an IRS notice of an incorrect SSN for the employee in any subsequent year. An employer may rely on the SSN that an employee provided in response to a solicitation, and the employer may use that SSN in filing a wage statement for that employee. If an employer receives an IRS notice of an incorrect SSN provided by an employee after having made two annual solicitations and reporting the SSN provided by the employee, the employer is not required to make further solicitations.

**Acting with Intentional Disregard**

The rules for determining if an employer acted responsibly do not apply if the employer acted with intentional disregard for the requirement to file an accurate SSN. Intentional disregard occurs when the employer knows, or should know, of the regulation to file accurate SSNs and chooses to ignore the requirement. Indications of intentional disregard include the employer did not promptly correct the error upon discovery or the employer has a pattern of failures.

**IRS Is Reviewing 100 Employers to Determine Whether and How to Implement a Penalty Program**

IRS is determining whether and how to develop a penalty program for assessing penalties for filing wage statements with incorrect SSNs. The IRS Program Director for Penalties and Interest said that the program will likely have multiple components with the primary focus on the most "egregious" filers; however specific details have not been developed. As part of the process to develop the penalty program, IRS is conducting, but has not finished, a review of 100 employers who are "egregious" filers of wage statements with incorrect SSNs and the results of these reviews will be used to help develop the penalty program. The intent of this review is to gain insight and data to help IRS determine whether and how to implement a penalty program that would create incentives for employers to improve

---

[16] If an employer receives a notice from IRS, the employer has 45 days to submit an explanation as to why the penalty should be waived. In certain cases, SSA may send employers letters indicating that the names and SSNs for certain employees do not match SSA's records. A notice from SSA does not trigger IRS's requirement that an employer solicit an SSN from an employee.

the accuracy of SSNs filed on wage statements while avoiding unnecessary burden and hardship.

IRS selected the 100 employers from two lists of the most "egregious" filers provided by SSA for tax year 2000. SSA developed the lists from data it maintains on the number of wage statements filed by employers with SSNs and name combinations that did not match SSA's records. IRS selected fifty employers from a list of the 100 employers that filed the most wage statements with inaccurate SSNs. These employers were among the nation's largest employers and the number of wage statements they filed with incorrect SSNs was a function of the large numbers of wage statements they filed. The second fifty employers were from a list of 100 employers who filed the highest percentage of wage statements with inaccurate SSNs. These employers generally issued fewer than 1,000 wage statements but had error rates of 93 percent or higher.

As part of the review, IRS officials made on-site visits, interviewed employers, and examined various documents. The objectives were to determine the processes employers used to obtain SSNs to report on wage statements, if the employers attempted to verify SSNs, how they dealt with letters from SSA indicating that some employees' names and SSNs did not match SSA's records, the barriers to obtaining correct SSNs, and whether any penalties should be assessed. IRS's LMSB Division has completed the review of the larger employers and summarized the results in an April 2003, report.[17] As of May 2004, IRS's SBSE Division had reviewed 28 of the 50 employers who had filed the highest percentage of wage statements with inaccurate SSNs. Of the remaining 22 employers, 21 are out of business and one could not be located. In early 2004, IRS requested that SSA provide another list of 50 "egregious" employers from which IRS will select 22 for review. As of May 2004, IRS has not received the new list. When it does, officials estimate it will take 4 to 5 months to complete the additional reviews. At that time, SBSE officials will prepare a report documenting the results of all 100 reviews. When the entire review has been completed, options will be developed for the IRS Commissioner to consider which would increase the likelihood that employers would file accurate SSNs on wage statements.

---

[17] Internal Revenue Service Large and Mid-Size Business Division: *The Form W-2 SSN/Name Mismatch Project* (April 28, 2003).

## Although IRS's Regulations Meet Statutory Requirements, It Is Unlikely Employers Will Be Penalized; IRS Will Consider Changes

IRS's regulations for penalizing employers who file wage statements with inaccurate SSNs meet the statutory requirements; however, under current regulations, employers are unlikely to be penalized for filing wage statements with inaccurate SSNs and IRS has no record of ever penalizing an employer for inaccurate SSNs on wage statements. Based on its review of the 50 large and mid-size businesses included in IRS's review of 100 "egregious" employers, LMSB officials and employers developed recommendations intended to reduce or eliminate the filing of wage statements with inaccurate SSNs. IRS officials then said that they would consider a range of changes to improve the accuracy of SSNs on wage statements. Regarding the part of the review related to small and self-employed businesses, IRS's SBSE Division concluded that for the employers reviewed to date, many of their employees for whom inaccurate SSNs had been filed appeared to be aliens. If IRS takes steps to improve the accuracy of SSNs reported on wage statements, there could be implications for thousands of illegal immigrants and their employers, and in turn, on other federal programs which specifically deal with federal immigration policy. Consequently, other federal agencies, including DHS, could be affected by revisions to IRS's approach for ensuring that the accuracy of SSNs on wage statements is improved.

The Internal Revenue Code requires that (1) employers be financially penalized if they fail to file accurate SSNs on wage statements and (2) penalties should be waived if reasonable cause exists for the failure. The regulations that IRS has established to implement the laws contain both of these dimensions; therefore the regulations are consistent with the legislation. However, the criteria for meeting the reasonable cause waiver included in the regulations are easy to meet making penalization of employers very unlikely. This reduces or eliminates the potential effectiveness of penalties in encouraging more accurate filing of SSNs on wage statements.

As previously described, to qualify for a reasonable cause waiver, an employer is responsible only for soliciting an SSN from each employee from one to three times depending on when the employer has been contacted by the IRS and told that the SSN provided on the wage statement is inaccurate. The current regulations do not hold employers to more stringent requirements, such as verifying the accuracy of an SSN provided by an employee, or ensuring that an employee provides an alternative SSN when their reported SSN was determined to be inaccurate.

If employers voluntarily wish to verify SSNs, their options are limited. IRS maintains a system for verifying the taxpayer identification numbers in its records, of which individual SSNs are one type. However, IRS is prohibited by law from verifying SSNs for employers.[18] Pending legislation would allow IRS to do so.[19] Employers can voluntarily use SSA's Employee Verification Service (EVS) prior to filing wage statements to determine if SSNs are valid. Under EVS, employers can call an 800 number to verify SSNs for up to five employees, submit a paper request for up to 50 employees, or submit requests for larger numbers using tapes or discs. Paper requests can take up to 30 days to process. SSA is also pilot-testing another system—the social security number verification service (SSNVS)-- for voluntary use by employers to verify SSNs and, according to SSA officials, hopes to roll out the program nationwide in January 2005. When using SSNVS, employers can verify up to ten SSNs via computer and receive an instant response and for larger requests, can upload a file to SSA and receive a response within 1 business day.

Our attempt to determine if IRS has ever penalized employers for filing a wage statement with an inaccurate SSN found no evidence of any penalties being assessed. IRS does not have any information documenting that any employer has ever been assessed such a penalty.[20] IRS collects data on the number and dollar amount of penalties assessed for all information returns, including wage statements that are filed late; filed with missing or inaccurate taxpayer identification numbers, which include SSNs; or which were not filed on magnetic media when required. IRS does not separately collect the same statistics for wage statements. However, according to the Program Director for Penalties and Interest, he has requested that this information be collected in the future. He hopes that changes can be made to IRS's computer systems so that IRS can begin collecting this information for wage statements by the end of fiscal year 2005.

---

[18] Section 6103 of the Internal Revenue Code protects the confidentiality of SSNs and does not generally permit disclosure of these numbers or whether these numbers match IRS records to third parties such as employers.

[19] H.R. 1528 Tax Administration and Good Government Act.

[20] The Director of the SBSE Office of Employment Tax surveyed his field managers and they said that employers had been assessed penalties for filing wage statements with inaccurate SSNs but they did not have any evidence of how often this occurred or of any penalties being paid.

IRS's recent review of the 100 "egregious" employers provides evidence that under the current criteria for meeting the reasonable cause waiver, it is improbable that employers would be penalized for filing wage statements with inaccurate SSNs. As of May 2004, IRS concluded that none of the 78 employers examined should be assessed a penalty. This includes 50 employers reviewed by the LMSB Division for which IRS officials could not find any evidence that they had ever been penalized. This does not mean, however, that the employers filed wage statements free of inaccurate SSNs. It simply means that they solicited and used the SSNs provided by the employees to prepare the wage statements regardless of whether the SSNs provided by the employees were accurate. Again, under the regulations implementing the reasonable cause waiver, as long as the employers solicit SSNs from employees and use those SSNs to prepare wage statements, they will meet the reasonable cause waiver and will not be penalized.

The LMSB Division prepared a report in April 2003 summarizing the results of its review of the 50 "egregious" employers who filed large numbers of wage statements with inaccurate SSNs. The report includes five barriers identified by employers to filing wage statements with accurate SSNs and 13 recommendations that LMSB officials and employers think may reduce or eliminate the filing of wage statements with inaccurate SSNs. The recommendations fall into four general areas: legislative and regulatory changes, SSA changes, employer changes, and IRS changes. All would represent substantive changes to the current requirements for employers. For example, one recommendation is that employers use SSA's EVS to verify the SSN of all new hires. Another recommendation is to require employers to review and obtain a copy of the employee's social security card prior to hiring the new employee. A third recommendation is that if re-solicitations of SSNs are required, employers would verify new SSNs provided by employees using the SSA EVS system. These initiatives would require legislative and regulatory changes and might result in changes to the reasonable cause standard. The division also pointed out that several employers have taken innovative steps to address the compliance problem. One such initiative is using a service that will conduct a background check on each employee, including verifying the SSNs, for a minimal fee. Assessing the viability of these recommendations was not within the scope of our evaluation.

Regarding the small and self-employed businesses review, after completing the reviews of 28 employers, SBSE preliminarily concluded that (a) employers' acceptance of an employee's information without any verification by the employer is common practice, (b) employers have no

responsibility to verify the accuracy of an employee's SSN, and (c) many of the employees whose SSNs were identified in the review as inaccurate appeared to be aliens.

Although the options for improving the accuracy of SSNs on wage statements have not yet been developed, IRS officials said they would consider a range of changes including, as LMSB's report suggests, requiring employers to verify SSNs provided by employees on Forms W-4. In judging how to proceed, the officials said that a number of factors would need to be weighed. For example, the regulations for information returns currently apply uniformly to all providers of such returns. To the extent that addressing the problem of inaccurate SSNs on wage statements might adversely affect other providers of information returns, IRS may need to consider separate regulations only applying to entities in their capacity as employers. IRS officials indicated that one initiative they have discussed is changing the criteria employers must meet to qualify for the reasonable cause waiver if they file inaccurate SSNs on wage statements. They added the Department of the Treasury would have to agree to this change. In addition, in crafting changes to encourage more accurate wage statements, officials said that they would need to assess any increased burden placed upon employers, such as increases in cost. The Commissioner of Internal Revenue, in testimony before Congress, has raised the issue of whether a more rigorous program could drive employers into underreporting wages paid to employees, which could result in more employees not participating in the federal tax system. This would be contrary to what IRS sees as part of its basic mission: to assure that all appropriate taxpayers are part of the system. In addition, the Commissioner of IRS recently testified that any increase in IRS's compliance activities in this area may place an increased demand on resources and that "absent added funding for such activities, this would likely come at the expense of other compliance activities."[21] Finally, some options for addressing the issue of inaccurate SSNs may require legislative changes, such as authorizing IRS to make its taxpayer identification number verification system available to employers for purposes of verifying employees' SSNs.

Although IRS officials did not focus on them in discussing their review with us, certain other issues likely would be relevant when considering changes in employers' responsibilities. SBSE's preliminary conclusion that many of

---

[21] Individual Taxpayer Identification Numbers (ITINs) and Social Security Number Matching: Testimony by the Commissioner of Internal Revenue; March 10, 2004.

the employees whose SSNs were identified as invalid in its review appeared to be aliens raises the question of whether addressing the accuracy of SSNs has immigration-related implications for employers and other federal agencies. Even though incorrect SSNs may result from such things as inadvertent errors on employees' or employers' part or from individuals not reporting a name change to SSA, some portion of inaccurate SSNs likely are due to illegal aliens using false or stolen SSNs when completing Forms W-4 for employers. TIGTA estimated, for example, that 353,000 taxpayers could be identified as illegal aliens from IRS tax year 2000 data and that of these at least 265,000 had wage statements with invalid SSNs.[22] Since significant numbers of individuals with inaccurate SSNs on Forms W-4 may be illegal aliens, some employers have raised concerns about whether being required to verify employees' SSNs would trigger obligations to other federal agencies, such as DHS. In general, if questions arise about an employee's work authorization, DHS guidance provides that an employer might need to take certain actions, such as providing the employee another opportunity to provide proper DHS Form I-9 documentation.[23]

An earlier pilot test of a voluntary employment verification system illustrates other issues that may affect employers and other federal agencies if IRS requires SSN verification. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 directed the Attorney General to conduct a pilot program of an employment verification system intended to prevent employers from hiring unauthorized aliens.[24] The voluntary participants in this system agreed to electronically check newly hired employees' SSNs against SSA's SSN records and, if the SSNs did not match and the employees were unable to resolve the mismatch, to terminate their employment. This pilot program includes the employer contacting DHS to verify employment eligibility of a potential employee. The basic pilot of the

---

[22] This estimate is only for resident aliens who filed tax returns using an IRS assigned individual taxpayer identification number, or ITIN, and is not an estimate of the number of illegal aliens overall who may have filed tax returns. *Internal Revenue Service's Individual Taxpayer Identification Number Creates Significant Challenges for Tax Administration,* TIGTA, Reference Number 2004-30-023 (January 2004).

[23] The Immigration Reform and Control Act of 1986 made all United States employers responsible to verify the employment eligibility and identity of all employees hired to work in the United States after November 6, 1986. To implement the law, employers are required to complete Employment Eligibility Verification forms (DHS Form I-9) for all employees, including United States citizens.

[24] Pub. L. 104-208, Div. C, September 30, 1996.

program is operating in six states (California, Florida, Illinois, Nebraska, New York, and Texas) and can be expanded to all 50 states by December 2004. In evaluating the basic pilot program, researchers found that the system confirmed that 87 percent of the employees were authorized to work but that some employers took adverse actions against employees on the basis of a tentative nonconfirmation (e.g., the employee's name and SSN did not match SSA's records) although they were prohibited from doing so under the program. Federal law protects certain individuals from unfair immigration-related employment practices of a U.S. employer. The federal government entity charged with oversight of the laws protecting against unfair immigration-related employment practices is the Office of Special Counsel for Immigration Related Unfair Employment Practices, which is part of the Civil Rights Division of the Department of Justice.

IRS officials are aware that changes to the reasonable cause standard could have consequences for other federal agencies. For example, when TIGTA recommended that IRS initiate a regularly scheduled penalty program to penalize employers for submitting inaccurate SSNs on wage statements, IRS was contacted by the Departments of Labor, Justice and Homeland Security, seeking information. Regarding coordinating any initiatives with other federal agencies, IRS officials said that they would take other agencies' views into account most likely through their formal comments on any regulatory proposal IRS and Treasury would make.

## IRS Plans to Design an Evaluation of Its Penalty Program if a Program Is Adopted

If IRS implements a program to assess penalties against employers who file wage statements with inaccurate SSNs, IRS plans to evaluate the effectiveness of its program on curtailing the filing of such wage statements. IRS officials said they will design the evaluation after a penalty program is adopted. In its September 2002 report, TIGTA recommended that the Program Director for Penalties and Interest develop a methodology for monitoring and analyzing the results of the penalty program and that the data collected should include the number and amount of penalties proposed, assessed, waived (and the reason for the waiver), and collected.[25] TIGTA also said the data should include the number of wage statements corrected in response to penalty actions. Developing and implementing a design for evaluating whatever program IRS moves ahead with will be important so that IRS can understand how well the new

---

[25] TIGTA 2002-30-156.

program succeeds in increasing SSN accuracy on wage statements while minimizing potential adverse effects like decreased participation of wage earners in the tax system.

## Conclusions

Inaccurate SSNs on wage statements contribute to growth in the SSA Earnings Suspense File, increase IRS's workload to ensure that wages are properly identified for the individual earning them, and burden individuals who must work with SSA and IRS to resolve disputes that may affect their tax obligations and social security benefits. Under the Tax Reform Act of 1986 and OBRA of 1989, Congress provided IRS authority to penalize employers who submit wage statements with inaccurate SSNs to help assure the accurate reporting of wages. Both Acts emphasize the use of penalties as a tool to help ensure that employers file information returns with complete and accurate information but also include a reasonable cause provision under which penalties can be waived.

However, the reasonable cause standard is not difficult for employers to meet. IRS has no record of penalties having been levied against employers and none have been levied to date as part of IRS's study of employers with substantial numbers or percentages of wage statements with inaccurate SSNs.

Because little or no likelihood exists for penalties to be levied, the potential of the statutory penalty tool to encourage greater accuracy of wage statements is compromised. Further, because employers have no responsibility to verify SSNs, opportunities to detect and correct SSN inaccuracies before SSA and IRS need to react to them and possibly consider penalizing employers are lost. Accordingly, thoroughly exploring options to change the reasonable cause standard, including possibly requiring that employers take steps to verify the accuracy of SSNs provided by employees, must be a critical part of IRS's consideration of how to make their penalty program more effective.

Nevertheless, because a change to the reasonable cause standard could have consequences for IRS, employers, and other federal agencies, determining whether and how to modify the standard will require balancing numerous, sometimes conflicting, issues. Accordingly, in considering options for revising the standard, IRS would benefit from understanding these potential consequences. Although IRS officials anticipate receiving formal comments from other federal agencies on any regulatory proposal they may publish, they do not have plans to work with representatives of

these agencies as they initially consider what options may best address inaccurate SSNs.

## Recommendations

We have two recommendations. First, given the central role that the reasonable cause standard plays in defining the responsibilities of employers and thereby potential progress in improving the accuracy of SSNs on wage statements, we recommend that the Commissioner of Internal Revenue consider options for revising this standard. Second, because changes to this standard likely would have consequences for other federal agencies, the Commissioner should ensure that as IRS officials consider whether and how to modify this standard, representatives of other potentially affected federal agencies are consulted prior to issuing any proposed regulations.

## Agency Comments and Our Evaluation

The Commissioner of Internal Revenue provided written comments on a draft of this report in an August 10, 2004, letter, which is reprinted in appendix II. The Commissioner agreed with our recommendations, saying that IRS would consider revisions to the reasonable cause standard and that IRS must proactively work with other potentially affected agencies on possible changes to the standard. Regarding possible changes to the reasonable cause standard, we encourage IRS to explore options for having employers verify the accuracy of SSNs. Then, if an employee provided an inaccurate SSN, the employer could take timely actions to obtain a valid SSN. In agreeing that IRS should work with other agencies, the Commissioner did not indicate when or how IRS planned to do so. We believe it is important for IRS to work with the other affected agencies before draft regulations are developed so IRS has the benefit of the agencies' views when designing the draft regulations.

The Commissioner of SSA provided written comments on a draft of this report in an August 6, 2004, letter, which is reprinted in appendix III. The Commissioner said that due to the possible impact on SSA, employers, and employees, SSA should be involved in the development of any requirement imposed on employers to verify SSNs provided by employees, thus agreeing with our recommendation that IRS should consult other federal agencies prior to making any changes to the reasonable cause standard. In addition, at SSA's request, we clarified a description of a pilot program for verifying employment eligibility.

As agreed with your office, unless you publicly announce its contents earlier, we plan no further distribution of this report until 30 days from its date. At that time, we will send copies to the Chair and Ranking and Minority Member of the Senate Committee on Finance; the Chair and Ranking Minority Member of the House Committee on Ways and Means and its Subcommittees on Oversight and on Social Security; the Chair and Ranking Minority Member of the Senate Committee on the Judiciary and the Chair and Ranking Minority Member of its Subcommittee on Immigration, Border Security and Citizenship; the Chair and Ranking Minority Member of the Senate Special Committee on Aging; the Chair and Ranking Minority Member of the House Committee on the Judiciary and the Ranking Minority Member of its Subcommittee on Immigration, Border Security and Claims; the Chair and Ranking Minority Member of the House Select Committee on Homeland Security; the Chair and Ranking Minority Member of the House Committee on Government Reform and its Subcommittee on National Security, Emerging Threats, and International Relations; the Secretary of the Treasury; the Commissioner of Internal Revenue; the Commissioner of Social Security; the Director of the Office of Management and Budget; and other interested parties. We will make copies available to others on request. In addition, the report will be available at no charge on the GAO Web site at http://www.gao.gov.

This report was prepared under the direction of Boris Kachura, Assistant Director. If you have any questions regarding this report, please contact him at (202) 512-3161 or kachurab@gao.gov or me at (202) 512-9110 or brostekm@gao.gov. Key contributors to this report were Shirley Jones, Jean McSween, Jay Pelkofer, and Shellee Soliday.

Michael Brostek
Director, Tax Issues

Appendix I

# Objectives, Scope, and Methodology

Our first objective was to describe the statutory provisions authorizing the Internal Revenue Service (IRS) to penalize employers who file Forms W-2 (Wage and Tax Statements), hereafter referred to as wage statements, with inaccurate social security numbers (SSNs). To address the first objective, we identified the laws that gave IRS this authority, verified this with IRS Office of Chief Counsel staff, and researched the legislative history of those laws.

Our second objective was to describe IRS's current program for identifying and penalizing employers who file wage statements with inaccurate SSNs including any changes under consideration. To address the second objective, we reviewed IRS's current penalty program with various IRS officials including the Program Director for Penalties and Interest and reviewed a Treasury Inspector General for Tax Administration (TIGTA) report addressing the same subject.[1] We interviewed Small Business/Self Employed (SBSE) Division and Large and Mid-Size Business (LMSB) Division Employment Tax officials to determine how employment tax examinations can be used to identify employers who should possibly be assessed a penalty for filing wage statements with inaccurate SSNs. We also sought from the Program Director for Penalties and Interest, the SBSE Office of Employment Tax Director, and the LMSB National Program Manager for the Employment Tax Program any data collected by IRS that would show the number of employers who had been assessed penalties for filing wage statements with inaccurate SSNs.[2] We reviewed the IRS Office of Chief Counsel file related to the regulations implementing the legislation identified under objective one as well as the regulations themselves and interviewed Chief Counsel staff and the National Program Director for Penalties and Interest about what employers must do, under the regulations, to avoid a penalty for filing a wage statement with an inaccurate SSN. We also reviewed information IRS provided to employers about their responsibilities in relation to filing accurate SSNs. We reviewed documents related to IRS's review of 100 "egregious" employers who filed large number of wage statements with inaccurate SSNs including an LMSB Division report summarizing the results of its review of 50 of those employers as well as discussed the study with the Program Director for Penalties and Interest.[3] These discussions covered, among other things,

---

[1] TIGTA 2002-30-156.

[2] Although IRS collects data about penalties related to information returns, it does not collect data about penalties for filing wage statements with inaccurate SSNs.

GAO-04-712 Tax Administration

the objectives and methodology used for the reviews, any results to date, and how IRS planned to use the results, including IRS's plans for developing a penalty program.

Our third objective was to describe the extent to which IRS's program meets legislative requirements and the likelihood that employers will be penalized for filing wage statements with inaccurate SSNs under that program.  To address the third objective, we compared the information we collected related to the first objective—the statutory provisions—to the information we collected related to the second objective—specifically IRS's program for identifying and penalizing employers who file such wage statements.  We also reviewed any data IRS collected on penalties assessed against employers who filed such wage statements and the regulations implementing the legislation.  We reviewed IRS's examination of 100 "egregious" employers who filed large numbers of wage statements with inaccurate SSNs, and the LMSB Division report summarizing the results of its review of 50 of the 100 employers.  We also met with Social Security Administration (SSA) officials to obtain information about the number of wage statements filed by employers with names and SSNs that do not match SSA's records, the relationship between wage statements with inaccurate SSNs and social security benefits, and the tools they make available to employers to verify SSNs.  In addition, we reviewed literature and reports related to the use of SSNs by the Department of Homeland Security and discussed this use with knowledgeable GAO staff.

Our fourth objective was to describe how IRS is evaluating, or planning to evaluate, the effectiveness of its program on curtailing the filing of wage statements with inaccurate SSNs.  To address the fourth objective, we interviewed the IRS Program Director for Penalties and Interest and reviewed the TIGTA report referred to previously.  We did not review and analyze any documents related to an evaluation design since IRS does not have one.

We did not conduct a data reliability assessment because IRS does not collect data on penalties related to wage statements filed with inaccurate SSNs.  We performed our work from November 2003 through June 2004 in accordance with generally accepted government auditing standards.

---

[3]Internal Revenue Service Large and Mid-Size Business Division: *The Form W-2 SSN/Name Mismatch Project* (April 28, 2003).

Appendix II
# Comments from the Internal Revenue Service



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

COMMISSIONER

August 10, 2004

Mr. Michael Brostek
Director, Tax Issues
United States Government Accountability Office
Washington, D.C.  20548

Dear Mr. Brostek:

Thank you for the opportunity to review your draft report titled, *Tax Administration—IRS Needs to Consider Options for Revising Regulations to Increase the Accuracy of Social Security Numbers on Wage Statements* (GAO-04-712).  We agree that inaccurate Social Security Numbers (SSNs) on wage statements result in the IRS being unable to determine if wages have been reported on individual income tax returns.  We are also cognizant that inaccurate SSNs affect other agencies' ability to accomplish their missions, such as the Social Security Administration (SSA).

The information reporting penalty and penalty waiver sections of the Internal Revenue Code (Code) apply to payers of many reportable payments, not just employers.  For example, the reasonable cause provisions were designed to apply to businesses paying independent contractors, banks paying interest, brokers paying stock sale proceeds, and many other payers in addition to employers.  The rules for obtaining waivers of information reporting penalties were designed to ensure payers act responsibly in complying with requirements and that they take appropriate steps to attempt to correct inaccuracies when they become known.

Our research has identified that the majority of inaccurate SSNs on wage statements are due to employee error, not employer noncompliance.  Thus, implementing new requirements that are more difficult for employers to meet, resulting in assessment of penalties, may not result in more accurate SSNs on Forms W-2, *Wage and Tax Statement*.

We believe that the accuracy of reporting may increase if legislation is enacted allowing the IRS to respond to Taxpayer Identification Number (TIN) Matching requests by employers.  Up-front TIN Matching for employers would afford employers and employees an opportunity to correct errors prior to the filing of Forms W-2.  The IRS has learned that many employers would welcome up-front assistance in verification of employees' SSNs.  As your report notes, however, the IRS' TIN Matching program, which may be used by payers of reportable payments subject to backup withholding, is not available to employers because of statutory constraints.  A proposed amendment to

2

Code Section 6103, currently pending in Congress, would allow employers to participate in the IRS' TIN Matching program. This issue has repeatedly been raised by employer groups, as well as by employers who use SSA's SSN verification program. Employers may generally use the latter for the same purpose, but because the database does not correspond directly to the IRS' database, a match in SSA's database will not necessarily provide reasonable cause for waiver of the fine for an inaccurate SSN. Nonetheless, while we do not require use of SSA's verification program, for the reasons just noted, we have stated that it may be a useful tool for employers.

At this time, we believe the best course of action is for the IRS to analyze options and consider how best to increase accuracy of reporting, including, as your report recommends, whether the reasonable cause provisions of the regulations should be revised. However, as I testified on March 10, 2004, the impact of significantly raising "due diligence" requirements could have a negative impact on the participation of employers and employees in the tax system. Such a change to the regulations under Code Section 6724 may also require coordinated revisions to regulations under other Code sections related to information reporting. We are currently conducting compliance checks on employers with the most egregious cases of reporting incomplete or incorrect employee SSNs. Once the checks are completed, we will use the resulting data to develop strategies to enhance compliance. We are also committed to improving the accuracy of information reporting on Forms W-2 through improved communications with our outside stakeholders to further clarify and ultimately reduce taxpayer burden associated with wage reporting compliance.

We also agree that we must proactively work with other potentially affected agencies on any possible changes. By working with other affected agencies, we will best be able to design and implement any necessary changes without impeding their respective missions. To that end, we work continually with SSA regarding the problem of SSN mismatches, and we understand their concerns.

We appreciate your continued interest and assistance in this important area of tax administration. If you have any questions please contact me, or a member of your staff may contact Robert L. Hunt, Acting Deputy Director, Compliance Policy, at (202) 283-2200.

Sincerely,

Mark W. Everson

Appendix III

# Comments from the Social Security Administration



## SOCIAL SECURITY
The Commissioner
August 6, 2004

Mr. Michael Brostek
Director, Strategic Issues
Tax Team
U.S. Government Accountability Office
Washington, D.C. 20548

Dear Mr. Brostek:

Thank you for the opportunity to review and comment on the draft report "Internal Revenue Service (IRS) Needs to Consider Options for Revising Regulations to Increase the Accuracy of Social Security Numbers (SSN) on Wage Statements" (GAO-04-7112).

Due to the possible impact on employers, employees and our Agency, any requirement that is imposed on employers to verify the name and SSN provided by employees should include our involvement in the development process prior to implementation.

Enclosed are our comments on the draft report. If your staff has questions about the comments, they may contact Candace Skurnik, Director, Audit Management and Liaison Staff, at (410) 965-4636.

Sincerely,

Jo Anne B. Barnhart

Enclosure

*SOCIAL SECURITY ADMINISTRATION   BALTIMORE MD 21235-0001*

Appendix III
Comments from the Social Security
Administration

COMMENTS ON THE GOVERNMENT ACCOUNTABILITY OFFICE (GAO)
DRAFT REPORT "INTERNAL REVENUE SERVICE NEEDS TO CONSIDER
OPTIONS FOR REVISING REGULATIONS TO INCREASE THE ACCURACY
OF SOCIAL SECURITY NUMBERS ON WAGE STATEMENTS (GAO-04-7112)

We appreciate the opportunity to review and comment on the draft report. Since the
report recommendations are not directed toward our Agency, we will only provide
technical comment. We believe that it is important and necessary to clarify some
information in the draft report to prevent a misunderstanding of how the Social Security
Administration's (SSA) letters to employers concerning names and Social Security
numbers (SSN) on Form W-2s that do not match SSA's records and the notification to
employers through the Department of Homeland Security's (DHS) "pilot test" differ.

On pages 21 to 22, the report describes a pilot test of a voluntary employment verification
system as, "The voluntary participants in this system agreed to electronically check
newly hired employees' SSNs against SSA's SSN records and, if the SSNs did not match
and the employees were unable to resolve the mismatch, to terminate their employment."
This seems to suggest that the pilot process and SSA's employer "no match" letters are
directly comparable.

However, in the pilot, the employer contacts DHS to verify employment eligibility. DHS
sends certain data to SSA to determine if it matches SSA's Numident record. SSA sends
a response back to DHS, which then provides a response to the employer. If the I-9
indicates that the individual is an alien, the DHS system checks the "A" number in the
DHS system. Based on the DHS data, the employer may be given a tentative non-
confirmation message. There are a number of additional steps before the employer
receives a final non-confirmation and can terminate the employee.

In SSA's "no match" letters to the employers, an Agency notice is sent to an employer
after the processing of the Form W-2 and SSA was unable to match the name and SSN to
the Numident record for posting to the earnings record. The Agency attempts to send a
notice directly to the employee first; if no address is supplied or the address was
determined to be incorrect, the notice is then sent to the employer.

| **GAO's Mission** | The Government Accountability Office, the audit, evaluation and investigative arm of Congress, exists to support Congress in meeting its constitutional responsibilities and to help improve the performance and accountability of the federal government for the American people. GAO examines the use of public funds; evaluates federal programs and policies; and provides analyses, recommendations, and other assistance to help Congress make informed oversight, policy, and funding decisions. GAO's commitment to good government is reflected in its core values of accountability, integrity, and reliability. |
|---|---|
| **Obtaining Copies of GAO Reports and Testimony** | The fastest and easiest way to obtain copies of GAO documents at no cost is through GAO's Web site (www.gao.gov). Each weekday, GAO posts newly released reports, testimony, and correspondence on its Web site. To have GAO e-mail you a list of newly posted products every afternoon, go to www.gao.gov and select "Subscribe to Updates." |
| **Order by Mail or Phone** | The first copy of each printed report is free. Additional copies are $2 each. A check or money order should be made out to the Superintendent of Documents. GAO also accepts VISA and Mastercard. Orders for 100 or more copies mailed to a single address are discounted 25 percent. Orders should be sent to:<br><br>U.S. Government Accountability Office<br>441 G Street NW, Room LM<br>Washington, D.C. 20548<br><br>To order by Phone:  Voice: (202) 512-6000<br>TDD:  (202) 512-2537<br>Fax:  (202) 512-6061 |
| **To Report Fraud, Waste, and Abuse in Federal Programs** | Contact:<br><br>Web site: www.gao.gov/fraudnet/fraudnet.htm<br>E-mail: fraudnet@gao.gov<br>Automated answering system: (800) 424-5454 or (202) 512-7470 |
| **Congressional Relations** | Gloria Jarmon, Managing Director, JarmonG@gao.gov (202) 512-4400<br>U.S. Government Accountability Office, 441 G Street NW, Room 7125<br>Washington, D.C. 20548 |
| **Public Affairs** | Jeff Nelligan, Managing Director, NelliganJ@gao.gov (202) 512-4800<br>U.S. Government Accountability Office, 441 G Street NW, Room 7149<br>Washington, D.C. 20548 |



PRINTED ON ♻ RECYCLED PAPER

United States
Government Accountability Office
Washington, D.C. 20548-0001

Official Business
Penalty for Private Use $300

Address Service Requested

Presorted Standard
Postage & Fees Paid
GAO
Permit No. GI00

