United States Government Accountability Office

**GAO**

Testimony before the Subcommittees on Social Security and on Oversight, Committee on Ways and Means, House of Representatives

For Release on Delivery
Expected at 10:00 a.m. EST
Thursday, February 16, 2006

# SOCIAL SECURITY NUMBERS

## Coordinated Approach to SSN Data Could Help Reduce Unauthorized Work

Statement of Barbara D. Bovbjerg, Director
Education, Workforce, and Income Security Issues



GAO
Accountability * Integrity * Reliability

GAO-06-458T

February 16, 2006

# GAO Highlights
*Accountability · Integrity · Reliability*

Highlights of GAO-06-458T, a report to the Chairmen, Subcommittees on Social Security and on Oversight, Committee on Ways and Means, House of Representatives

# SOCIAL SECURITY NUMBERS

## Coordinated Approach to SSN Data Could Help Reduce Unauthorized Work

## Why GAO Did This Study

To lawfully work in the United States, individuals must have a valid Social Security number (SSN) and, if they are not citizens, authorization to work from the Department of Homeland Security (DHS). Noncitizens seeking work must provide both an SSN and evidence of work authorization to their employer. Yet individuals without these required authorizations have gained employment with false information. How these instances of unauthorized work can be identified or prevented challenges the federal agencies involved.

The subcommittees asked GAO to discuss how federal agencies can better share reported earnings data to identify unauthorized work. Specifically, this testimony addresses two issues: (1) the Social Security data that could help identify unauthorized employment and (2) coordination among certain federal agencies to improve the accuracy and usefulness of such data.

## What GAO Found

The Social Security Administration (SSA) has two types of data that could be useful to reducing unauthorized work—individual Social Security records and earnings reports. Individual Social Security records, which include name, date of birth, and SSN, are used by SSA to provide verification services to employers wishing to assure themselves that the names and SSNs of their workers match SSA's records. SSA also uses Social Security records in a work authorization verification system developed by DHS called the Basic Pilot that offers electronic verification of worker status. These services are voluntary, and none are widely used by employers. SSA's earnings records provide additional information, which could be used as an enforcement tool to identify unauthorized work. Currently, SSA uses such records to produce two relevant files based on earnings records, which are the Nonwork Alien File and the Earnings Suspense File (ESF). The Nonwork Alien File contains earnings information posted to SSNs issued for nonwork purposes, suggesting that these individuals are working without authorization. The ESF contains earnings reports for which SSA is unable to match the name and SSN of the worker, suggesting employer error, SSN misuse, or unauthorized work activity. In addition, we have reported that the ESF, which contained roughly 250 million records as of December 2004, appears to include an increasing number of records associated with probable unauthorized work, but because of statutory constraints, the ESF is not available to DHS as an enforcement tool.

Improving the usefulness of SSA data could help identify unauthorized work and ensure that limited enforcement resources are targeted effectively. Ensuring that the most useful data are available requires close coordination among the three federal agencies involved in collecting and using the data—SSA, the Internal Revenue Service (IRS), and DHS. We have previously recommended that IRS work with DHS and SSA as it considers strengthening its employer wage reporting regulations, as such action could improve the accuracy of reported wage data, and that DHS, with SSA, determine how best to use such wage data to identify potential illegal work activity. Efforts to improve data will only make a difference, however, if agencies work together to improve employer reporting and ensure they can conduct effective worksite enforcement programs.

www.gao.gov/cgi-bin/getrpt?-GAO-06-458T.
To view the full product, including the scope and methodology, click on the link above. For more information, contact Barbara Bovbjerg at (202) 512-7215 or bovbjergb@gao.gov.

United States Government Accountability Office

Messrs. Chairmen and Members of the Subcommittees:

I am pleased to be here today to discuss Social Security numbers (SSNs) and their use in preventing and detecting unauthorized work. To lawfully work in the United States, individuals must have a valid SSN and, if they are not citizens, authorization to work from the Department of Homeland Security (DHS). Noncitizens seeking work are required to provide both an SSN and evidence of work authorization to their employers. Yet individuals without these required authorizations can gain employment with false information. How these instances of unauthorized work can be identified or prevented challenges the federal agencies involved.

In prior GAO work on these issues, we have reported on the use of Social Security Administration (SSA) data for identity and employment eligibility verification. Although SSA's verification systems have improved, use of SSA information in worksite enforcement continues to be challenging. Today I will discuss two issues: (1) the Social Security data that could help identify some unauthorized employment and (2) coordination among SSA, DHS, and the Internal Revenue Service (IRS) to improve the accuracy and usefulness of such data.

My statement is based primarily on prior GAO work on these topics.[1] We are presently conducting additional work for these subcommittees examining the use of SSA data for detecting unauthorized work. To determine how SSA and DHS are coordinating to improve earnings data, we conducted interviews with officials from SSA, the SSA Office of the Inspector General, and DHS. In addition, we obtained and reviewed data from SSA on individuals who had reported earnings under a nonwork SSN, and we reviewed other documentation provided to us by these agencies. We began this review in October 2005 in accordance with generally accepted government auditing standards, and our work is ongoing.

In summary, SSA has two types of data that could be useful for addressing unauthorized work— Social Security records for individuals and earnings

---

[1]GAO, *Social Security: Better Coordination among Federal Agencies Could Reduce Unidentified Earnings Reports*, GAO-05-154 (Washington, D.C.: February 2005); GAO, *Immigration Enforcement: Weaknesses Hinder Employment Verification and Worksite Enforcement Efforts*, GAO-05-813 (Washington, D.C.: August 2005); and GAO, *Tax Administration: IRS Needs to Consider Options for Revising Regulations to Increase the Accuracy of Social Security Numbers on Wage Statements*, GAO-04-712 (Washington, D.C: August 2004)

reports. Individual Social Security records include name, date of birth, and SSN, among other things. SSA uses these data to provide SSN verification services free of charge to employers wishing to assure themselves that the names and SSNs that their workers provided match SSA's records. SSA also uses Social Security records in a work authorization verification system called the Basic Pilot program developed by DHS, which offers electronic verification of worker status. These systems are voluntary and not widely used by employers. SSA's earnings records provide a different sort of information that could be used for identifying unauthorized work. SSA uses such records to produce two relevant files. SSA's Nonwork Alien File contains earnings reports that are posted to SSNs that were issued for nonwork purposes, which suggests individuals are working without DHS work authorization. By law, SSA provides nonwork alien information to DHS annually, and our ongoing work for you suggests that a number of these records are associated with people who became work authorized some time after receiving their nonwork SSNs. A second file of interest, the Earnings Suspense File (ESF), contains earnings reports in which the name and SSN do not match SSA's records.[2] We have reported that this file, which contained 246 million records as of November 2004, appears to include an increasing number of records associated with unauthorized work.[3]

Improving the usefulness of SSA data could help identify some unauthorized work and ensure that limited enforcement resources are targeted effectively. Ensuring that the most useful data are available requires close coordination among the three federal agencies involved in collecting and using the data—SSA, IRS, and DHS. We have previously recommended that IRS work with DHS and SSA as it considers strengthening its employer wage reporting regulations, as such action could improve the accuracy of reported wage data, and that DHS, with SSA, determine how best to use such wage data to identify potential illegal work activity.

## Background

The Social Security Act of 1935 authorized the SSA to establish a record-keeping system to help manage the Social Security program and resulted in the creation of the SSN. SSA uses the SSN as a means to track workers' earnings and eligibility for Social Security benefits. Through a process

---

[2] SSA receives tax records of employee earnings from employers via the IRS's Form W-2 (Wage and Tax Statement).

[3] GAO-05-154

known as enumeration, each eligible person receives a unique number, which SSA uses for recording workers' employment history and Social Security benefits. SSNs are routinely issued to U.S. citizens, and they are also available to noncitizens lawfully admitted to the United States with permission to work. Lawfully admitted noncitizens who lack DHS work authorization may qualify for an SSN for nonwork purposes when a federal, state, or local law requires that they have an SSN to obtain a particular welfare benefit or service. In this case, the Social Security card notes that the SSN is "Not Valid for Employment."[4] As of 2003, SSA had assigned slightly more than 7 million nonwork SSNs. Over the years, SSA has tightened the requirements for assigning nonwork SSNs.

In 1986, Congress passed the Immigration Reform and Control Act (IRCA), which made it illegal for individuals and entities to knowingly hire and continue to employ unauthorized workers. The act established a two-pronged approach for helping to limit the employment of unauthorized workers: (1) an employment verification process through which employers are to verify newly hired workers' employment eligibility and (2) a sanctions program for fining employers who do not comply with the act. Under the employment verification process, workers and employers must complete the Employment Eligibility Verification Form (Form I-9) to certify that the workers are authorized to work in the United States. Those employers who do not follow the verification process can be sanctioned.

## SSA Individual Records and Earnings Reports Can Identify Some Unauthorized Work

SSA has two types of data useful to identifying unauthorized work—individual Social Security records and earnings reports. Its individual records, which include name, date of birth, and SSN, among other things, can be used to verify that a worker is providing the SSN that was assigned to a person of that name. These records are used in verification services that are available free of charge to employers on a voluntary basis. SSA's earnings reports could also be used to identify some unauthorized work by reporting noncitizens who may have worked without authorization and employers who have a history of providing SSN/name combinations that do not match SSA records.

---

[4] Cards issued prior to 1982 do not contain this notation.

## SSA Records Provide Verification Services to Improve Wage Data

SSA uses individual Social Security records in its Employee Verification Service (EVS) and the Web-based SSN Verification Service (SSNVS), which employers can use to assure themselves that the names and SSNs of their workers match SSA's records. The services, designed to ensure accurate employer wage reporting, are offered free of charge. Employer use is voluntary. Although these systems only confirm whether submitted names and SSNs match, they could help employers identify workers who provide an SSN with fictitious information.

Over the years, SSA has developed several different verification methods under EVS. For example, employers may submit lists of workers' names and SSNs by mail on a variety of media, such as magnetic tapes or diskettes. Alternatively, employers may call a toll-free number or present a hard-copy list via fax, mail, or hand delivery to a local SSA office. SSA verifies the information received from employers by comparing it with information in its own records. SSA then advises the employer whether worker names and SSNs match. EVS offers the benefit of verifying name and SSN combinations for a company's entire payroll. However, the system would not be able to detect a worker's misuse of another person's name and SSN as long as the name and SSN matched. Employers do not widely use this service.

In an attempt to make verification more attractive to employers, in 2005, SSA implemented the Web-based SSNVS. It is designed to respond to employer requests within 24 hours. Requests of up to 10 worker names and SSNs can be verified instantaneously. Larger requests of up to 250,000 names can be submitted in a batch file, and SSA will provide results by the next business day. While this new system is attracting more employer interest, it is still not widely used.

SSA also uses its records in a work eligibility verification system developed by DHS called the Basic Pilot, which offers electronic verification of work authorization for newly hired workers.[5] Use of this program by employers is also voluntary, and the service has been available

---

[5] The Basic Pilot program was authorized in 1996 through the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), which required that the Attorney General, (now DHS) develop and test three pilot programs to assist employers in verifying workers' identity and work eligibility. The Basic Pilot program was developed and made available to employers in six states starting in 1997. In 2003, Congress required DHS to expand the verification service to all 50 states by December 2004, and DHS met that requirement. To improve its effectiveness and increase participation, DHS converted the program to a Web-based system in July 2004.

nationwide only since December 2004. Employers who agree to participate must electronically verify the status of all newly hired workers within 3 days of hire, using information that a new hire is required to provide. Under this program, an employer electronically sends worker data through DHS to SSA to check the validity of the SSN, name, date of birth, and citizenship provided by the worker. SSA records are used to confirm information on citizens. For noncitizens, SSA confirms SSN, name, and date of birth, then refers the request to DHS to verify work authorization status against DHS's automated records.[6] If DHS cannot verify work authorization status for the submitted name and SSN electronically, the query is referred to a DHS field office for additional research by immigration status verifiers. If SSA is unable to verify the SSN, name, and date of birth or DHS record searches cannot verify work authorization, a tentative nonconfirmation response is transmitted to the employer. After checking the accuracy of the information and resubmitting the information, if necessary, the employer must advise the worker of the finding and refer him or her to either DHS or SSA to correct the problem. During this time, employers are not to take any adverse actions against those workers related to verification, such as limiting their work assignments or pay. When workers do not contest their tentative nonconfirmations within the allotted time, the Basic Pilot program issues a final nonconfirmation. Employers are required to either immediately terminate employment or notify DHS of their continued employment.

Like SSA's verification services, the Basic Pilot is voluntary and is not widely utilized. As of January 2006, about 5,500 businesses nationwide had registered to participate, although a significantly smaller number of these are active users.[7] Active participants have made about 4.7 million initial verification requests over a 5-year period (981,000 requests were made in fiscal year 2005). DHS reported on actions taken to address weaknesses in the program that had been identified during the early years of the program. They included delays in updating immigration records, erroneous nonconfirmations, and program software that was not user friendly. We subsequently reported on additional challenges, specifically, the capacity constraints of the system, its inability to detect identity fraud, and the fact

---

[6] The DHS data are maintained by the U.S. Citizenship and Immigration Service, (USCIS).

[7] This indicates the number of businesses that have signed memorandums of understanding with DHS and is not indicative of the number of active participants.

that the program is limited to verifying work authorization of newly hired workers.[8]

## SSA Earnings Data May Be Used to Identify Some Unauthorized Work

SSA's earnings records can also provide information on unauthorized work. There are two sets of data that are relevant to unauthorized work. The first set, the Nonwork Alien File, contains earnings reports for SSNs that were issued for nonwork purposes. The second set, the Earnings Suspense File, contains earnings reports in which the name and SSN do not match. Both could help identify some unauthorized work.

### SSA's Nonwork Alien File

SSA is required by law to provide its Nonwork Alien File to DHS since it suggests a group of people who are in the United States legally but may be working without authorization.[9] Since 1998, SSA has provided DHS annual data on over half a million persons with earnings listed under nonwork SSNs. The file includes annual earnings amounts, worker names and addresses, and employer names and addresses as well.

DHS has found this file to be of little use to enforcement activities, however. According to DHS officials, the file is currently not an effective tool for worksite enforcement due in part to inaccuracies in the data and the absence of some information that would help the department efficiently target its enforcement.[10]

In fact, because SSA only updates work authorization status at the request of the SSN holder, individuals in the file may now be U.S. citizens or otherwise legal workers who simply have not updated their status with SSA. Our ongoing work in this area suggests that a number of these records are indeed associated with people who later obtained permission to work from DHS. SSA policy is to update work authorization status when the SSN holder informs the agency of the status change and provides supporting documentation.[11] Unless the individual informs SSA directly of

---

[8] GAO-05-813.

[9] IIRIRA, Section 414.

[10] In prior years, DHS officials cited an inability to access the file, because SSA sent the data to them via a computer mainframe cartridge that was incompatible with DHS's systems. SSA now supplies the file in a format that is accessible to DHS agents.

[11] Individuals are not required to update such changes with SSA, although since 2002 the agency has encouraged them to do so. SSA will remove the nonwork notation from the SSN and reissue a card to individuals who were originally assigned a nonwork SSN if the individual provides SSA documentation of a change in the individual's work status by DHS.

the status change, SSA's enumeration records will continue to show the person as unauthorized to work and will record his or her earnings to the Nonwork Alien File. Currently, the extent to which such noncitizens are included in the file is unknown, but SSA and DHS officials have both acknowledged that the file may include a number of people who are currently authorized to work.

DHS officials said that the file would be of greater value if it contained DHS's identifying numbers—referred to as alien registration numbers. According to DHS officials, because persons in the file do not have an identifier in common use by both agencies, they cannot automatically be matched with DHS records. As a result, DHS officials told us that they use names and birth dates to match the records, which can result in mismatches because names can change and numbers in birth dates may be transposed. SSA officials have said that generally they do not collect alien registration numbers from noncitizens. Collecting the alien registration number and providing it in the Nonwork Alien File is possible, they stated, but would require modifications to SSA's information systems and procedures. They also noted that SSA would only be able to collect the alien registration number when noncitizens are assigned an SSN or when such an individual updates his or her record. As part of its procedures, SSA is required to verify the immigration status of noncitizens before assigning them an SSN, which requires using alien registration numbers.[12] However, some noncitizens, such as those who have temporary visas, (e.g. students) may not have an alien registration number. In these cases, SSA would not be able to include the number in the Nonwork Alien File.

The time it takes SSA to validate earnings reports and convey the Nonwork Alien File to DHS also makes the file less effective for worksite enforcement. When SSA finishes its various processes to ensure that the file includes the appropriate data, the reported earnings can be up to 2 years old. By that time, many of the noncitizens included in the file may have changed employers, relocated, or changed their immigration status,

---

[12] To do this, SSA field office staff use the alien registration number, in part, to query DHS's records, through DHS's Systematic Alien Verification for Entitlements (SAVE) program, which provides certain DHS data online regarding aliens with such numbers. In addition, SSA field office staff is instructed to ask noncitizens to present their immigration and identity documents, which contain their alien registration numbers for verification.

resulting in out-of-date data on individuals or ineffective leads for DHS agents.[13]

A DHS official told us that if the Nonwork Alien File were to contain industry codes for the reporting employers, DHS could target those in industries considered critical for homeland security purposes, which would be consistent with DHS's mission and enforcement priorities. Having information about the industries the employers are in would help them better link the data to areas of high enforcement priority, such as airports, power plants, and military bases.

### Earnings Suspense File

Another SSA earnings file, referred to as the Earnings Suspense File, contains earnings reports in which the name and SSN do not match SSA's records, suggesting employer or worker error or, potentially, identity theft and unauthorized work. We have reported that this file, which contained 246 million records as of November 2004, appears to include an increasing number of records associated with unauthorized work. SSA's Office of the Inspector General has used the ESF to identify employers who have a history of providing names and SSNs that do not match.

When SSA encounters earnings reports with names and SSNs that do not match, it makes various attempts to correct them using over twenty automated processes. However, about 4 percent of all earnings reports still remain unmatched and are electronically placed in the ESF, where SSA uses additional automated and manual processes to continue to identify valid records. Forty-three percent of employers associated with earnings reports in the ESF are from only 5 of the 83 broad industry categories, with eating and drinking establishments and construction being the top categories. A small portion of employers also account for a disproportionate number of ESF reports. For example, only about 8,900 employers—0.2 percent of all employers with reports recorded in the ESF for tax years 1985-2000—submitted over 30 percent of the reports we analyzed.[14]

---

[13] Under the current process, SSA receives wage information from employers annually. Once the earnings reports are received, SSA will ensure the validity of the reported information before sending it to DHS. As a result, DHS receives the data 1 to 2 years after the earnings occur. For example, SSA officials told us that they SSA received earnings from employers based on tax year 2004 in early 2005. After receipt, SSA electronically validated such information throughout the summer and fall of that year, and sent all reported earnings associated with a nonwork SSN to DHS in January 2006.

[14] GAO-05-154.

Our past work has documented that individuals who worked prior to obtaining work authorization are a growing source of the unmatched earnings reports in the ESF that are later reinstated to a worker's account. Once workers obtain a valid SSN, they can provide SSA evidence of prior earnings reports representing unauthorized employment prior to receiving their SSN. Such earnings reports can then be used to determine a worker's eligibility for benefits.[15]

DHS officials believe that the ESF could be useful for targeting its limited worksite enforcement resources. For example, they could use the ESF to identify employers who provide large numbers of invalid SSNs or names and SSNs that do not match. They told us that these employers may knowingly hire unauthorized workers with no SSN or fraudulent SSNs and that employers who are knowingly reporting incorrect information about their workers might also be involved in illegal activities involving unauthorized workers.

However, it is not clear that the ESF, which is much larger than the Nonwork Alien File, would be manageable or allow for targeted enforcement. The ESF contains hundreds of millions of records, many unrelated to unauthorized work, making it difficult to use for targeting limited resources. While the ESF may help identify some of the most egregious employers of unauthorized workers, in terms of poor earnings reporting, its focus is not on unauthorized workers. Our work has shown that most of the reinstatements from the file belong to U.S.-born citizens, not to unauthorized workers.[16] In addition, because the ESF contains privileged taxpayer data, SSA cannot share this information with DHS without specific legislative authorization.[17] SSA's Office of the Inspector General has recommended that SSA seek legislative authority to share this data with DHS, but SSA responded that it is beyond the agency's purview to advance legislation to amend the Internal Revenue Code in order to

---

[15] GAO-05-154.

[16] GAO-05-154.

[17] Internal Revenue Code Section 6103 provides that tax returns and return information are confidential and may not be disclosed by IRS and others having access to the information, with certain specific exceptions. Because the confidentiality of tax data is considered crucial to voluntary compliance, if agencies want to establish new efforts to use taxpayer information, executive branch policy calls for a business case to support sharing tax data.

| | |
|---|---|
| | allow DHS access to tax return information.[18] IRS officials have also expressed concern that sharing this data could decrease tax collections and compliance.[19] We are examining the usefulness of SSA data to DHS for these subcommittees, and will consider ESF issues as part of this work. |
| **Closer Coordination by SSA, IRS, and DHS Could Improve Usefulness of SSA Earnings Data** | Improving the usefulness of the data could help ensure that limited enforcement resources are targeted effectively. SSA data could help identify areas of unauthorized work, but closer collaboration among SSA, IRS, and DHS can help to ensure that the most useful data are available in a form that can be used efficiently for enforcement.<br><br>Under the current data-sharing arrangement, DHS officials believe the agency would have to invest significant resources to determine whether employers it targets are really hiring persons who are not work authorized. DHS has stated that determining which nonwork SSN holders are now authorized to work may not be cost-effective and would pull resources from other national security-related initiatives.[20] Neither SSA nor DHS is able to easily and quickly update work status because they lack a common identifier for their records. Updating status without a common identifier may not be practical because different spellings or name variations confound large-scale matching efforts. For example, an August 2005 report from the SSA's Office of the Inspector General highlights a substantial proportion of cases in which names were inconsistent between SSA and DHS.[21] In at least six reports in recent years, SSA's Office of the Inspector General has recommended or mentioned prior recommendations that SSA |

---

[18] Social Security Administration, Office of the Inspector General, *Social Security Number Misuse in the Service, Restaurant, and Agriculture Industries*, A-08-05-25023 (Baltimore, Maryland: April 2005); and *Obstacles to Reducing Social Security Number Misuse in the Agriculture Industry*, A-08-99-41004 (Baltimore, Maryland: January 2001).

[19] GAO-05-154.

[20] GAO-05-154.

[21] Social Security Administration, Office of the Inspector General, *Reported Earnings Prior to the Issuance of a Social Security Number*, A-03-04-14037 (Baltimore, Maryland: August 2005).

work with DHS to update information about work authorization.[22] SSA officials maintain that it is their policy to make changes to the Social Security record only if the SSN holder initiates the changes and provides evidentiary documents from DHS. SSA further states that a "resolution of the discrepant information between DHS and SSA would require more than a simple verification."[23]

Despite the many problems with the data, there are steps that could be taken to improve them. For example, the employers who submit the most earnings reports for nonwork SSNs might be good candidates for outreach and education about verifying work eligibility. SSA's Office of the Inspector General officials suggested that DHS send letters to employers of persons with nonwork SSNs. These letters could encourage persons listed as having nonwork SSNs, who are now authorized to work, to update their records. The ESF also has the potential to provide useful information to DHS, but this information has protected tax status. Although some of the same difficulties that pertain to the Nonwork Alien File could also affect the usefulness of the ESF to DHS enforcement efforts, if these challenges could be overcome, authorizing transmittal of at least some of the ESF information to DHS might be warranted.

Producing accurate, useful data will require substantial continued effort on the part of SSA, DHS, and the IRS: these efforts will be of little value, however, if the data are not used for enforcement and to stimulate changes in employer and employee behavior. We have reported previously that the IRS program of employer penalties is weak, because of limited requirements on employers to verify and report accurate worker names and SSNs; we have recommended that IRS consider strengthening employer requirements, a course that could over time improve the accuracy of wage data reported to SSA.[24] We have also reported that,

---

[22]Social Security Administration, Office of the Inspector General, *Social Security Administration Benefits Related to Unauthorized Work*, A-03-03-23053 (Baltimore, Maryland: March 2003); *Profile of the Social Security Administration's Non-Work Alien File*, A-14-03-23071 (Baltimore, Maryland: September 2003); *Reported Earnings Prior to the Issuance of a Social Security Number*, A-03-04-14037 (Baltimore, Maryland: August 2005); *Unauthorized Work Social Security Numbers at the Department of Defense*, A-03-05-25127 (Baltimore, Maryland: September 2005); *Impact of Nonimmigrants Who Continue Working after Their Immigration Status Expires*, A-08-05-15073 (Baltimore, Maryland: September 2005); and *Work Activity for Social Security Numbers Assigned for Nonwork Purposes in the State of Utah*, A-14-01-11048 (Baltimore, Maryland: March 2002).

[23]SSA, OIG, A-03-04-14037; A-03-05-25127.

[24]GAO-04-712.

consistent with DHS's primary mission in the post-September 11 environment, DHS enforcement resources have focused mainly on critical infrastructure industries in preference to general worksite enforcement.[25] In such circumstances, coordination to leverage usable and useful SSA data is essential to ensure that limited DHS worksite enforcement resources are targeted effectively.

## Concluding Observations

The federal government likely can make use of information it already has to better support enforcement of immigration, work authorization and tax laws. The Earnings Suspense and the Nonwork Alien files have potential, but even the best information will not make a difference if the relevant federal agencies do not have credible enforcement programs. In fact, sharing earnings data to identify potential unauthorized workers could unnecessarily disclose sensitive taxpayer information if the data are not utilized by enforcement programs. To address unauthorized work more meaningfully, IRS, DHS and SSA need to work together to improve employer reporting, develop more usable and useful data sets for suspicious earnings reports, and better target limited enforcement resources. We look forward to contributing to this endeavor as we continue to conduct our work on using SSA data to help reduce unauthorized work.

This concludes my prepared statement. I will be happy to answer any questions you may have.

## Contacts and Acknowledgments

For questions regarding this testimony, please call Barbara Bovbjerg at (202) 512-7215. Other key contributors to this statement were Blake Ainsworth, Assistant Director; Lara Laufer, Analyst-in-Charge; Beverly Crawford; Susan Bernstein; Michael Brostek; Rebecca Gambler; Jason Holsclaw; Daniel Schwimer; Richard Stana; Vanessa Taylor; Walter Vance; and Paul Wright.

---

[25] GAO-05-813 and GAO, *Immigration Enforcement: Challenges to Implementing the INS Interior Enforcement Strategy*, GAO-02-861T. (Washington, D.C.: June 19, 2002)

This is a work of the U.S. government and is not subject to copyright protection in the United States. It may be reproduced and distributed in its entirety without further permission from GAO. However, because this work may contain copyrighted images or other material, permission from the copyright holder may be necessary if you wish to reproduce this material separately.

| | |
|---|---|
| **GAO's Mission** | The Government Accountability Office, the audit, evaluation and investigative arm of Congress, exists to support Congress in meeting its constitutional responsibilities and to help improve the performance and accountability of the federal government for the American people. GAO examines the use of public funds; evaluates federal programs and policies; and provides analyses, recommendations, and other assistance to help Congress make informed oversight, policy, and funding decisions. GAO's commitment to good government is reflected in its core values of accountability, integrity, and reliability. |
| **Obtaining Copies of GAO Reports and Testimony** | The fastest and easiest way to obtain copies of GAO documents at no cost is through GAO's Web site (www.gao.gov). Each weekday, GAO posts newly released reports, testimony, and correspondence on its Web site. To have GAO e-mail you a list of newly posted products every afternoon, go to www.gao.gov and select "Subscribe to Updates." |
| Order by Mail or Phone | The first copy of each printed report is free. Additional copies are $2 each. A check or money order should be made out to the Superintendent of Documents. GAO also accepts VISA and Mastercard. Orders for 100 or more copies mailed to a single address are discounted 25 percent. Orders should be sent to: <br><br> U.S. Government Accountability Office <br> 441 G Street NW, Room LM <br> Washington, D.C. 20548 <br><br> To order by Phone: Voice: (202) 512-6000 <br> TDD: (202) 512-2537 <br> Fax: (202) 512-6061 |
| **To Report Fraud, Waste, and Abuse in Federal Programs** | Contact: <br><br> Web site: www.gao.gov/fraudnet/fraudnet.htm <br> E-mail: fraudnet@gao.gov <br> Automated answering system: (800) 424-5454 or (202) 512-7470 |
| **Congressional Relations** | Gloria Jarmon, Managing Director, JarmonG@gao.gov (202) 512-4400 <br> U.S. Government Accountability Office, 441 G Street NW, Room 7125 <br> Washington, D.C. 20548 |
| Public Affairs | Paul Anderson, Managing Director, AndersonP1@gao.gov (202) 512-4800 <br> U.S. Government Accountability Office, 441 G Street NW, Room 7149 <br> Washington, D.C. 20548 |