IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS; SAN FRANCISCO LABOR COUNCIL; SAN FRANCISCO BUILDING AND CONSTRUCTION TRADES COUNCIL; and CENTRAL LABOR COUNCIL OF ALAMEDA COUNTY,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL CHERTOFF, Secretary of Homeland Security; DEPARTMENT OF HOMELAND SECURITY; JULIE MYERS, Assistant Secretary for ICE, Department of Homeland Security; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; MICHAEL ASTRUE, Commissioner of Social Security; and SOCIAL SECURITY ADMINISTRATION,<br><br>Defendants. | No. 3:07-cv-04472<br><br>**DECLARATION OF JAMES C. SPERO** |

I, James C. Spero, hereby declare:

(1) I am the Acting Deputy Assistant Director for the Critical Infrastructure and Fraud Division, Office of Investigations, for United States Immigration and Customs Enforcement (ICE) in the Department of Homeland Security (DHS). My duties include the oversight of operational and programmatic activities concerning the enforcement of immigration laws by ICE. Prior to being appointed to my current position, I was the headquarters Unit Chief for the Identity and Benefit Fraud Unit and previously the Acting Assistant Special Agent in Charge in Washington, D.C., where I was responsible for managing ICE enforcement activities within that geographic location. As Acting Deputy Assistant Director, I have personally supervised from the headquarters level significant ICE worksite enforcement operations. In that capacity, and based upon reasonable inquiry and my knowledge, information and belief, I state the following.

(2) ICE maintains the statutory authority to investigate the unauthorized employment of

1

potentially illegal workers. Among its numerous responsibilities, ICE is charged with worksite enforcement of immigration laws in the United States. This obligation requires ICE to investigate the immigration status of various employees in the country and assess whether those individuals are lawfully employed under the immigration laws. Furthermore, ICE investigates employers who knowingly hire or continue to hire an unauthorized alien knowing the alien is (or has become) unauthorized to work.

(3) The Social Security Administration (SSA), upon learning of discrepancies in Social Security Numbers submitted to the SSA, will, in certain circumstances, send notice through No Match Letters to the employer informing the employer about these discrepancies.

(4) Employers that receive a No Match letter are advised that the name and Social Security Numbers reported by the employer on earnings data do not match the name and Social Security Numbers on file with SSA. There are legitimate reasons—unrelated to fraud or immigration status—why an employee might have a No Match, such as name changes resulting from marriage or divorce. No-Matches may also result where the employee has provided false Social Security Numbers, or the social security number was assigned to someone else. Thus, these letters may indicate that the employee referenced may not be authorized to work.

(5) By implementing the regulation entitled "Safe-Harbor Procedures for Employers Who Receive a No Match letter," DHS will not obtain employer tax information nor copies of No Match letters from SSA. One method, however, by which ICE obtains no match information directly from SSA is with assistance of the Department of Justice is through an *ex parte* order from a federal District Court under 26 U.S.C. § 6103(i)(1).

(6) In certain instances, ICE is able to directly request No Match letter information from an employer. This is the case when ICE is conducting Form I-9 inspections or when ICE issues an administrative or obtains a Grand Jury subpoena. ICE is able to directly request No Match letters from employers along with other employment related documents.

(7) ICE does not view an employer's receipt of No Match letters, standing alone, as sufficient

DECLARATION OF JAMES C. SPERO            2

evidence to establish that an employer had constructive knowledge that he or she was employing unauthorized workers. However, when used in conjunction with other evidence, such letters were sometimes found to demonstrate the requisite knowledge to constitute a violation of 8 U.S.C. § 1324 During worksite enforcement investigations, ICE has encountered employers who had received No Match letters from SSA yet failed to take any action with regard to resolving the discrepancies identified in the letters. Using the No Match letters, and evidence that the employer failed to take an steps to resolve the No-Match, together with other evidence, ICE has been able to demonstrate that tl employer had constructive knowledge that he or she was continuing to employ unauthorized workers

(8) The No Match rule provides guidance to the employer regarding steps that can be taken to remedy any discrepancies found in the SSA No Match letter. The rule clarifies that ICE may use the failure to take reasonable steps in response to a No Match letter as evidence leading to a determinatic that the employer had constructive knowledge of the employment of persons not authorized to work. As the rule makes clear, ICE will continue to assess constructive knowledge in light of the totality of the circumstances.

(9) In sum, the Safe Harbor rule makes an employer's responsibility upon the receipt of a no mat letter clear and also clarifies how ICE may use no match information in enforcement investigation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 31, 2007, at
Washington, D.C.

James C. Spero
Acting Deputy Assistant Director
Critical Infrastructure and Fraud
Office of Investigations
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

DECLARATION OF JAMES C. SPERO         3