1  Stephen P. Berzon (SBN 46540)
   Scott A. Kronland (SBN 171693)
2  Jonathan Weissglass (SBN 185008)
   Linda Lye (SBN 215584)
3  Danielle E. Leonard (SBN 218201)
   ALTSHULER BERZON LLP
4  177 Post Street, Suite 300
   San Francisco, CA 94108
5  Telephone: (415) 421-7151
   Facsimile: (415) 362-8064
6  Email: skronland@altshulerberzon.com
   Email: llye@altshulerberzon.com
7  Email: dleonard@altshulerberzon.com

8  *Attorneys for Plaintiffs*

9  Jonathan P. Hiatt (SBN 63533) (*Pro Hac Vice* Application forthcoming)
   James B. Coppess (*Pro Hac Vice* Application forthcoming)
10 Ana L. Avendaño (SBN 160676)
   AFL-CIO
11 815 Sixteenth Street, N.W.
   Washington, D.C. 20006
12 Telephone: (202) 637-5053
   Facsimile: (202) 637-5323
13 Email: aavendan@aflcio.org

14 *Attorneys for Plaintiff AFL-CIO*

15 (Counsel list continued on next page)

16              UNITED STATES DISTRICT COURT

17              NORTHERN DISTRICT OF CALIFORNIA

18 AMERICAN FEDERATION OF LABOR AND              ) Case No. C07-4472 CRB
   CONGRESS OF INDUSTRIAL ORGANIZATIONS;         )
19 SAN FRANCISCO LABOR COUNCIL; SAN              )
   FRANCISCO BUILDING AND CONSTRUCTION           ) **REPLY IN SUPPORT OF EX**
20 TRADES COUNCIL; and CENTRAL LABOR             ) **PARTE APPLICATION FOR**
   COUNCIL OF ALAMEDA COUNTY,                    ) **TEMPORARY RESTRAINING**
21                                               ) **ORDER AND ORDER TO SHOW**
            Plaintiffs,                          ) **CAUSE WHY PRELIMINARY**
22                                               ) **INJUNCTION SHOULD NOT**
        v.                                       ) **ISSUE**
23                                               )
   MICHAEL CHERTOFF, Secretary of Homeland Security; )
24 DEPARTMENT OF HOMELAND SECURITY;              )
   JULIE MYERS, Assistant Secretary of Homeland  )
25 Security; U.S. IMMIGRATION AND CUSTOMS        )
   ENFORCEMENT; MICHAEL ASTRUE, Commissioner     )
26 of Social Security; and SOCIAL SECURITY       )
   ADMINISTRATION,                               )
27                                               )
            Defendants.                          )
28 _____ )

1  (Counsel list continued from first page)

2  Linton Joaquin (SBN 73547)
   Marielena Hincapié (SBN 188199)
3  Monica T. Guizar (SBN 202480)
   NATIONAL IMMIGRATION LAW CENTER
4  3435 Wilshire Blvd., Suite 2850
   Los Angeles, CA 90010
5  Telephone: (213) 674-2850
   Facsimile: (213) 639-3911
6  Email: guizar@nilc.org

7  Lucas Guttentag (SBN 90208)
   Jennifer C. Chang (SBN 233033)
8  Mónica M. Ramírez (SBN 234893)
   AMERICAN CIVIL LIBERTIES UNION FOUNDATION
9  Immigrants' Rights Project
   39 Drumm Street
10 San Francisco, CA 94111
   Telephone: (415) 343-0770
11 Facsimile: (415) 395-0950
   E-mail: jchang@aclu.org
12
   Omar C. Jadwat (*Pro Hac Vice* Application forthcoming)
13 AMERICAN CIVIL LIBERTIES UNION FOUNDATION
   Immigrants' Rights Project
14 125 Broad Street, 18th Floor
   New York, NY 10004
15 Telephone: (212) 549-2620
   Facsimile: (212)-549-2654
16 Email: ojadwat@aclu.org

17 Alan L. Schlosser (SBN 49957)
   Julia Harumi Mass (SBN 189649)
18 ACLU FOUNDATION OF NORTHERN CALIFORNIA
   39 Drumm Street
19 San Francisco, CA 94111
   Telephone: (415) 621-2493
20 Facsimile: (415) 255-1478
   E-mail: aschlosser@aclu.org
21
   *Attorneys for Plaintiff Central Labor Council of Alameda County*
22
   David A. Rosenfeld (SBN 58163)
23 Manjari Chawla (SBN 218556)
   WEINBERG, ROGER & ROSENFELD
24 A Professional Corporation
   1001 Marina Village Parkway, Suite 200
25 Alameda, California 94501-1091
   Telephone: (510) 337-1001
26 Facsimile: (510) 337-1023
   Email: drosenfeld@unioncounsel.net
27
   *Attorneys for Plaintiffs San Francisco Labor Council,*
28 *San Francisco Building and Construction Trades Council,*
   *and Central Labor Council of Alameda County*

REPLY ISO EX PARTE APPL. FOR TRO & OSC, Case No. C07-4472 CRB

**REPLY MEMORANDUM IN SUPPORT OF TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

Plaintiffs submit this short reply to the government's opposition to a temporary restraining order. The government focuses entirely on the merits of the challenge to the Final Rule and offers no reason why the Court should not issue a stay of the start of the SSA/DHS mailing to preserve the status quo until those merits can be considered at a preliminary injunction hearing.

**1.   No Harm Caused by a Stay.**

The government does not claim that holding up the start of the new SSA/DHS joint no-match mailings pending the preliminary injunction hearing would cause any harm to the government at all other than the generalized harm of a delay in any government action.

Moreover, any minor delay in the government's plans caused by a temporary restraining order is entirely the fault of DHS and SSA for jumping the gun. Under the Administrative Procedure Act, a Final Rule does not become legally effective for 30 days after publication. 5 U.S.C. §553 (d). That 30-day delay provided in the APA allows time for legal challenges. DHS and SSA knew there would be such a legal challenge. DHS received 5,000 comments on its proposed rule, including comments pointing out the same legal flaws in the rule that are raised by this lawsuit. *See* Pls. Mem. in Supp. of TRO & PI, Appendix A (Notice of Final Rule), at 45614-45616 (discussing comments on the proposed rule). DHS then allowed the proposed rule to sit idle for an entire year after the comment period closed. There is no reason DHS could not have adopted the Final Rule *10 days earlier* or scheduled the SSA/DHS mailing to commence *10 days later*.

Another purpose of the thirty-day waiting period is to give affected parties a reasonable time to adjust their behavior. *See American Federation of Government Employees v. Block*, 655 F.2d 1153, 1156 (D.C. Cir. 1981). In this case, DHS and SSA are violating 5 U.S.C. §553(d) by starting the mailing of new no-match packets 10 days too soon.

The new SSA no-match letter says *nothing* about DHS' rule not becoming legally effective until September 14, 2007. Rather, it explicitly and unequivocally tells employers they must comply *now* with the accompanying DHS guidance letter:

You should follow the instructions contained in the . . . attached letter from the

1  Department of Homeland Security.  You should apply the procedures provided in
2  [the letter] uniformly to all employees.  You should not ignore this letter and do
3  nothing.  That could . . . , as the Department of Homeland Security has advised us,
4  expose you to liability under the immigration laws.

Pls. Mem. in Supp. of TRO & PI, Appendix C, at 2 (new SSA no-match letter).

Likewise, the "attached letter from the Department of Homeland Security" says nothing about DHS' rule not becoming legally effective until September 14, 2007.  Indeed, the DHS letter informs employers that the new, 90-day deadline for employees to clear up no-matches with SSA or face termination should run *from the date of the DHS letter*, not September 14.

If none of the foregoing measures resolves the matter within 90 days *of receipt of this letter*, you should complete, within three days, a new I-9 Form as if the employee in question were newly hired . . . .  If you cannot confirm that the employee is authorized to work . . . you risk liability for knowingly continuing to employ unauthorized persons.

Pls. Mem. in Supp. of TRO & PI, Appendix B, at 2 (DHS letter) (emphasis added).

DHS and SSA created the need for a temporary restraining order by violating 5 U.S.C. §553(d) instead of waiting 30 days.  If DHS already has been advising employers to comply with the Final Rule (*see* DHS Opp. Mem. at 22), that advice also violates 5 U.S.C. §553(d).

**2.     Harm Caused in the Absence of a Stay.**

Contrary to the government's contention, the early mailing of the DHS/SSA no-match packet would cause serious, irreparable, concrete harm to plaintiffs' members.

Plaintiffs have introduced evidence that they collectively represent 10 million working men and women, and that many of plaintiffs' members have been the subject of no-match letters in the past. Chavez-Thompson Decl., ¶4.  The new DHA/SSA joint mailing will not occur until Tuesday, September 4, 2007, so no one has been the subject of those letters yet.  But since 4 percent of all Forms W-2 wind up in SSA's Earnings Suspense File, Plaintiffs will have hundreds of thousands of individual members with no-match SSNs. Theodore Decl., ¶28.  There can be no better plaintiff than the AFL-CIO to represent employees' interests in this case.  The Ninth Circuit has recognized

the standing of a labor organization in numerous cases to protect the interests and rights of its members.  *See*, *e.g.*, *California Rural Legal Assistance & American Federation of Labor and Congress of Industrial Organizations (AFL-CIO) v. Legal Services Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990).

Plaintiffs also have established that concrete harm will occur in the absence of a stay of the DHS/SSA mailing.

First, plaintiffs have presented expert testimony that some employees will be fired immediately upon receipt of the new DSA/SSA no-match packet because the employer erroneously suspects them of being unauthorized to work and fears liability under the immigration laws. Theodore Decl., ¶11-14, 17.  Firings have occurred in the past despite admonitions on prior no-match letters, and DHS and SSA will exacerbate this practice by explicitly linking the no-match letter with unauthorized work status in the new DHS/SSA joint mailing.  *Id*, ¶17.  Neither the Court nor the government *will ever know* who those employees are so it will be impossible to remedy the harm.

Second,  upon their employers' receipt of the DHS/SSA no-match packet, employees whose Social Security numbers are listed on the letter, particularly workers with a "foreign" appearance and non-citizens,  will be told by their employers that they are considered "unauthorized aliens" unless they can demonstrate otherwise.  Such false accusations will impose an unfair stigma on Latino and Asian workers with work authorization, including U.S. citizens.  As the former Commissioner of the Social Security Administration explains:  Foreign-born workers with lawful status are particularly likely to be subject to an SSA data discrepancy because of different naming conventions and inconsistent translations of foreign names, and "[w]orkers falsely accused of being unauthorized based on a no-match letter may be unfairly harmed."  Apfel Decl., ¶¶7, 17; *see also* Chavez-Thompson Decl., ¶4 ("The impact of no-match letters falls especially hard on foreign-born workers whom employers may wrongly assume are unauthorized.").  The fear and humiliation of being falsely accused is a real harm that cannot be undone.

Third, workers covered by a no-match letter will need to contact SSA field offices, perhaps several times, to attempt to resolve no-matches.  For many workers, that would mean a loss of pay.

Chavez-Thompson Decl., ¶5. That is real harm. In addition, some employees may be forced to spend time and effort looking for another job, out of fear that they will be fired because they are not be able to resolve the problem in time. These harms cannot be remedied after the fact. Nor can the administrative costs of immediate employer compliance with the new DHS procedures be recovered later. Congress wanted to limit immigration-law compliance burdens for employers in part because every increased compliance burden encourages employers to shun all employees with a "foreign" appearance or accent. *See*, *e.g.,* 8 U.S.C. §1324b(a)(1) (prohibiting national-origin discrimination).

Finally, the DHS letter instructs employers that, after 90-days of the date of the no-match letter, if they continue to employ workers who have not fixed SSA no-match discrepancies, "you risk liability for knowingly continuing to employ unauthorized persons." And, the SSA letter instructs employers that "[y]ou should apply the procedures provided in [the DHS letter] uniformly to all employees," so employers cannot make exceptions. *See* Appendix C. We have presented evidence that employees who are authorized to work may not be able to correct SSA data discrepancies in time. Apfel Decl., ¶17, Moran Decl., ¶6. Even the Government's opposition concedes that SSA will ***not*** be able to resolve all the no-matches in time. *See* DHS Opp. Mem. at 7 (SSA "anticipates that it will be able to resolve *nearly all claims* in this 90-day time frame") (emphasis added). Since the mailing will cover *eight million* employees, resolving only "nearly all" no-matches will mean real harm to the many workers who will be fired. While it may theoretically be possible for SSA and DHS to contact thousands of employers later, it makes far more sense not to send out these packets while the Court determines whether to issue a preliminary injunction against the Final Rule.

### 3. Date for Hearing on Preliminary Injunction.

The Final Rule takes legal effect on September 14, 2007, so the Court should set a hearing date on the request for a preliminary injunction before then unless the Final Rule itself is temporarily enjoined in the meanwhile. Plaintiffs respectfully request that the hearing not be set for September 13 because that is the first day of Rosh Hashanah.

REPLY ISO EX PARTE APPL. FOR TRO & OSC, Case No. C07-4472 CRB    4

| | |
|---|---|
| Dated: August 31, 2007 | Respectfully submitted |

Stephen P. Berzon
Scott A. Kronland
Jonathan Weissglass
Linda Lye
Danielle E. Leonard
ALTSHULER BERZON LLP

Jonathan P. Hiatt
James B. Coppess
Ana Avendaño
AFL-CIO

Linton Joaquin
Marielena Hincapié
Monica T. Guizar
NATIONAL IMMIGRATION LAW CENTER

Lucas Guttentag
Jennifer C. Chang
Mónica M. Ramírez
AMERICAN CIVIL LIBERTIES UNION FOUNDATION

Omar C. Jadwat
AMERICAN CIVIL LIBERTIES UNION FOUNDATION

Alan L. Schlosser
Julia Harumi Mass
ACLU FOUNDATION OF NORTHERN CALIFORNIA

David A. Rosenfeld
Manjari Chawla
WEINBERG, ROGER & ROSENFELD


by: /s/Scott A. Kronland
          Scott A. Kronland

Attorneys for Plaintiffs

REPLY ISO EX PARTE APPL. FOR TRO & OSC, Case No. C07-4472 CRB          5