1  Matthew Ross (SBN 084703)
   Philip Monrad (SBN 151073)
2  LEONARD, CARDER, LLP
   1330 Broadway, Suite 1430
3  Oakland, CA 94612
   Telephone:     (510) 272-0169
4  Facsimile:     (510) 272-0174
   Email:         MRoss@leonardcarder.com; PMonrad@leonardcarder.com
5
   Robert M. Weinberg   (*pro hac vice* application forthcoming)
6  Leon Dayan           (*pro hac vice* application forthcoming)
   Jennifer L. Hunter      (*pro hac vice* application forthcoming)
7  BREDHOFF & KAISER, PLLC
   805 Fifteenth Street, NW, Tenth Floor
8  Washington, D.C. 20008
   Telephone:     (202) 842-2600
9  Facsimile:     (202) 842-1888
   Email:         LDayan@bredhoff.com; JHunter@bredhoff.com
10
   *Attorneys for Plaintiff-Intervenors*
11
                      UNITED STATES DISTRICT COURT
12
                    NORTHERN DISTRICT OF CALIFORNIA
13

14  AMERICAN FEDERATION OF LABOR      )
    AND CONGRESS OF INDUSTRIAL        )  Case No.: 07-04472(CRB)
    ORGANIZATIONS; SAN FRANCISCO      )
15  LABOR COUNCIL; SAN FRANCISCO      )
    BUILDING AND CONSTRUCTION         )
    TRADES COUNCIL; and CENTRAL       )
16  LABOR COUNCIL OF ALAMEDA          )  **COMPLAINT IN INTERVENTION OF**
    COUNTY,                           )  **UNITED FOOD AND COMMERCIAL**
                                      )  **WORKERS INTERNATIONAL UNION,**
17            Plaintiffs,             )  **UNITED FOOD AND COMMERCIAL**
                                      )  **WORKERS LOCAL 5, UNITE HERE, and**
18      v.                            )  **UNITE HERE LOCAL 2**
                                      )  (Administrative Procedures Act Case)
19  MICHAEL CHERTOFF, Secretary of    )
    Homeland Security; DEPARTMENT OF  )
20  HOMELAND SECURITY; JULIE MYERS,   )
    Assistant Secretary of Homeland Security; )
    U.S. IMMIGRATION AND CUSTOMS      )
21  ENFORCEMENT; MICHAEL ASTRUE,      )
    Commissioner of Social Security; and )
22  SOCIAL SECURITY ADMINISTRATION,   )
                                      )
23            Defendants.             )
                                      )
    _____)
24  Complaint in Intervention Case No. 3:07-cv-04472(CRB)

1   SAN FRANCISCO CHAMBER OF                    )
    COMMERCE,                                    )
2   CHAMBER OF COMMERCE OF THE                  )
    UNITED STATES OF AMERICA , GOLDEN           )
    GATE RESTAURANT ASSOCIATION,                )
3   NATIONAL ROOFING CONTRACTORS                )
    ASSOCIATION, AMERICAN NURSERY &             )
4   LANDSCAPE ASSOCIATION,                      )
    INTERNATIONAL FRANCHISE                     )
5   ASSOCIATION, and UNITED FRESH               )
    PRODUCE ASSOCIATION,                        )
6                                                )
             Plaintiff-Intervenors,             )
                                                 )
7         v.                                      )
                                                 )
8   MICHAEL CHERTOFF, Secretary of              )
    Homeland Security; DEPARTMENT OF            )
    HOMELAND SECURITY;                          )
9   JULIE MYERS, Assistant Secretary of         )
    Homeland Security; U.S. IMMIGRATION         )
10  AND CUSTOMS ENFORCEMENT;                    )
    MICHAEL ASTRUE, Commissioner of Social      )
11  Security; and SOCIAL SECURITY               )
    ADMINISTRATION,                             )
                                                 )
12           Defendants.                        )
    _____          )
13                                               )
                                                 )
14  UNITED FOOD AND COMMERCIAL                  )
    WORKERS INTERNATIONAL UNION;                )
    UNITED FOOD AND COMMERCIAL                  )
15  WORKERS LOCAL 5; UNITE HERE; and            )
    UNITE HERE LOCAL 2,                         )
16                                               )
             Plaintiff-Intervenors,             )
17                                               )
          v.                                      )
                                                 )
18  MICHAEL CHERTOFF, Secretary of              )
    Homeland Security; DEPARTMENT OF            )
19  HOMELAND SECURITY; JULIE MYERS,             )
    Assistant Secretary of Homeland Security;   )
20  U.S. IMMIGRATION AND CUSTOMS                )
    ENFORCEMENT; MICHAEL ASTRUE,                )
    Commissioner of Social Security; and        )
21  SOCIAL SECURITY ADMINISTRATION,             )
                                                 )
22           Defendants.                        )
    _____
23

24  Complaint in Intervention Case No. 3:07-cv-04472(CRB)

Plaintiff-Intervenors (hereinafter "Plaintiffs") allege as follows:

**OVERVIEW**

1.      The Immigration Reform and Control Act of 1986 (IRCA or "Act"), 8 U.S.C. § 1324a *et seq.*, imposes civil and criminal sanctions against employers who hire a person "knowing" that the person is an alien unauthorized to work in the United States, or who continue to employ a person "knowing" that the person is an unauthorized alien. This action challenges the validity of a final rule adopted by the Department of Homeland Security on August 15, 2007, entitled "Safe Harbor Procedures for Employers That Receive a No Match Letter." 72 Fed. Reg. 45611 (Aug. 15, 2007) ("DHS Final Rule" or "Rule").

2.      The DHS Final Rule has two components: First, it creates a legal fiction by deeming the bare receipt by an employer of a "no-match" letter from the Social Security Administration (SSA)—a letter stating that a social security number (SSN) reported by the employer with respect to a particular employee does not match the SSN in the SSA's (error-prone) database—to constitute evidence that the employer "know[s]" that the employee in question is an alien not authorized to work in the United States. Second, the Rule requires employers in receipt of a no-match letter to conduct a prescribed investigation and follow other specified procedures for a period running 93 days, in order to determine whether the listed person is likely to be an unauthorized alien. The employer may use the first 30 days to examine its own records, and need allow the employee only the remaining 63 days to resolve the discrepancy by working through the Social Security Administration bureaucracy or otherwise. If, at the end of the 93-day period, the mismatch has not been resolved in a manner favorable to the employee, the Rule provides that the employer, while insulated from liability for that period, becomes exposed to liability for a "knowing" IRCA violation immediately thereafter unless it terminates the employee at once.

3.      In adopting the Rule, the DHS has imposed on employers a duty to investigate and reverify the immigration status of already-hired workers upon learning information that neither establishes that the workers in question are in fact unauthorized aliens or that they are even highly likely to be unauthorized aliens.  Imposition of such a duty is inconsistent with Congress' deliberate choice to make "knowledge" the standard of scienter for such IRCA violations, and with Congress' concomitant choice to reject a negligence standard or any other standard that could be plausibly construed to encompass such a duty.

4.      Imposition of this duty on employers will have a direct, adverse impact on U.S. citizen employees and other employees authorized to work in the United States, because under the DHS Final Rule, authorized employees listed on a no-match letter will be compelled in many instances to go to SSA offices during working hours and to convince the SSA bureaucracy to correct its records in a period of as little as sixty days—a period that even the Rule's preamble acknowledges will be insufficient in the most difficult cases, and that, in truth, will all but certainly be insufficient in many other cases as well.

5.      Plaintiffs each act in two separate capacities.  Each plaintiff is a labor organization that represents employees of other employers, and each is also an employer of its own staff employees.  Plaintiffs challenge the DHS Final Rule both (a) in their representative capacity on behalf of the workers in the bargaining units that they or their local unions represent, in order to prevent harm to employees and labor organizations that the Rule will cause, and (b) in their separate capacity as employers, to prevent the harms to their interest as employers which would result from their being threatened with civil and criminal sanctions for conduct that Congress did not intend to penalize, and their interest in not being compelled to expend scarce

1  resources conducting investigations and inquiries that Congress did not intend for them to have

2  to conduct.

3  **JURISDICTION**

4  6.    This Court has jurisdiction over the claims alleged in this Complaint pursuant to

5  28 U.S.C. § 1331 (federal question), 28 U.S.C. § 2201 (declaratory relief), and 5 U.S.C. §§ 701-

6  706 (Administrative Procedures Act).

7  **VENUE AND INTRA-DISTRICT ASSIGNMENT**

8  7.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e), because the venue

9  here was properly laid in the original complaint that initiated this action.  Even viewing the

10  instant complaint-in-intervention independently from the original complaint, venue would lie,

11  because plaintiffs UNITE HERE Local 2 and United Food and Commercial Workers (UFCW)

12  Local 5 reside in this judicial district.  For the same reasons, intradistrict assignment to the San

13  Francisco and Oakland divisions is proper.

14  **PARTIES**

15  8.    Plaintiff United Food and Commercial Workers International Union (UFCW) is

16  an international union representing 1.3 million working grocery, food processing, retail,

17  manufacturing, and other workers throughout the United States.  UFCW is one of the largest

18  unions that has a substantial proportion of immigrant members.  UFCW was one of the labor

19  organizations which submitted comments objecting to the DHS Final Rule.    UFCW is also an

20  employer.  UFCW's headquarters is located at 1775 K Street NW, Washington, District of

21  Columbia, 20006.

22  9.    Plaintiff UFCW Local 5 is a labor organization that represents approximately

23  25,000 employees, including employees lawfully working in the United States in the food, retail,

24

1    and agriculture industries who have been the subject of SSA no-match letters sent to their

2    employers.  An important part of Local 5's mission is to advocate on behalf of workers so that

3    their rights in the workplace are protected and so that they are not victims of unlawful

4    discrimination.   Local 5 represents many members of Latin American and Asian descent who

5    use compound last names or inconsistently transliterate their names, which may result in

6    inadvertent errors or discrepancies in their SSA records.  UFCW Local 5 was formed from a

7    merger of smaller local unions, and is the successor in interest to the merged unions; therefore

8    references to UFCW Local 5 in this Complaint refer as well to the predecessor entities whose

9    interests it succeeds.  UFCW Local 5 is an employer with respect to its own staff employees,

10   and, in its capacity as an employer, UFCW Local 5 has in the past received an SSA no-match

11   letter and there is a substantial possibility that it could receive another such letter in the future.

12   The headquarters of UFCW Local 5 are located at 240 South Market Street San Jose, 95113.

13   Local 5 also has sub-offices in Alameda and Contra Costa counties, among others.

14        10.    Plaintiff UNITE HERE is an international union representing a diverse

15   membership of more than 450,000 in the apparel and textiles, hotel, casino, food service, and

16   restaurant industries.  A substantial proportion of UNITE HERE's membership is composed of

17   immigrants.  UNITE HERE was one of the labor organizations which submitted comments

18   objecting to the DHS Final Rule.  UNITE HERE is also an employer.  UNITE HERE's

19   headquarters is located at 275 7th Avenue, New York, New York, 10001.

20        11.    Plaintiff UNITE HERE Local 2 is a labor organization that represents

21   approximately 12,000 employees, including employees lawfully working in the United States

22   who have been the subject of SSA no-match letters sent to their employers.  UNITE HERE Local

23   2 has in the past successfully represented, including in cases litigated before arbitrators,

24

1    employees unjustly discharged in response to no-match letters.   A substantial portion of Local

2    2's members work in the hospitality industry.  An important part of Local 2's mission is to

3    advocate on behalf of workers so that their rights in the workplace are protected and so that they

4    are not victims of unlawful discrimination.   Local 2 represents many members of Latin

5    American and Asian descent who use compound last names or inconsistently transliterate their

6    names, which may result in inadvertent errors or discrepancies in their SSA records.  Local 2 is

7    also an employer.  The principal office of UNITE HERE Local 2 is located at 209 Golden Gate

8    Avenue, San Francisco, California 94102.

9         12.    In the past, workers represented by, and members of, the plaintiff labor

10    organizations have been the subject of no-match letters sent by the SSA to their employers.  The

11    U.S. Government Accountability Office (GAO) reports that about four percent of all Forms W-2

12    submitted by employers report earnings that cannot be matched with SSA records and that are

13    therefore placed in SSA's Earnings Suspense File.  On information and belief, Plaintiffs

14    represent thousands of workers who are lawfully working in the United States but have earnings

15    in the Earnings Suspense File, and who therefore are likely to be the subject of SSA no-match

16    letters issued in the future.

17         13.    Defendant Michael Chertoff is the Secretary of the Department of Homeland

18    Security and is responsible for all functions of DHS and its component organizations. He is sued

19    in his official capacity.

20         14.    Defendant Department of Homeland Security is a federal agency charged with, *inter*

21    *alia,* the administration and enforcement of federal immigration laws. DHS promulgated the rule

22    entitled "Safe Harbor Procedures for Employers That Receive a No Match Letter," 72 Fed. Reg.

23    45611 (Aug. 15,2007), that is challenged in this litigation.  Defendant U.S. Immigration and

24

1  Customs Enforcement ("ICE") is a federal agency within DHS responsible for investigating and

2  enforcing immigration laws, including 8 U.S.C. § 1324a. DHS and ICE created the DHS/ICE

3  Guidance Letter regarding the DHS Final Rule that the SSA intends to send to employers along

4  with its "no-match" letters.

5       15.     Defendant Julie Myers is the Assistant Secretary of Homeland Security for ICE

6  and is responsible for all functions of ICE and its component organizations. She is sued in her

7  official capacity.

8       16.     Defendant Social Security Administration is a federal agency charged with

9  administration of the Social Security Act, and with processing tax information for the purpose of

10  administering the Social Security program. Defendant SSA maintains databases of tax

11  information and periodically generates "no-match" letters to employers that submit Forms W-2

12  to report employee earnings if employee names and Social Security Numbers do not match SSA

13  records. *See* 42 U.S.C. §432; 20 C.F.R. §422.120.

14       17.     Defendant Michael Astrue is the Commissioner of Social Security and is

15  responsible for all programs administered by the SSA. He is sued in his official capacity.

16  **FACTS**

17       18.     The Social Security Act of 1935 authorizes the SSA to establish a record-keeping

18  system to manage the Social Security program. Congress also granted SSA authority to process

19  tax information for purposes of administering the Social Security program, as a specific exception

20  to the exclusive tax authority of the Internal Revenue Service (IRS). *See* 26 U.S.C. §6103 (1)(5);

21  42 U.S.C. §432. Pursuant to that delegation of authority, the IRS and SSA created a joint system

22  for the processing of Forms W-2 called the Combined Annual Wage Reporting System (CAWR).

23  43 Fed. Reg. 60158 (Dec. 26, 1978) (codified at 26 C.F.R. §31.6051).

24

Complaint in Intervention Case No. 3:07-cv-04772(CRB)     8

1    19.    Under the CAWR, employers annually report employee earnings using Forms W-

2    2, and SSA posts those earnings to individual workers' Social Security records so workers will

3    receive credit for those earnings when they apply for Social Security. The SSA then forwards the

4    Forms W-2 to the IRS.

5    20.    If the SSA cannot match the name and Social Security Number (SSN) on a Form

6    W-2 with SSA's records, the SSA places the earnings report in its Earnings Suspense File. *See* 20

7    C.F.R §422.120.  The earnings remain in the Earnings Suspense File until SSA can link them to a

8    name and SSN.  Every year, the SSA receives millions of earnings reports that the SSA cannot

9    match with its records.  On information and belief, the Earnings Suspense File is a huge database

10    that contains more than 255 million unmatched earnings records and that is growing at the rate of

11    8 to 11 million unmatched records per year. About four percent of annual Form W-2 earnings

12    reports are placed in the SSA's Earnings Suspense File.  Although some mismatched SSA records

13    result from employees without work authorization using false SSNs, there also are many reasons

14    unrelated to immigration status for mismatched records. These include a) clerical errors by either

15    an employer or the SSA in spelling an employee's name or recording the SSN; b) the SSA's

16    issuance of duplicate SSNs or reissuance of SSNs of deceased individuals; c) employee name

17    changes after marriage or divorce; d) employees that use a less "foreign" sounding first name for

18    work purposes; and e) different naming conventions (such as the use of multiple surnames) that

19    are commonplace in many parts of the world, particularly in some Latin American and Asian

20    countries.

21    21.    The most recent Government Accountability Office (GAO) report on the SSA's

22    Earnings Suspense File concluded that the file "[c]ontains information about many U.S. citizens

23    as well as non-citizens" and that "the overall percentage of unauthorized workers is *unknown*."

24

1    GAO-06-814R, at 8 (emphasis added). When the SSA ultimately has been able to resolve data

2    discrepancies, "most... belong to U.S.-born citizens, not to unauthorized workers," which GAO

3    concluded "is an indication that a significant number of earnings reports in the [Earnings

4    Suspense File] belong to U.S. Citizens and work-authorized noncitizens." *Id.*

5         22.    As part of its administration of the Social Security program, SSA periodically

6    sends out letters, commonly known as "no-match" letters, informing employers that SSNs and

7    employee names reported on Forms W-2 did not match SSA's records. *See* 20 C.F.R. § 422.120.

8         23.    SSA no-match letters are purely advisory. SSA has no authority to sanction

9    employers that fail to respond to no-match letters.

10        24.    Pursuant to its regulations, SSA notifies the IRS of incomplete or inaccurate

11   earnings reports. 20 C.F.R. §422.120. In 1986, Congress authorized IRS to impose sanctions on

12   employers that submit false or inaccurate tax information. 26 U.S.C. §6721; *see also* 26 C.F.R.

13   §301.6721-1. Under IRS regulations, an employer is not subject to sanction if the employer

14   accurately and in good faith transmits the name and SSN provided by an employee. 26 U.S.C.

15   §6724(a); 26 C.F.R. §301.6724-1.

16        25.    Insofar as the Internal Revenue Code is concerned, a reasonable employer

17   response to a no-match letter is to confirm that the employer is accurately transmitting the name and

18   SSN provided by the employee and to advise the employee that SSA is reporting a no-match. *Id.*

19        26.    SSA is not an immigration agency and does not know whether a particular SSN

20   listed in a no-match letter relates to unauthorized work.   SSA also is prohibited by tax privacy

21   statutes from sharing the information in the Earnings Suspense File with the DHS. Until now,

22   SSA's no-match letters explained to employers: "This letter does not imply that you or your

23

24

Complaint in Intervention Case No. 3:07-cv-04772(CRB)                                      10

1   employee intentionally gave the government wrong information" and "makes no statement

2   regarding an employee's immigration status."

3        27.    Until now, the SSA has never included information from an immigration-

4   enforcement agency with its no-match letters.  The Immigration Reform and Control Act of 1986

5   ("IRCA") made it unlawful for employers to "to hire ... for employment in the United States an

6   alien knowing the alien is an unauthorized alien." 8 U.S.C. §1324a(a)(l)(A).

7        28.    IRCA also separately made it unlawful for employers to hire without complying with

8   an initial verification process established by Congress. 8 U.S.C. §1324a(a)(l)(B). That

9   verification process requires the employee to present the employer with documents to show proof

10  of identity and work authorization and requires the employer and employee to complete an 1-9

11  verification form.  8 U.S.C. §1324a(b); 8 C.F.R. §274a.2.

12       29.    IRCA also makes it unlawful for an employer "to continue to employ an alien ...

13  knowing the alien is (or has become) an unauthorized alien with respect to such employment." 8

14  U.S.C. §1324a(a)(2).

15       30.    IRCA specifically exempted workers hired before IRCA's enactment on November

16  6, 1986, from the hiring prohibition and the verification process. Pub. L. No. 99-603 § 101(a)(3),

17  100 Stat. 3359 (1986) (codified at 8 U.S.C. § 1324a note).

18       31.    Employers that violate IRCA are subject to civil and criminal liability. 8 U.S.C.

19  §1324a(e)(4)-(5),(f).

20       32.    At the same time that Congress imposed employer sanctions, Congress also

21  wanted to prevent employer discrimination based on national origin or citizenship status. IRCA

22  therefore makes it illegal for employers to discriminate based on national origin or citizenship

23  status, including by requesting "more or different documents than are required" for the initial 1-9

24

1    verification or "refusing to honor documents ... that on their face reasonably appear to be genuine,

2    for the purpose of discriminating on the basis of national origin or citizenship." 8 U.S.C.

3    §1324b(a)(l),(6).

4         33.    Congress deliberately chose not to impose ongoing re-verification requirements

5    after the initial hire, recognizing that the imposition of added expenses and duties on employers

6    beyond that involved in a prohibition against the "knowing" hiring or retention of unauthorized

7    workers might tempt more employers to avoid hiring noncitizens or persons of foreign national

8    origin in the first instance—a prospect Congress sought to avoid—and might also endanger the

9    support of the employer community, which has long opposed regulations making the hiring and

10   retention of employees more costly.

11        34.    Until now, neither DHS nor its predecessor immigration-enforcement agencies had

12   taken the position that an employer's failure to inquire into the work-authorization status of an

13   employee subject to an SSA no-match letter meant that the employer had knowledge that it was

14   employing an unauthorized worker. The Immigration and Naturalization Service had recognized

15   that no-match discrepancies occur for many innocent reasons and therefore consistently advised

16   employers in opinion letters that "[w]e would not consider notice of this discrepancy from SSA to

17   an employer by itself to put the employer on notice that the employee is unauthorized to work."

18        35.    On June 14, 2006, DHS gave notice of a proposed rule that would address the

19   responsibilities of employers that receive SSA no-match letters. More than 5,000 comments were

20   received by DHS during the 60-day comment period, including comments that disputed DHS'

21   authority to adopt the rule.  Plaintiffs UNITE HERE and _____ were among those who submitted

22   comments objecting to the rule.  The comment period closed on August 14, 2006.

23

24

1    36.    DHS issued a final rule on August 15, 2007 (hereinafter, the "DHS Final Rule").

2  The DHS Final Rule is entitled "Safe-Harbor Procedures for Employers Who Receive a No-Match

3  Letter," and is published at 72 Fed. Reg. 45611.

4    37.    The DHS Final Rule will amend the definition of "knowing" in 8 C.F.R.

5  §274a.1(*l*)(l), the regulatory subsection that purports to define the term "knowing" for purposes

6  of IRCA.  The amended regulation will list, as an example of an employer that has "constructive

7  knowledge" that an employee is an "unauthorized alien," an employer that receives a SSA no-match

8  letter and then "fails to take reasonable steps." The first part of the amended regulation will

9  provide:

10      (*1*)(1) The term *knowing* includes having actual or constructive knowledge....

11      Examples of situations where the employer may, depending upon the totality of

12      the relevant circumstances, have constructive knowledge that an employee is an

13      unauthorized alien include, but are not limited to, situations where the employer:

14      …

15      (iii) Fails to take reasonable steps after receiving information indicating that the

16      employee may be an alien who is not employment authorized, such as –

17      (B) Written notice to the employer from the Social Security Administration

18      reporting earnings on a Form W-2 that employees' names and corresponding

19      social security account numbers fail to match Social Security Administration

20      records ....

21

22    38.    Having created a threat of IRCA liability for employers receiving SSA no-match

23  letters by deeming receipt of a no-match letter to be evidence that the employer "know[s]" that

24  listed persons are unauthorized aliens, the DHS Final Rule then offers employers what it terms a

1    "safe harbor." An employer receiving a SSA no-match letter "will be considered by the

2    Department of Homeland Security to have taken reasonable steps - and receipt of the written

3    notice will therefore not be used as evidence of constructive knowledge - if the employer" takes

4    the actions specified by DHS.   These are "the only combination of steps that will guarantee that

5    DHS will not use the employer's receipt of the notices from SSA ... as evidence of constructive

6    knowledge that an employee is an unauthorized alien."  72 Fed. Reg. at 45618.

7         39.    To qualify for the DHS "safe harbor," an employer must check its own records

8    within 30 days of receipt of an SSA no-match letter to determine if the no-match was the result

9    of its own clerical error.  If the employer determines the no-match was not the result of its own

10   clerical error, it must instruct instruct an employee who claims the name and SSN are correct to

11   resolve the discrepancy with SSA within 90 days after the employer's receipt of the no-match

12   letter. If the employee is unable to resolve the discrepancy with SSA within that 90-day period,

13   the employer is prohibited from continuing to employ the worker unless the worker can complete

14   within three days a new immigration verification, on a new Form I-9, using only documents that

15   contain photo identification and no documents that contain the disputed SSN, even if the employee

16   still insists the SSN is correct.  The DHS "safe harbor" is thus structured so that employees are

17   guaranteed only 60 days to resolve the discrepancy with SSA, because the DHS rule gives the

18   employer 30 days to check its own records without notifying the employee, and only after this

19   initial step is complete need it advise the employee of the no-match.  (Indeed, because the

20   employer need not advise the employee immediately, but only reasonably promptly, at the end of

21   the 30-day period, employees will often have fewer than 60 days.)  If employees insist their

22   names and SSNs on their identification documents are correct but have not resolved the

23

24

1    discrepancy with SSA by the deadline, or cannot produce the required additional photo

2    identification, the employer would have to terminate them.

3          40.    DHS and SSA intend to send employers no-match letters that will be accompanied

4    by a letter from DHS and ICE (hereinafter the "DHS/ICE Guidance Letter"). The DHS/ICE

5    Guidance Letter states that it will "provide guidance on how to respond to the enclosed letter

6    from the Social Security Administration (SSA)… in a manner that is consistent with your

7    obligations under United States Immigration Laws."

8          41.    The DHS/ICE Guidance Letter contains questions and answers, which begin with

9    the following:

10          **Q:    Can I simply disregard the letter from SSA?**

11          **A:    No.** You have received official notification of a problem that may have significant

12                legal consequences for your employees. If you elect to disregard the notice you have

13                received and it is determined that some employees listed in the enclosed letter were not

14                authorized to work, the Department of Homeland Security (DHS) could determine that you

15                have violated the law by knowingly continuing to employ unauthorized persons. This could

16                lead to civil and criminal sanctions.

17          42.    After threatening employers with civil and criminal liability, the DHS/ICE Guidance

18    Letter then asks: **"Q: What should I do?"** and responds that "You should" follow the steps set

19    out in the DHS Final Rule.

20          43.    The DHS/ICE Guidance Letter assures employers that, if they follow those

21    procedures for every no-match, they will not be liable for discrimination if they terminate

22    employees:

23

24

**Q:      Will I be liable for discrimination charges brought by the United States if I terminate the employee after I follow the steps outlined above?**

**A:      No**

44.      SSA has revised its no-match letters so that they direct employers to follow the instructions in the accompanying DHS/ICE Guidance Letter.

45.      SSA and DHS intend to commence sending the revised no-match letters and the DHS/ICE Guidance Letter to employers imminently.  Prior to the TRO entered in this case, the SSA expected by November 9, 2007 to mail no-match letters to approximately 140,000 employers around the country.  Several million employees will be affected by this mailing.

46.      SSA will continue to mail additional batches of no-match letters after November 9, 2007, to numerous other employers.

47.      The DHS, by promulgating its Rule, intended to cause, and will cause, most of the 140,000 employers who receive no-match letters accompanied by the DHS/ICE Guidance Letter to alter their conduct so as to avoid civil or criminal penalty proceedings initiated by DHS, ICE, or the U.S. Department of Justice.  The investigation that recipient employers will be compelled to immediately perform will impose substantial administrative costs on employment.

48.      A substantial portion of the several million no-match SSNs that are listed in the initial round of SSA no-match letters will relate to U.S. citizens or non-citizens lawfully entitled to work. On information and belief, a substantial number of these workers are represented by the plaintiffs in this case, such as plaintiffs UNITE HERE Local 2 and UFCW Local 5.

49.      As a result of implementation of the DHS Final Rule, including the DHS/ICE Guidance Letter, lawfully employed workers will immediately be forced to expend time and effort to resolve SSA data discrepancies, including taking time off work without pay to visit SSA

1    field offices that are open only during business hours and that will be overwhelmed with similar

2    requests from other workers as well as the other business of the SSA.

3        50.    Many lawfully employed workers, including those employed by plaintiffs or their

4    local unions, will be unable to resolve data discrepancies with the SSA bureaucracy within the

5    60-day period provided for in the DHS Final Rule and will for that reason be terminated from

6    their jobs. SSA already has told DHS that in "difficult cases," SSA may be unable to resolve

7    discrepancies within the timeframe established by the Rule.

8        51.    Because plaintiffs have, in the past, devoted resources to representing lawfully

9    authorized employees wrongly discharged or threatened with discharge by reason of an

10   employer's receipt of a no-match letter, and because the DHS Final Rule is designed to induce,

11   and can be expected to induce, far more employers to use no-match letters as grounds for

12   terminating or threatening the termination of employees, the plaintiffs expect that if the Rule

13   goes into effect, plaintiffs will be required to expend more scarce resources on no-match issues

14   instead of on matters that would further their other legitimate objectives as representatives of

15   employees.

16                          **FIRST CLAIM FOR RELIEF**

17            **(Violation by DHS of 8 U.S.C. §1324a and 5 U.S.C. §706(2)(A))**

18       52.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

19   herein.

20       53.    The DHS Final Rule, on its face and as proposed to be implemented through the

21   DHS/ICE Guidance Letter, is inconsistent with the governing statute, 8 U.S.C. §1324a, because

22   it expands civil and criminal liability for employers based on a definition of "knowing" that is

23   inconsistent with that word's plain meaning and inconsistent with Congress' intent in IRCA in

24

1   limiting employer liability to "knowing" violations.  The DHS Final Rule, on its face and as

2   proposed to be implemented through the DHS/ICE Guidance Letter, is also inconsistent with the

3   governing statute because it establishes a duty to reverify the work authorization status of

4   continuing employees that is not consistent with Congress' intent to establish a system of

5   verification of work-authorization status only upon initial hire with no continuing duty to

6   investigate. The DHS Final Rule is agency action "not in accordance with law" and violates 5

7   U.S.C. §706(2)(A).

**SECOND CLAIM FOR RELIEF**
**(Violation by DHS of 5 U.S.C. §706(2)(A))**

8

9       54.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

10  herein.

11      55.     The DHS Final Rule, on its face and as proposed to be implemented through the

12  DHS/ICE Guidance Letter, is "arbitrary" and "capricious" agency action in violation of 5 U.S.C.

13  §706(2)(A), because it is predicated on a fiction to the effect that bare receipt of a no-match letter

14  by an employer constitutes evidence that each employee listed in such a letter is known by the

15  employer to be an unauthorized alien, and because it treats the receipt of an SSA no-match letter

16  as indicating a high probability that a mismatched SSN relates to unauthorized work when in fact

17  DHS does not know the probability that such an SSN relates to unauthorized work and did not

18  identify or rely on any evidence in the administrative record establishing that probability.

19      56.     The DHS Final Rule is also arbitrary and capricious because DHS failed to

20  engage in reasoned decision-making, inasmuch as the Rule lacks any rational connection

21  between facts relied upon and the choices made by the agency, and the agency—which for over a

22  decade had said, through its predecessor agencies, that an employee's appearance on a no-match

23  letter did not establish constructive knowledge that the listed employee was unauthorized—

24

1    reversed course in interpreting and applying 8 U.S.C. § 1324a without providing a sufficient

2    explanation for the reversal.

### THIRD CLAIM FOR RELIEF
**(Violation by DHS of 5 U.S.C. §706(2)(C))**

57.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

herein.

58.    The DHS Final Rule, on its face and as proposed to be implemented through the

DHS/ICE Guidance Letter, exceeds DHS' statutory authority, in violation of 5 U.S.C.

§706(2)(C), by seeking to impose immigration-law obligations on employers and employees in

responding to an SSA no-match letter.

### FOURTH CLAIM FOR RELIEF
**(Violation by DHS, ICE and SSA of 5 U.S.C. §706(2)(B) and Due Process Clause)**

59.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

herein.

60.    The DHS Final Rule and DHS/ICE Guidance Letter, and SSA's distribution of that

letter with its no-match letters, will impose unreasonable deadlines on employers and employees

and will cause some lawfully employed workers to be fired from their jobs without due process

because of erroneous government databases, and because SSA is not able to resolve a data

discrepancy by an arbitrary deadline. As such, Defendants' actions violate 5 U.S.C. §706(C) and

the Due Process Clause of the U.S. Constitution.

### FIFTH CLAIM FOR RELIEF
**(*Ultra Vires* Agency Action by DHS and ICE)**

61.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

herein.

62.     The DHS' Rule and DHS/ICE Guidance Letter are *ultra vires* actions in excess of statutory authority granted to DHS, ICE, and SSA by Congress.

## SIXTH CLAIM FOR RELIEF
### (Violation by DHS, ICE and SSA of 5 U.S.C. §706(2)(C))

63.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

64.     DHS, ICE, and SSA have no statutory authority to use the SSA tax information processing system in general, and the SSA no-match letters in particular, as tools for the enforcement of immigration laws.

65.     The plan by DHS, ICE, and SSA to include the DHS/ICE Guidance Letter to employers along with SSA no-match letters is agency action in excess of the statutory authority of DHS, ICE, and SSA, and therefore violates 5 U.S.C. §706(2)(C).

## SEVENTH CLAIM FOR RELIEF
### (*Ultra Vires* Agency Action by SSA, DHS, and ICE)

66.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

67.     DHS, ICE, and SSA have no statutory authority to use the SSA tax information processing system in general, and the SSA no-match letters in particular, as tools for the enforcement of immigration laws.

68.     The plan by DHS, ICE, and SSA to include the DHS/ICE Guidance Letter to employers along with SSA no-match letters exceeds the statutory authority of DHS, ICE, and SSA, and therefore each agency is acting *ultra vires* and in violation of the statutes delegating authority to those agencies.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that the Court:

1.      Enter a preliminary injunction, pending a decision on the merits, that enjoins Defendants from implementing the Department of Homeland Security rule entitled "Safe Harbor Procedures for Employers That Receive a No Match Letter," 72 Fed. Reg. 45611 (Aug.15, 2007), including by commencing the mailing of new SSA "no-match" letter packets that include the DHS/ICE Guidance Letter concerning the DHS Final Rule.

2.      Upon hearing the merits, enter a declaratory judgment that the DHS Final Rule is invalid and a permanent injunction to prohibit Defendants from implementing or otherwise giving effect to the DHS Final Rule.

3.      Award Plaintiffs their costs and expenses, including reasonable attorney's fees and expert witness fees; and

4.      Award such further and additional relief as is just and proper.

Respectfully submitted,

_____/s/_____

Matthew Ross (SBN 084703)
Philip Monrad (SBN 151073)
LEONARD, CARDER, LLP
1330 Broadway, Suite 1430
Oakland, CA 94612
Telephone:     (510) 272-0169
Facsimile:     (510) 272-0174
Email:          MRoss@leonardcarder.com;
                PMonrad@leonardcarder.com

Robert M. Weinberg
Leon Dayan
Jennifer L. Hunter
BREDHOFF & KAISER, PLLC
805 Fifteenth Street, NW, Tenth Floor
Washington, D.C. 20008

1

Telephone:    (202) 842-2600
Facsimile:    (202) 842-1888
Email:        LDayan@bredhoff.com;
              JHunter@bredhoff.com

2

3

*Attorneys for Plaintiff-Intervenors UFCW et al.*

4

5      Dated: September 14, 2007

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

# CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2007, I electronically filed the foregoing

**COMPLAINT IN INTERVENTION OF UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION, UNITED FOOD AND COMMERCIAL WORKERS LOCAL 5, UNITE HERE, and UNITE HERE LOCAL 2**

with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted below:

Ana L. Avendano
AFL-CIO
aavendan@aflcio.org

Danielle Evelyn Leonard
Altshuler Berzon LLP
dleonard@altshulerberzon.com

James B. Coppess
AFL-CIO
jcoppell@aflcio.org

Jonathan David Weissglass
Altshuler Berzon LLP
jweissglass@altshulerberzon.com

Linda Lye
Altshuler Berzon LLP
llye@altshulerberzon.com

Scott Alan Kronland
Altshuler Berzon LLP
skronland@altshulerberzon.com

Stephen P. Berzon
Altshuler Berzon LLP
sberzon@altshulerberzon.com

David Albert Rosenfeld
Manjari Chawla
Weinberg Roger & Rosenfeld
courtnotices@unioncounsel.net

Alan Lawrence Schlosser
ACLU Foundation of Northern California
aschlosser@aclunc.org

Jennifer C. Chang
ACLU Immigrants' Rights Project
jchang@aclu.org

Julia Harumi Mass, Esq.
American Civil Liberties Union of
Northern California
jmass@aclunc.org

Linton Joaquin
National Immigration Law Center
Joaquin@nilc.org

Lucas Guttentag
ACLU Immigrants' Rights Project
lguttentag@aclu.org

Marielena Hincapie
National Immigration Law Center
mhincapie@nilc.org

1  Monica Teresa Guizar                          Monica Maria Ramirez
   National Immigration Law Center               ACLU Immigrants' Rights Project
2  guizar@nilc.org                               mramirez@aclu.org

3  Omar C. Jadwat                                Daniel Benzing
   ACLU Immigrants' Rights Project               U.S. Dept. of Justice
4  ojadwat@aclu.org                              Daniel.Bensing@USDOJ.gov

5  Jonathan Unruh Lee                            Robert P. Charrow
   U.S. Attorneys Office                         Greenberg Traurig LLP
6  Jonathan.lee@usdoj.gov                        charrowr@gtlaw.com

7  Laura M. Klaus                                William J. Goines
   Greenberg Traurig, LLP                        Greenberg Traurig, LLP
8  klausl@gtlaw.com                              goinesw@gtlaw.com

9  Karen Rosenthal                               Cindy Hamilton
   Greenberg Traurig, LLP                        Greenberg Traurig, LLP
10 rosenthalk@gtlaw.com                          hamiltonc@gtlaw.com

11

12         I declare under penalty of perjury under the laws of the State of California that the
   foregoing is true and correct.

13         Executed at Oakland, California, on September 14, 2007.

14

15

16                                              /s/ Kris Paschall
                                                Kris Paschall
17                                              Legal Secretary

18

19

20

21

22

23

24