UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS, et al.,

Plaintiffs,

and

SAN FRANCISCO CHAMBER OF COMMERCE, et al.,

Plaintiffs-Intervenors

v.

MICHAEL CHERTOFF, Secretary of Homeland Security, et al.,

Defendants.

Case No. 07-4472 CRB

**DECLARATION OF JOHN SIMERMEYER**

I, John Simermeyer, declare and state as follows:

1. I am the Associate Commissioner for the Social Security Administration's (SSA) Office of Earnings, Enumeration, and Administrative Systems (OEEAS). OEEAS is the component in SSA that is responsible for providing the software and other Information Technology resources needed to support ongoing and new automation initiatives in SSA's enumeration and earnings processes, workload management and management information, and financial, human resources and other administrative activities of the Agency. Specifically, OEEAS develops, maintains, and

procures software systems that support SSA's process to correct earnings and employer information. The information set forth herein is based upon my personal knowledge and understanding of SSA's overall operations and upon information provided to me by SSA personnel with relevant knowledge.

2. An important part of SSA's mission is to maintain accurate records of earnings which are the basis for the computation of benefit payments, and SSA maintains earnings information on workers. Employers report wages to SSA on Form W-2 (Wage and Tax Statement); they report the worker's name, social security number (SSN), and the amount of wages paid to the worker in a tax year. If the employer's reports agree with our records, then SSA credits those wages to the worker's account.

3. For a certain number of wage reports SSA is unable to match the name and SSN on the Form W-2 with its records (no-match discrepancy) and is unable to attribute the earnings to an individual worker's record. There are a number of reasons why SSA cannot match employer's reported information with its records. These reasons include: typographical errors, unreported name changes, inaccurate or incomplete employer's records, or misuse of an SSN.

4. SSA attempts to resolve discrepancies between the employer's reports and SSA records by running the no-match items through a series of automated processes, hereinafter called "computer matching routines." These computer matching routines, most of which were developed prior to 1985, enable SSA to resolve discrepancies between its records and the employers' Form W-2 reports. SSA runs the computer matching routines before it sends any no-

match letters to employees or employers. The routines can resolve name discrepancies caused by misspellings, typographical errors, first name and last name transpositions, and female surname changes (e.g. marriage or divorce). The routines also can resolve discrepancies from the use of a derivative nick name instead of a proper name or from scrambling compound or hyphenated surnames. The routines can resolve SSN discrepancies such as simple numeral transpositions. The computer matching routines identify many, but not all, of these types of discrepancies. If SSA resolves the discrepancy, it will post the earnings to the appropriate worker's earnings record. If it does not resolve the discrepancy, SSA will send "no-match" letters to employers and employees.

5. Since 1979, SSA has sent letters to each worker whose reported name and SSN do not match its records (i.e., those no-matches that remain after running the computer matching routines) requesting the worker to supply corrected information. Generally, SSA sends these letters directly to employees, unless it does not have an accurate address, in which case a different version of the letter is sent to the employer.

6. In 1994, SSA began sending letters to employers advising them of no-matches. These "no-match" letters educate employers about no-matches and seek information needed for SSA to accurately post the earnings to the proper earnings record. The threshold for triggering the mailing of a no-match letter to employers has varied over the years. The current threshold is more than ten no-matches and more than 0.5% of items on the employer's wage report. In the

no-match letters, SSA requests the employer to respond by completing a W-2c for each affected worker for whom corrected information is available.

7. The numbers of wage reports and no-matches that SSA processes for a given tax year are significant. For example, for tax year 2003, SSA received approximately 234 million Form W-2 reports. Of those reports, approximately 20.7 million had name/SSN discrepancies. Through the computer matching routines, SSA resolved approximately 11.2 million of these discrepancies, leaving unresolved approximately 9.5 million, which resulted in SSA's sending out over 121,000 no-match letters to employers.

I hereby declare under penalty of perjury (28 U.S.C. § 1746) that the foregoing statement is true and correct to the best of my knowledge and belief. Executed this 18st day of September, 2007, in Baltimore, Maryland.

John Simermeyer