UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS, et al., <br><br>  Plaintiff, <br><br> and <br><br> SAN FRANCISCO CHAMBER OF COMMERCE, et al. <br><br>  Plaintiffs-Intervenors <br> vs. <br><br> MICHAEL CHERTOFF, Secretary of Homeland Security, et al., <br><br>  Defendants | Case No.: 07-4472 CRB <br><br> **SECOND DECLARATION OF JAMES C. SPERO** <br><br> Date: October 1, 2007 <br> Time: 2:30 p.m. <br> Place: Courtroom 10, 19th Floor <br> Hon. Charles Breyer |

Pursuant to 28 U.S.C. § 1746, I, James C. Spero, do hereby declare:

(1) I am the Acting Deputy Assistant Director of the Critical Infrastructure and Fraud Division, Office of Investigations, in United States Immigration and Customs Enforcement ("ICE"), which is a component of the United States Department of Homeland Security ("DHS"). My duties include overseeing operational and programmatic activities concerning the worksite enforcement of immigration laws by ICE. Prior to being appointed to my current position, I was the headquarters Unit Chief for the Identity and Benefit Fraud Unit and previously the Acting Assistant Special Agent in Charge in Washington, D.C., where I was responsible for managing ICE enforcement activities within that geographic location. As Acting Deputy Assistant Director, I have supervised significant ICE worksite enforcement operations from the headquarters level.

Second Declaration of James C. Spero - 1

(2) Among its numerous responsibilities, ICE is charged with the worksite enforcement of immigration laws in the United States. This obligation requires ICE to investigate the immigration status of various employees in the country and to assess whether or not those individuals are lawfully employed under the immigration laws. Furthermore, ICE investigates employers who knowingly hire or continue to employ individuals who are not authorized to work in the United States. Such activities may require ICE agents to lawfully enter an employer's premises to review its compliance with employment eligibility verification requirements as evidenced by its completion of Forms I-9 for each of its employees. Likewise, ICE can request that the employer voluntarily produce no-match letters as part of this I-9 audit or administratively subpoena the no-match letters when conducting an overt investigation.

(3) Employers annually send the Social Security (SSA) millions of earning reports (W-2 Forms) in which the combination of employees name and social security number (SSN) does not match SSA records. In some of these cases. SSA sends a letter, such as an 'Employer Correction Request', that informs the employer of the mismatch. The letter is commonly referred to as an employer 'no-match letter.

(4) The no-match letter advises the receiving employer that the name and social security numbers as reported by the employer on earnings data do not match the name and social security number that the SSA has on file. While there are legitimate reasons why an employee may have a no-match, such as a name change through marriage or divorce or a typographical error, ICE's enforcement experience indicates that no-match letters may also identify individuals who lack work authorization under the immigration laws who have provided false names or social security numbers.

(5) Implementing the regulation entitled "Safe-Harbor Procedures for Employers Who Receive a No Match Letter" will not result in DHS obtaining employer tax information or copies of no-match letters from SSA. One mechanism by which ICE may obtain no-match information directly from SSA is with the assistance of the Department of Justice through an *ex parte* order from a federal District Court under 26 U.S.C. § 6103(i).

(6) In certain circumstances, ICE is able to directly request no-match letter information from an employer. This is the case when ICE conducts Form I-9 audits or investigations, when ICE is involved in a civil or criminal investigation in which an administrative, civil, or Grand Jury subpoena is issued, ICE is able to request no-match letters from employers along with other employment related documents.

(7) During worksite enforcement investigations, ICE has identified employers who received no-match letters from SSA but who have taken no reasonable measures to resolve any discrepancies referenced in the letters. While ICE has not treated employers' receipt of no-match letters, standing alone, as conclusive proof that the employers had constructive knowledge that employees referenced in the letters are not authorized to work, ICE has consistently viewed failure by such employers to take any action to address the no-match as possible evidence that the employers know that the employees in question are not authorized to work in the United States.

(8) During the course of an I-9 audit or investigation, a cooperating defendant or informant may advise ICE that an employer received a no-match letter from SSA. ICE may then ask the employer to produce any such letters or, alternatively, ICE may: (i) file an application for an ex parte order authorizing their production; (ii) subpoena such letters; or (iii) execute a search warrant.

(9) SSA's no-match letters have been an important tool in many of ICE's enforcement cases. For example, in the investigation of Golden State Fence Company ("GSFC"), commenced in 2004, the agents conducting the investigation identified multiple instances of GSFC employing unauthorized workers. During the investigation, ICE discovered that the SSA had regularly notified GSFC of their payroll irregularities through no-match letters. Additional evidence and sworn statements revealed that corporate vice president Michael McLaughlin had direct knowledge of the company's practice of hiring unauthorized workers. ICE's case against the company's president Melvin Kay was based on evidence in the company's files, including no-match letters, that he had constructive knowledge of the company's illegal hiring practices.

(10) On December 15, 2006, Kay, and McLaughlin pleaded guilty to knowingly hiring unauthorized aliens in violation of 8 U.S.C. § 1324(a)(3)(A). On March 28, 2007, the United States District Court for the Southern District of California sentenced Kay and McLaughlin to a term of 3 years' supervised probation, 180 days' home confinement, and 1,040 hours of community service, and fined Kay $200,000 and McLaughlin $100,000 for the offense. The Court also sentenced GSFC to a term of 5 years' probation and required the company to forfeit $4.7 million dollars.

(11) Discrepancies in employees' social security numbers, and SSA's no-match letters, also played an important role in ICE's 2006 enforcement action against IFCO Systems ("IFCO"), a multinational logistics services provider with 140 locations worldwide and 57 locations in the United States. In that case, an SSA agent's analysis of employee social security numbers reported on Form W-2 statements in IFCO Systems North America's payroll records showed that 53.4% of the social security numbers contained in those records were either invalid, did not match the true name registered with the SSA for that number, or belonged to children or

deceased persons. ICE also learned, in the course of the investigation, that the SSA had transmitted at least 13 written notifications to IFCO's headquarters in Houston, TX in 2004 and 2005, notifying the company that there were discrepancies with the social security numbers that it had reported for each year. The notifications indicated for each year that more than 1,000 employee social security numbers did not match SSA's records.

(12) On April 19, 2006, ICE agents arrested several current and former IFCO managers, and executed search warrants at nine IFCO facilities, including the company's U.S. headquarters in Houston. Simultaneously, ICE agents conducted a worksite enforcement action at over 40 IFCO facilities nationwide. Five current and former IFCO managers were charged under the immigration laws, and on February 27, 2007, they pled guilty to various employment-related immigration crimes, including conspiracy to transport and harbor illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A) and knowingly employing unauthorized workers in violation of 8 U.S.C. § 1324a(a) and (f).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 18, 2007, in Washington, the District of Columbia.

James C. Spero
Acting Deputy Assistant Director
Fraud and Critical Infrastructure Protection
Office of Investigations
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security