Robert P. Charrow (CA SBN 44962)
Laura M. Klaus (DC SBN 294272) (*Admitted Pro Hac*)
Laura Foote Reiff (DC SBN 424579) (*Admitted Pro Hac*)
GREENBERG TRAURIG, LLP
800 Connecticut Avenue, N.W., Suite 500
Washington, D.C. 20006
Telephone:  (202) 533-2396
Facsimile:  (202) 261-0164
Email:  charrowr@gtlaw.com; klausl@gtlaw.com

William J. Goines (CA SBN 061290)
Karen Rosenthal (CA SBN 209419)
GREENBERG TRAURIG, LLP
1900 University Ave., 5th Fl.
East Palo Alto, CA  94303
Telephone:  (650) 328-8500
Facsimile:  (650) 328-8508
Email:   goinesw@gtlaw.com; rosenthalk@gtlaw.com

Counsel for Plaintiff-Intervenors

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

AMERICAN FEDERATION OF LABOR AND
CONGRESS OF INDUSTRIAL ORGANIZATIONS,
*et al.*,

       Plaintiffs,

       and

SAN FRANCISCO CHAMBER OF COMMERCE,
*et al.*,

       Plaintiff-Intervenors

     v.

MICHAEL CHERTOFF, *et al.*,

       Defendants.

CASE NO. C07-cv-04472-CRB

## REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION

## SUMMARY OF ARGUMENT

Defendants' response to the motions for preliminary injunction asks this Court to rewrite the judicial review provisions of the Administrative Procedure Act and the Regulatory Flexibility Act, to rewrite the government's rationale for the Final Rule at issue in this case, and to rewrite the record by supplementing it with irrelevant materials that were not included in the public docket for the rulemaking. Defendants also ask this Court to recast its Final Rule from a substantive rule to mere guidance or policy statements. The law of this Circuit precludes acceptance of these requests. The only no-match here is between the rulemaking record and defendants' response.

The centerpiece of defendants' response is its claim that the Final Rule really does nothing. According to defendants, it does not impose new burdens or requirements on employers or employees. Defendants therefore argue that plaintiffs lack standing because there is nothing to enjoin and they cannot be harmed when there is no change. For similar reasons, they argue that their certification under the Regulatory Flexibility Act was proper—if one was required at all. The Small Business Administration's Office of Advocacy disagrees. It recently advised Secretary Chertoff that the Final Rule "requires employers to take certain actions in response to receiving 'no match' letters that they were previously not required to take. Those requirements represent costs that should have been quantified by the agency in compliance with the RFA."

In fact, the Final Rule creates new evidentiary rules by transforming a Social Security Administration ("SSA") no-match letter into probative evidence of an employee's immigration status even though before the Final Rule, SSA no-match letter expressly made no statement about an employee's immigration status. DHS points to nothing to undermine this evidentiary metamorphosis. The Final Rule imposes on the employer an obligation to address no-match letters that it did not have before the Final Rule. DHS again points to nothing in the record to support its assertion that this is not a change. The Final Rule requires that employers and employees resolve no-match letters

1   within 93 days or terminate employees.  Once again, DHS points to nothing in record to support its

2   claim that this too is not a change.  Defendants' belief that compliance with the Final Rule is

3   voluntary is inconsistent with the law of this Circuit and others:  a choice between compliance or

4   prosecution is not voluntary; it is coercive.

5       Without defendants' "no change" mantra, all that is left is a substantive rule issued in

6   violation of the Regulatory Flexibility Act and Administrative Procedure Act.  Defendants violated

7   the RFA because they failed to provide any facts to support their assertion that the Final Rule would

8   not have a significant economic impact on substantial number of small entities.  Defendants violated

9   the APA by using the SSA no-match database as tool to enforce the immigration laws even though

10  SSA and the Government Accountability Office have expressly recognized that this database cannot

11  be used to establish a person's immigration status.  Finally, defendants argue, without the benefit of

12  evidence, that the Final Rule will help, not harm, plaintiffs.  The Business Plaintiffs have presented

13  cogent evidence through three declarations that the Final Rule, prior to the TRO, was having a direct

14  and immediate effect on businesses.  There is nothing speculative or remote about harm that has

15  already occurred.  The Final Rule should be enjoined.

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT ............................................................................... i

INTRODUCTION .............................................................................................1

ARGUMENT IN REPLY .....................................................................................2

I.    The Final Rule Imposes New Obligations and New
      Standards .............................................................................................3

II.   Business Plaintiffs Have Both Constitutional and Statutory Standing
      to Assert Their Administrative Law Claims and Those Claims
      Are Ripe ...............................................................................................5

III.  The Regulatory Flexibility Act Applies

      A.    DHS' Final Rule is a Substantive Rule.................................................9

      B.    DHS' Certification Fails to Satisfy the Requirements
            of the RFA..................................................................................10

IV.   Defendants' Assessment of the Relative Harm Caused by its
      Final Rule Lacks Any Support and Fails to Address Plaintiffs'
      Evidence.............................................................................................13

CONCLUSION................................................................................................14

1

**TABLE OF AUTHORITIES**

**Page**

2

<u>Cases</u>:

3

*Alvarado Comty. Hosp. v. Shalala*,

4

   155 F.3d 1115 (9th Cir. 1998), *amended on other grounds*,

   166 F.3d 950 (9th Cir. 1999) ............................................................................ 7

5

*American Bus Ass'n v. United States*,

6

   627 F.2d 525 (D. C. Cir. 1980) ...................................................................... 9

7

*Appalachian Power Co. v. EPA*,

8

   208 F.3d 1015 (D. C. Cir. 2000) .................................................................... 9

9

*Bowen v. Georgetown Univ. Hosp.*,

   488 U.S. 204 (1988) ......................................................................................... 9

10

*Chamber of Commerce of the United States of Am. v. Dep't of Labor*,

11

   174 F.3d 206 (D. C. Cir. 1999) .................................................................... 10

12

*Chamber of Commerce of the United States of Am. v. SEC*,

13

   443 F.3d 890 (D. C. Cir. 2006) .................................................................... 7

14

*Citizens to Preserve Overton Park v. Volpe*,

   401 U.S. 402 (1971) ....................................................................................... 1

15

16

*City of Los Angeles v. Lyons*,

   461 U.S. 95 (1983) ........................................................................................ 8

17

*City of Sauselito v. O'Neill*,

18

   386 F.3d 1186 (9th Cir. 2004) .................................................................. 6

19

*Colorado, ex. rel. Colorado State Banking Bd. v. Resolution Trust Corp.*,

20

   926 F. 2d 931 (10th Cir. 1991) ............................................................. 11,13

21

*Diamond v. Charles*,

   476 U.S. 54 (1986) ........................................................................................ 8

22

23

*Fed. Elec. Comm'n v. Akins*,

   524 U.S. 11 (1998) ........................................................................................ 6

24

*In Re Pomona Valley Med. Group*,

25

   476 F.3d 665 (9th Cir. 2007) .................................................................... 8

26

*Lake Mohave Boat Owners v. Nat'l Park Serv.*,

27

   78 F.3d 1360 (9th Cir. 1996) .................................................................... 5

28

*Lee v. State of Oregon*,
107 F.3d 1382 (9th Cir.), *cert. denied*, 522 U.S. 927 (1997)............................................. 8

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)............................................................................................................ 5

*M.G. Maher & Co., Inc. v. United States*,
2002 WL 2005839 (Ct. Int'l Trade 2002)..................................................................... 11,13

*Motor Vehicle Mfgs. Ass'n v. State Farm Mutual Auto. Ins. Co.*,
463 U.S. 29 (1983).............................................................................................................. 9

*National Ins. Co. v. Tidewater*,
337 U.S. 582 (1949)............................................................................................................ 2

*North Carolina Fisheries v. Daley*,
16 F. Supp. 2d 647 (E. D. Va. 1997) ............................................................................... 11

*Northwest Airlines, Inc. v. FAA*,
795 F.2d 195 (D. C. Cir. 1986)........................................................................................... 8

*Renal Physicians Ass'n v. HHS*,
489 F.3d 1267 (D.C. Cir. 2007) ............................................................................... 5,8,9,10

*Sequoia Orange Co. v. Yeutter*,
973 F.2d 752 (9th Cir. 1992), *amended on other grounds*,
985 F.2d 1419 (9th Cir. 1993) ........................................................................................... 9

*Walter O. Boswell Mem'l Hosp. v. Heckler*,
628 F. Supp. 1121 (D. D. C. 1985)..................................................................................... 6

*Washington Post v. Dep't of Homeland Security*,
459 F. Supp. 2d 61 (D. D. C. 2006)..................................................................................... 5

*Whitmore v. Arkansas*,
495 U.S. 149 (1990)............................................................................................................ 8


Statutes and Regulations

Administrative Procedure Act, 5 U.S.C. §§ 551-559, §§ 701-706
5 U.S.C. § 706............................................................................................................ 5
5 U.S.C. § 706(e) ....................................................................................................... 1

Regulatory Flexibility Act, 5 U.S.C. §§ 601-611
5 U.S.C. § 603.......................................................................................................... 12
5 U.S.C. § 604.......................................................................................................... 12
5 U.S.C. § 611 ........................................................................................................... 5

5 U.S.C. § 611(a)(4)................................................................................................... 13
5 U.S.C. § 611(a)(5)................................................................................................... 13

Executive Order 12866 § 2(f)(4)
    58 Fed. Reg. 51735 (Oct. 4, 1993)............................................................................ 1


Miscellaneous:

Letter from Thomas M. Sullivan, Chief Counsel for Advocacy, Small Business
    Administration to Secretary Chertoff, dated Sept. 18, 2007, available at
    http://www.sba.gov/advo/laws/comments/dhs07_0918.html ......................................... 12,13

W. Page Keeton, *et al.*, PROSSER & KEETON ON THE LAW OF TORTS
    (5TH ed. 1984)........................................................................................................... 4

John G. Roberts, Jr., *Article III Standing Limits on Statutory Standing*,
    42 DUKE L. J. 1219 (1993) ......................................................................................... 5

INTRODUCTION

This is a case arising under the Administrative Procedure Act ("APA") and the Regulatory Flexibility Act ("RFA") challenging the proprietary of a rulemaking by the Secretary of Homeland Security.  Defendants have raised the normal panoply of defenses--standing, ripeness and lack of irreparable injury.  Despite these usual fact-based defenses, this case is far from normal.  The agency is usually bound by the administrative record and is not free to fashion new evidence or develop new theories to support its position in litigation.  *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 419-20 (1971).  Here, rather than presenting the court with a certified record, as required by 5 U.S.C. § 706(e) ("the court shall review the whole record or those parts of it cited by the parties"), the government has assembled, filed and asked this Court to take judicial notice of one-half ream of documents that mostly predate the rulemaking.  These documents were submitted to enable the government to recast the history and motivation for the rule, none of which is contained in or supported by the Notice of Proposed Rulemaking ("NPRM").

This case is also unusual because the government's litigation position differs from its position during the rulemaking.  During rulemaking, the Secretary treated the Final Rule as a substantive rule, executing certifications that are only required of substantive rules.  The Secretary went so far as to describe the Final Rule as a "significant regulatory action" under Executive Order 12866 § 2(f)(4), 58 Fed. Reg. 51735, 51738 (Oct. 4, 1993).  During litigation, however, the Secretary has altered his stance and now regards the Final Rule as merely an "interpretive rule" not actually requiring notice-and-comment rulemaking.  Defendants now claim DHS went through the rulemaking process only "in the interest of transparency and good government."  *See* Defendants' Opposition ("Def. Opp.") at 41.

This case is unusual because during rulemaking the Secretary conceded that no-match letters are frequently innocent reflecting nothing more than an unreported name change following marriage

GREENBERG TRAURIG LLP

or inability to decipher foreign sounding or appearing names.  In litigation, however, the Secretary now claims that no-match letters "are frequently" the result of forged documents.  There is nothing in the record to support this assertion; the assertion is inconsistent with the position of the Social Security Administration which maintains the database.  The statement though does underscore the real character of the Final Rule which creates new evidentiary burdens and imposes new obligations on employers and employees.

Finally, this case is unusual because it splinters the normally cohesive government:  The Small Business Administration ("SBA") Office of Advocacy has advised the Secretary of Homeland Security that his certification under the RFA was improper and not supported by a factual basis.  SBA's Office of Advocacy has asked that the Final Rule be stayed until a proper RFA analysis or certification is undertaken.

### ARGUMENT IN REPLY

Each of the defenses offered by the government is rooted in its apparent belief that the Final Rule makes no change to existing law, imposes no new burdens on employers or employees, and is purely informational.  Thus defendants assert that plaintiffs cannot establish their standing because injunctive relief would provide no remedy since the Final Rule changes nothing and therefore, there is nothing to enjoin.  On the merits, defendants similarly argue that the RFA does not apply because the Final Rule changes nothing and therefore is not a substantive rule requiring an RFA analysis.  Finally, defendants believe that there can be no irreparable injury to plaintiffs, because its Final Rule does not change anything.  The basis for the government's belief is never articulated.  It seems to rest on the view that if it says something enough times, it must be true.  "[M]ere repetition of an inaccuracy [does not] beget[] truth."  *National Ins. Co. v. Tidewater*, 337 U.S. 582, 654 (1949).  That is the case here.

**I.     The Final Rule Imposes New Obligations and New Standards**

The Final Rule changes the legal landscape for employers and employees in at least three ways.  First, the Final Rule alters the significance and probative value of receipt of a Social Security Administration ("SSA") no-match letter.  Before the Final Rule, SSA's no-match letter expressly stated that receipt of such a letter made no statement about an employee's immigration status and therefore, had no probative value with respect to an employee's immigration status.  That letter stated:

> "**IMPORTANT**: This letter does not imply that you or your employee intentionally gave the government wrong information about the employee's name or Social Security number. **Nor does it make any statement about an employee's immigration status."**

Exh. D to Plaintiffs' Request for Judicial Notice in Support of Motion for a Temporary Restraining Order ("Notice Motion") (emphasis supplied).  SSA's view that a no-match letter had no probative significance was based on its recognition that discrepancies in its database are common and, in many cases, innocent.  A report by the Government Accountability Office ("GAO") on SSA's Earnings Suspense File ("ESF") concluded that SSA's database "[c]ontains information about many U.S. citizens as well as non-citizens" and that "the overall percentage of unauthorized workers is unknown."  Exh. Q to Notice Motion (GAO Report at 8).  When SSA ultimately has been able to resolve data discrepancies, GAO reported that "a significant number of earnings reports in the ESF still belong to U.S. citizens and work-authorized non-citizens."  *Id*.  The Final Rule changes this by imbuing a no-match letter with evidentiary significance that it did not possess in the past and not only that, it changes the significance of a no-match from "unknown" to "frequently" indicating fraud.  Def. Opp. at 9.  Indeed, following the Final Rule, DHS has stated that receipt of such a letter can put an employer on notice of a potential unauthorized work situation.  Exh. C to Notice Motion.  That is indeed a change and one not supported by the record.

GREENBERG TRAURIG LLP

Second, the Final Rule imposes an immigration-related duty on employers to investigate that previously did not exist. Prior to the Final Rule, DHS' predecessor advised that receipt of an SSA letter did not impose any obligation on the part of the employer to do anything. Reconciling no-matches "is not required by the INA (nor is it prohibited by it) . . ." Exh. G to Notice Motion. Under the Final Rule, however, employers now have an obligation to investigate. The DHS Letter expressly so states:

> **Q:    Can I simply disregard the letter from SSA?**
>
> **A:    No.** You have received official notification of a problem that may have significant legal consequences for you and your employees. If you elect to disregard the notice you have received and if it is determined that some employees listed in the enclosed letter were not authorized to work, the Department of Homeland Security (DHS) could determine that you have violated the law by knowingly continuing to employ unauthorized persons. This could lead to civil and criminal sanctions.

Exh. C to Notice Motion (emphasis in original). This is indeed a change.

Third, to complement this new duty, the Final Rule imposes a new standard of care on employers. This rule defines what it perceives to be reasonable behavior to discharge this new duty. The structure is analogous to the structure of any new tort, namely duty, standard of care and breach, except this one carries with it criminal ramifications. *See* W. Page Keeton, *et al.*, PROSSER & KEETON ON THE LAW OF TORTS § 30 (5th ed. 1984). The government defines "reasonable conduct" as seeking to reconcile a no-match letter within ninety days, and if unable to do that, requiring that an employee re-verify his or her work status within three days. If not resolved after ninety-three days, termination is required. There were no such time-limit requirements, no re-verification requirements, and no termination requirements for an unresolved no-match letter before the Final Rule.

Defendants characterize the standard of care as a "safe harbor" in order to show that compliance is purely voluntary. This is no defense.

1

2

3

4

5

> Voluntary or not, a safe harbor must achieve some useful purpose or an agency would not bother to create it, which suggests that every safe harbor has at least some substantive impact. The extent of this substantive impact turns on the scope of the risk associated with not using the safe harbor; the higher the risk, the more likely the safe harbor will attract regulated entities into its calm (litigation free) waters. If an agency uses a safe harbor to coerce parties toward a substantive result the agency prefers, and the safe harbor is voluntary in name only, then the agency is making substantive law.

6 *Renal Physicians Ass'n v. HHS*, 489 F.3d 1267, 1273 (D.C. Cir. 2007). This is indeed a change.

7 It is difficult to accept the government's position that it is merely attempting to help clarify

8

9 existing law when employers and employees alike find this "clarification" not only unhelpful, but

harmful. If the government were truly interested in helping, it would withdraw this Final Rule.

10

11 **II.    Business Plaintiffs Have Both Constitutional and Statutory Standing to Assert Their Administrative Law Claims and Those Claims Are Ripe**

12 Defendants argue, notwithstanding the law of this Circuit, that Business Plaintiffs lack

13

14 standing. *See Lake Mohave Boat Owners v. Nat'l Park Serv.*, 78 F.3d 1360, 1366 (9th Cir. 1996)

15 ("A regulated entity normally has standing to sue an agency to claim that the agency implemented

16 regulations in violation of the APA"). Business Plaintiffs have standing on two levels: statutory

17 standing to challenge the Final Rule under the RFA, 5 U.S.C. § 611, and under the APA, 5 U.S.C. §

18 706, and, independently, Article III standing.

19 Defendants have never challenged plaintiffs' statutory standing and that should end the

20

21 inquiry. The Supreme Court has recognized that Article III standing "may exist solely by virtue of

'statutes creating legal rights, the invasion of which creates standing.'" *Lujan v. Defenders of*

22 *Wildlife*, 504 U.S. 555, 578 (1992) (citation omitted). *See also* John G. Roberts, Jr., *Article III*

23

24 *Standing Limits on Statutory Standing*, 42 DUKE L. J. 1219, 1228 (1993). One injury to small entities

25 is the agency's failure to conduct the required regulatory flexibility analysis or to support its

26 certification with the necessary factual basis. This is an informational injury, no different than being

27 denied documents under the Freedom of Information Act, *Washington Post v. Dep't of Homeland*

28

GREENBERG TRAURIG LLP

1    *Security*, 459 F. Supp. 2d 61 (D.D.C. 2006), or campaign finance documents under the Federal

2    Election Campaign Act of 1971, *Fed. Elec. Comm'n v. Akins*, 524 U.S. 11 (1998).  Moreover,

3    Business Plaintiffs have standing to challenge the Final Rule on the merits under the APA.[1]  There is

4    no dispute that Business Plaintiffs are affected by the Final Rule.  Defendants, after all, argue that it

5    was initiated in order to respond to confusion in the business community.[2]  Defendants therefore

6    intended the Final Rule to affect the Business Plaintiffs.  Under the law of this Circuit, this is

7    sufficient to provide statutory standing.  *See City of Sausalito v. O'Neill*, 386 F.3d 1186, 1200 (9th

8    Cir. 2004).

9

10          In any event, Business Plaintiffs have Article III standing independently.  Defendants argue

11   that Article III standing is lacking because the injuries to Business Plaintiffs are speculative, not

12   immediate and not redressible.[3]  Defendants' argument that the injuries are speculative and not

13   imminent ignores the declarations.  The effects of the Final Rule are certain and its impact is being

14   felt now.  According to the declarants, some companies have already begun to put systems in place

15   in response to the Final Rule to identify and reconcile SSA no-matches.  Those policies include

16   instructions to terminate any employee with an unresolved no-match letter after ninety-three days

17   irrespective of that employee's work authorization status.  *See* Dickson Decl. at ¶¶ 7 (noting that one

18   company has created a series of web-based tutorials in anticipation of the implementation of the

---

[1]      Business Plaintiffs hereby adopt the APA-related arguments presented by the AFL-CIO plaintiffs in their reply.  Courts have consistently held that where an agency uses data to support a rule in a way not contemplated by those who created the data, the rule is by definition arbitrary and capricious.  *See Walter O. Boswell Mem'l Hosp. v. Heckler*, 628 F. Supp. 1121, 1125 (D.D.C. 1985).  This is precisely what DHS has done here.  SSA has consistently indicated that its no-match database cannot be used for immigration purposes, but is exactly what the Final Rule does.

[2]      Business Plaintiffs do not agree with defendants' new litigation rationale for its rulemaking. The Final Rule was designed to expand DHS' enforcement of the immigration laws by imposing new obligations on employees and employers.

[3]      Defendants also argue that plaintiffs' injury depends on a chain of events ending with an enforcement action by DHS and therefore its claims are not ripe.  Defendants misread plaintiffs' complaint.  The injury focuses on what is occurring now, and what will occur immediately upon implementation of the Final Rule no matter what any other government agency does with respect to enforcement.  *See* Complaint in Intervention, ¶¶ 53-36.

GREENBERG TRAURIG LLP

Final Rule), ¶ 9 (noting that another company has developed a full policy to go into effect if the Final Rule is effective that requires termination of employees if an SSA no-match letter cannot be resolved within ninety-three days). These costs are being incurred now and will only grow if the Final Rule becomes effective. Defendants do not deny that this is occurring; they simply choose to ignore it.[4] It is disingenuous to characterize something that is occurring in response to the Final Rule as speculative or not imminent.

Defendants' argument that the injunctive relief sought by the plaintiffs will neither cure nor preclude their alleged injuries rests either on their failure to recognize that the injury is informational (*i.e.*, failure to perform an RFA analysis) and procedural (*i.e.*, failure to justify its certification) or it relies on the mistaken belief that the Final Rule makes no changes. Even if the Final Rule imposed no additional requirements, it would still create informational and procedural injuries. Here, however, as noted, the Final Rule does impose additional requirements. Defendants simply choose to ignore them. Defendants instead speculate on why things will not be any different under its new scheme, but have pointed to nothing in the record or elsewhere to support their hypotheticals. The only speculation in this case is in defendants' response brief.

The cases relied upon by defendants to support their argument that Business Plaintiffs lack standing to challenge the Final Rule are inapposite or support standing here. None addresses first-party standing under the RFA. All but one is a third-party standing case where the perceived injury can only occur through the conduct or intervention of a third party. *See, e.g.*, *Whitmore v. Arkansas*, 495 U.S. 149 (1990) (denying standing to a third party seeking to challenge a death penalty when the

---

[4]     Defendants have improperly annexed two declarations to their submission, one from DHS and the other from SSA. Neither declarant challenged any of the facts detailed in the declarations attached to Business Plaintiffs' Motion for a Preliminary Injunction. Under the law of this Circuit, these declarations are irrelevant when considering the propriety of the rulemaking process. There is no need for judicial notice here. *See Alvarado Comty. Hosp. v. Shalala*, 155 F.3d 1115, 1124 (9th Cir. 1998) ("Of course, explanatory materials cannot be used to offer new rationalizations for agency action."). The same is true for all of the other extra-record documents tendered by defendants. *See Chamber of Commerce of the United States of Am. v. SEC*, 443 F.3d 890, 900-01 (D.C. Cir. 2006).

GREENBERG TRAURIG LLP

convicted party declined to challenge it); *Northwest Airlines, Inc. v. FAA*, 795 F.2d 195 (D. C. Cir. 1986) (denying standing to an airline challenging a certification decision for a pilot who was not a Northwest employee); *Diamond v. Charles*, 476 U.S. 54 (1986) (denying standing to a private party whose own conduct was neither implicated nor threatened by a criminal statute to challenge that statute where the state declined to participate); *Lee v. State of Oregon*, 107 F.3d 1382 (9th Cir. 1997), *cert. denied*, 522 U.S. 927 (1997) (involving a challenge by patients, physicians and others who feared that they were be injured by a misapplication of Oregon's Death with Dignity Act), and *Renal Physicians Ass'n*, 489 F.3d 1267 (denying standing to doctors who claimed that a Center for Medicare & Medicaid Services' safe harbor rule would cause third party institutional providers to pay them less). The only other case, *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), involved a civil rights plaintiff who was deemed to lack standing to challenge the city police's future use of a chokehold on him based solely on the fact that he had been subject to a chokehold in the past. There was no evidence to indicate that he would be subject to a chokehold in the future. Here, no one denies that plaintiffs are subject to the Final Rule now and neither they nor any third party need to engage in unlawful conduct for that Final Rule to apply to them.

Defendants also misunderstand the nature of plaintiffs' injury. Defendants argue that since the Final Rule makes no real changes, any fears or concerns or burdens existed under the prior scheme. This argument ignores two facts: (1) businesses were, in fact, spending time, money and effort to implement the Final Rule; and (2) businesses do not spend money unless they have to. Businesses have fiduciary duties to stockholders not to spend money unnecessarily. One must assume regularity unless there are facts presented to the contrary and the government has presented none. *See In Re Pomona Valley Med. Group*, 476 F.3d 665, 670 (9th Cir. 2007) (holding that businesses are presumed "to act prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company.").

GREENBERG TRAURIG LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GREENBERG TRAURIG LLP

### III.     The Regulatory Flexibility Act Applies

A.     DHS' Final Rule is a Substantive Rule

Defendants argue that the RFA does not apply because notice-and-comment rulemaking was not required here.  In their view, this Final Rule is merely an interpretive rule because it imposes no new requirements; it simply provides a safe harbor to employers and employees.  This argument need not detain the court long.  First, the argument clearly is a change in position.  Having engaged in notice-and-comment rulemaking, and having attempted to ring all the necessary bells, it is difficult to understand why the court should accept this litigation position.  *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212 (1988); *Motor Vehicle Mfgs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29 (1983); *Sequoia Orange Co. v. Yeutter*, 973 F.2d 752, 757 (9th Cir. 1992) (holding that where agency treats a rule as substantive, the agency is "bound . . . to follow the procedural dictates of the APA.").

Second, defendants appear to argue that a rule is necessarily interpretive if it imposes no new obligations on those outside the government.  This view of the substantive-interpretive rule dichotomy is simply incorrect.  A rule can be substantive because the agency treats it like a substantive rule, it affects those outside the government, or it restricts the discretion of those within the government.  *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1020-21 (D.C. Cir. 2000); *American Bus Ass'n v. United States*, 627 F.2d 525 (D.C. Cir. 1980).  Finally, one of the cases relied on by defendants expressly recognizes that a "safe harbor" even if "voluntary" is a substantive rule. *Renal Physicians Ass'n*, 489 F.3d at 1273.  Thus in *Renal Physicians* the court rejected the government's defense, put forward in this case as well, that a "voluntary" safe harbor cannot be a substantive rule.  *Id.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GREENBERG TRAURIG LLP

B.      DHS' Certification Fails to Satisfy the Requirements of the RFA

Defendants insist that DHS properly certified that the Final Rule has no significant economic impact on a substantial number of small entities because the Final Rule imposes no new requirements.  There are two problems with this argument.  First, the RFA does not depend on whether the rule imposes new requirements:  the certification language does not use the word "requirement" anywhere.  Instead, the RFA focuses on the cost of compliance and the overall impact of the rule.  Even if the Final Rule were purely voluntary, it still imposes costs.  *See Renal Physician Ass'n*, 489 F.3d at 1273.  But, this is not a voluntary rule.  Forcing a business to choose between compliance, on the one hand, or criminal and civil prosecution on the other, is hardly voluntary.  *See Chamber of Commerce  of the United States of Am. v. Dep't of Labor*, 174 F.3d 206, 210 (D.C. Cir. 1999) (holding that a choice of voluntarily adhering to certain standards or facing inspection, was neither voluntary nor a choice, but rather its "voluntary form" "is but a veil for the threat it obscures.").  DHS intended its Final Rule and its so-called "safe harbor" to affect behavior.  Under the RFA, DHS therefore had an obligation to qualitatively describe the effects of the Final Rule on small entities, to quantitatively assess those effects and to use that information in its factual basis for its certification that the Final Rule would not have a significant economic impact on those small entities.  Defendants cannot now argue that the rule has no effect when DHS failed to make any inquiry into the costs of compliance.  The mantra that "this is nothing new" is simply not enough and, under the RFA, irrelevant.

Second, as noted above and in the declarations attached to Business Plaintiffs' motion, the Final Rule does, in fact, impose a bevy of new requirements and costs on small entities.  Instead of addressing these obligations and the overall impact of the rule on small entities, the Secretary instead provided a one-sentence justification for why no regulatory flexibility analysis was required.  Defendants now argue that this one-sentence assertion compares favorably with other certifications

that have been upheld by other courts, but make no attempt to distinguish the many cases cited by

Business Plaintiffs demonstrating that nothing could be farther from the truth.[5]  The cases defendants

rely on are inapposite.  In *Colorado, ex rel. Colorado State Banking Bd. v. Resolution Trust Corp.*,

926 F.2d 931 (10th Cir. 1991), a pre-private right of action case cited at Def. Opp. at 46, the RTC

issued a rule overriding state banking laws to permit banks to acquire and operate failed savings and

loan institutions.  RTC certified that this rule would not have a substantial impact on a significant

number of small entities.  There, however, RTC explained that its rule imposed no compliance

requirements on any banks no matter what size, it imposed no performance standards, no fees, no

reporting or recordkeeping criteria, nor any other type of restriction or requirement.  It sought merely

to override state banking laws.  The plaintiffs were concerned that the relaxation of state laws would

have an adverse competitive impact on them.  *Id.*, 926 F.2d at 948.  That is not the case here.  The

only other case relied on by defendants, *M.G. Maher & Co., Inc. v. United States*, 2002 WL 2005839

(Ct. Int'l Trade 2002), involved a challenge to the Customs Service's imposition of a statute of

limitations for certain tax refunds.  Plaintiffs challenged the defendants' certification under the RFA

because they believed it would result in the denial of refunds involving a substantial amount of

money.  The court held that the argument misconstrued the focus of the RFA which was on the

"impact of compliance with the proposed rule on regulated small entities," not on the amount of

refunds at issue.  *Id.*  Here, the entire focus of the RFA claim is on compliance costs.  DHS engaged

in no inquiry into those costs and indeed, has argued that compliance costs are not relevant.  It

cannot have it both ways.

---

[5]     The only case defendants sought to distinguish was *No. Carolina Fisheries v. Daley*, 16 F. Supp. 2d 647 (E.D. Va. 1997).  This attempt misunderstands the purpose of the RFA and the facts of that case.  The RFA is intended to require agencies to evaluate the overall impact of a regulation and how small entities will respond in order to comply whether or not the agency perceives its rule is imposing a change.  In *No. Carolina Fisheries*, the rule at issue imposed no "new requirements" but could have nonetheless affected small entities.  That is why the court struck down the agency's perfunctory certification.  That same result is required here even though the nature of the change may be different in this case than it was in *No. Carolina Fisheries*.

GREENBERG TRAURIG LLP

GREENBERG TRAURIG LLP

Defendants suggest that the fault for failing to perform an RFA analysis lies with the business community not it.  Specifically, they argue that the business community failed to alert DHS of the need to perform an RFA analysis.  The RFA, however, imposes an obligation on the agency to comply with its provisions regardless of whether it receives any comments asking it to perform an analysis or certification.  *See* 5 U.S.C. §§ 603 & 604.  Nevertheless, the comments submitted to DHS alerted DHS to the issue.  The Associated Builders and Contractors, Inc. stated in its comments:

> The DHS is required under the Regulatory Flexibility Act and Paperwork Reduction Act to conduct an analysis of the proposed rule to substantiate any determination that a waiver from these administrative statutes is appropriate.  The substantial and blatant dismissal of these statutes for serious consideration is sufficient to challenge this regulation.

ICEB 2006-0004 Docket No. 0166.1 at 3-4 (Aug. 14, 2006) (footnotes omitted).  This was not an isolated comment.  *See, e.g.*, Comment of Plaintiff-Intervenor National Roofing Contractors Association, Docket No. 0176.1 at 5 (Aug. 14, 2006) (stating that "this proposal will impact small business negatively and disproportionately."); Plaintiff-Intervenor Chamber of Commerce of the United States of America, Docket No. 0135 at 3 (Aug. 14, 2006) ("Small businesses face even more hurdles to comply."); American Subcontractors Association, Inc., Docket No. 0159 at 2 (Aug. 14, 2006) (stating that the Final Rule "will have a significant economic impact on a substantial number of small entities, in violation of the Regulatory Flexibility Act.  The DHS assertion that this proposal would not mandate any new burdens or have a significant economic impact on small entities is not supported by any facts or data in the proposal and is unrealistic.").

These facts caused SBA's Office of Advocacy to write to Secretary Chertoff that "DHS improperly certified that the 'no match' rule would not have a significant economic impact on a substantial number of small entities . . . ."  Letter from Thomas M. Sullivan, Chief Counsel for Advocacy, SBA, to Secretary Chertoff, dated September 18, 2007, available at <http://www.sba.gov/advo/laws/comments/dhs07_0918.html> last viewed September 18, 2007.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GREENBERG TRAURIG LLP

SBA's Mr. Sullivan has offered to assist the Secretary in complying with his obligations under the RFA and has further recommended that the Secretary "stay the final rule pending completion of a proper RFA analysis." *Id.* at 3. This public letter from one federal agency to another in the midst of litigation is telling.[6]

## IV. Defendants' Assessment of the Relative Harm Caused by its Final Rule Lacks Any Support and Fails to Address Plaintiffs' Evidence

Whether irreparable harm exists is a fact-based inquiry and here, defendants have offered no facts. They have presumed, they have speculated, and they have made assumptions about employer and employee conduct. Def. Opp. at 50-51. None of their presumptions, speculations or assumptions is supported by evidence in the record or anywhere else. In contrast, Business Plaintiffs presented uncontroverted declarations that irreparable injury is currently occurring as a result of the rule and it will only grow if the Final Rule becomes effective.

Defendants offer one legal argument which is not only wrong, but contradicted by the cases they cited in their Opposition. Specifically, defendants argue, based on generation-old cases, that the cost of compliance is not irreparable harm. Def. Opp. at 51. These cases predate the RFA. Under the RFA, the harm relates directly to the cost of compliance. *See Maher & Co., Inc.*, 2002 WL 2005839 at *3; *Colorado, ex rel. Colorado State Banking Bd.*, 926 F.2d at 948. Under defendants' theory, no one could ever obtain an injunction under the RFA. The RFA states otherwise. *See* 5 U.S.C. §§ 611(a)(4), (5) (setting out the options in equity available to a court to remedy violations of the RFA).

Defendants suggest that a preliminary injunction will harm the public more than the plaintiffs. They rely on letters they claim to have received from employers seeking guidance and on SSA's need to send out no-match letters. First, defendants have presented no evidence that the employers

---

[6]     The timing of this letter is particularly unusual, coming after the regulatory process has ended.

1   seeking guidance anticipated the type of "help" that was provided in the Final Rule.  Moreover,

2   millions of businesses that are parties to this law suit through their associations are challenging the

3   "guidance" offered by the Final Rule.  Second, an injunction does not prevent SSA from sending out

4   no-match letters.  It would merely prevent SSA from including the DHS guidance letter in the

5   envelope and would preclude SSA from modifying its no-match letter to incorporate aspects of the

6   DHS Final Rule.  Defendants have provided no concrete examples of harm to it or the public in the

7   event the Final Rule is enjoined.

8

9                                   **CONCLUSION**

10          For the reasons set forth above, the Business Plaintiffs' Motion for Preliminary Injunction

11  should be granted.

12                                  Respectfully submitted,

13                                  /s/  Robert P. Charrow
                                    Robert P. Charrow (CA SBN 44962)
14                                  Laura Klaus (DC SBN 294272) (*Admitted Pro Hac*)
                                    Laura Reiff (DC SBN 424579) (*Admitted Pro Hac*)
15                                  GREENBERG TRAURIG, LLP
                                    800 Connecticut Avenue, N.W., Suite 500
16                                  Washington, D.C. 20006
                                    Telephone:  (202) 533-2396
17                                  Facsimile:  (202) 261-0164
                                    Email: charrowr@gtlaw.com; klausl@gtlaw.com and
18                                  reiffl@gtlaw.com

19                                  William J. Goines (CA SBN 061290)
                                    Karen Rosenthal (CA SBN 209419)
20                                  GREENBERG TRAURIG, LLP
                                    1900 University Ave., 5th Fl.
21                                  East Palo Alto, CA  94303
                                    Telephone:  (650) 328-8500
22                                  Facsimile:  (650) 328-8508
                                    Email:  goinesw@gtlaw.com; rosenthalk@gtlaw.com

23                                  Robin S. Conrad (DC SBN 342774) (*Pro Hac Pending*)
                                    Shane Brennan (DC SBN 456402) (*Pro Hac Pending*)
24                                  National Chamber
                                        Litigation Center, Inc.
25                                  1615 H Street, N.W.
                                    Washington, D.C. 20062
26                                  Telephone: (202) 463-5337
                                    Facsimile: (202) 463-5346
27                                  Email: RConrad@uschamber.com

28                                  Counsel for Plaintiff-Intervenors

GREENBERG TRAURIG LLP

1

## CERTIFICATE OF SERVICE

2

 I hereby certify that on September 25, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted below:

3

4

5    Ana L. Avendano                          Scott Alan Kronland
     AFL-CIO                                  Altshuler Berzon LLP
6    aavendan@aflcio.org                      skronland@altshulerberzon.com

7    James B. Coppess                         Leon Dayan
     AFL-CIO                                  Bredhoff & Kaiser
     jcoppell@aflcio.org                      LDayan@Bredhoff.com
8    Linda Claxton
     Ogletree, Deakins, Nash, Smoak &         David Albert Rosenfeld
9      Stewart P.C.                           Manjari Chawla
                                              Weinberg Roger & Rosenfeld
10   linda.claxton@ogletreedeakins.com        courtnotices@unioncounsel.net

11   Alan Lawrence Schlosser                  Jennifer C. Chang
     ACLU Foundation of Northern California   ACLU Immigrants' Rights Project
12   aschlosser@aclunc.org                    jchang@aclu.org

13   Julia Harumi Mass, Esq.                  Linton Joaquin
     American  Civil  Liberties  Union  of    National Immigration Law Center
14   Northern California                      joaquin@nilc.org
     jmass@aclunc.org
15
     Lucas Guttentag                          Marielena Hincapie
16   ACLU Immigrants' Rights Project          National Immigration Law Center
     lguttentag@aclu.org                      hincapie@nilc.org
17
     Monica Teresa Guizar                     Monica Maria Ramirez
18   National Immigration Law Center          ACLU Immigrants RightsProject
     guizar@nilc.org                          mramirez@aclu.org
19
     Omar C. Jadwat                           Daniel Bensing
20   ACLU Immigrants Rights Project           U.S. Dept. of Justice
     ojadwat@aclu.org                         Daniel.Bensing@USDOJ.gov
21
     Jonathan Unruh Lee
22   U.S. Attorneys Office
     jonathan.lee@usdoj.gov
23

24                                             By: /s/ Cindy Hamilton
                                                  Cindy Hamilton
25

26

27

28