Matthew Ross (SBN 084703)
Philip Monrad (SBN 151073)
LEONARD, CARDER, LLP
1330 Broadway, Suite 1430
Oakland, CA 94612
Telephone:    (510) 272-0169
Facsimile:    (510) 272-0174
Email:    MRoss@leonardcarder.com; PMonrad@leonardcarder.com

Robert M. Weinberg   (D.C. Bar No. 085530; admitted *pro hac vice*)
Leon Dayan           (D.C. Bar No. 444144; admitted *pro hac vice*)
Jennifer L. Hunter   (D.C. Bar No. 495827; admitted *pro hac vice*)
BREDHOFF & KAISER, PLLC
805 Fifteenth Street, NW, Tenth Floor
Washington, D.C. 20008
Telephone:    (202) 842-2600
Facsimile:    (202) 842-1888
Email:    LDayan@bredhoff.com; JHunter@bredhoff.com

*Attorneys for Plaintiff-Intervenors UFCW et al.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS; SAN FRANCISCO LABOR COUNCIL; SAN FRANCISCO BUILDING AND CONSTRUCTION TRADES COUNCIL; and CENTRAL LABOR COUNCIL OF ALAMEDA COUNTY,<br><br>        Plaintiffs,<br><br>    vs.<br><br>MICHAEL CHERTOFF, Secretary of Homeland Security; DEPARTMENT OF HOMELAND SECURITY; JULIE MYERS, Assistant Secretary of Homeland Security; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; MICHAEL ASTRUE, Commissioner of Social Security; and SOCIAL SECURITY ADMINISTRATION,<br><br>        Defendants. | Case No.: 07-04472(CRB)<br><br><br><br><br><br>**REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION OF PLAINTIFF-INTERVENORS UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION, UNITED FOOD AND COMMERCIAL WORKERS LOCAL 5, UNITE HERE, and UNITE HERE LOCAL 2** |

| | |
|---|---|
| 1 | SAN FRANCISCO CHAMBER OF COMMERCE, |
| 2 | CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, |
| 3 | GOLDEN GATE RESTAURANT ASSOCIATION, |
| 4 | NATIONAL ROOFING CONTRACTORS ASSOCIATION, AMERICAN NURSERY & |
| 5 | LANDSCAPE ASSOCIATION, INTERNATIONAL FRANCHISE |
| 6 | ASSOCIATION, and UNITED FRESH PRODUCE ASSOCIATION, |
| 7 | |
| 8 | Plaintiff-Intervenors, |
| 9 | v. |
| 10 | MICHAEL CHERTOFF, Secretary of Homeland Security; DEPARTMENT OF |
| 11 | HOMELAND SECURITY; JULIE MYERS, Assistant Secretary of |
| 12 | Homeland Security; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; |
| 13 | MICHAEL ASTRUE, Commissioner of Social Security; and SOCIAL SECURITY |
| 14 | ADMINISTRATION, |
| 15 | Defendants. |
| 16 | _____ |
| 17 | UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION; |
| 18 | UNITED FOOD AND COMMERCIAL WORKERS LOCAL 5; UNITE HERE; and |
| 19 | UNITE HERE LOCAL 2, |
| 20 | Plaintiff-Intervenors, |
| 21 | v. |
| 22 | |
| 23 | MICHAEL CHERTOFF, Secretary of Homeland Security; DEPARTMENT OF HOMELAND SECURITY; JULIE MYERS, |
| 24 | Assistant Secretary of Homeland Security; U.S. IMMIGRATION AND CUSTOMS |
| 25 | ENFORCEMENT; MICHAEL ASTRUE, Commissioner of Social Security; and |
| 26 | SOCIAL SECURITY ADMINISTRATION, |
| 27 | Defendants. |
| 28 | _____ |

Union Intervenors' Reply Brief in Support of Preliminary Injunction, Case No. C07-4472 CRB            2

Plaintiff-Intervenors United Food and Commercial Workers International Union, United Food and Commercial Workers Local 5, UNITE HERE, and UNITE HERE Local 2 (hereinafter the "Union Intervenors") adopt the arguments set forth in Plaintiffs' Reply Memorandum in Support of Motion for Preliminary Injunction ("Plaintiffs' Reply"). The Union Intervenors file this separate brief to highlight the fact that in addition to possessing both associational and organizational standing for the reasons discussed in Plaintiffs' Reply at Section V(A), Plaintiff-Intervenor UNITE HERE Local 2 ("Local 2") has organizational standing to seek a preliminary injunction because it is already facing documented threats to two hard-won collective bargaining provisions as a result of the Final Rule. This sort of concrete, imminent threat to a legally-protected interest, caused by the issuance of the Final Rule, and which would be redressed by the issuance of a preliminary injunction in this case, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992), is a quintessential example of the type of harm which confers standing.

As is set forth in the Declaration of Michael Casey ("Casey Declaration"), Local 2 recently negotiated a collective bargaining agreement with the San Francisco Multi-Employer Group (the "SFMEG"), a group of thirteen hotel employers which jointly employ approximately 4,000 employees represented by Local 2. This collective bargaining agreement, effective from 2006 until 2009, contains a provision protecting the employees covered by the agreement against being terminated solely on the basis of a no-match letter. Local 2 fought hard for this contractual protection because of its experience representing members who have been the subject of no-match letters. Local 2 has also negotiated similar provisions in collective bargaining agreements with two Marriott International, Inc. ("Marriott") hotels.

Within the first two weeks after the August 15 issuance of the Final Rule, Local 2 received letters from both the SFMEG and Marriott stating those employers' intention to stop complying with the collectively-bargained procedures, and instead to begin following the "safe harbor" procedures as soon as the Final Rule became effective. Specifically, on August 21, 2007, less than a week after the Final Rule was issued, the Senior Vice President and Deputy General Counsel of Marriott wrote to Local 2 stating that "[E]ffective September 14, 2007, employers will be *required* to comply with the new No-Match rule," and that as a result, "certain

of the immigration-related language contained in the recently negotiated contract … is no longer consistent with the law." Marriott letter, Exhibit 1 to Casey Declaration, at 1 (emphasis added). Marriott proposed that the parties meet to renegotiate the provisions or to sign a side letter altering the interpretation of the contractual provisions. *Id.* Eight days later, on August 29, counsel for the SFMEG wrote to Local 2 stating that, because failure to follow the "safe-harbor" procedures in the Final Rule could "result in a finding that an employer had constructive knowledge that an individual was not authorized by law to work in the United States," the SFMEG employers "*plan to act in accordance with the procedures specified by this new Federal Rule.*" SFMEG letter, Exhibit 2 to Casey Declaration, at 1 (emphasis added). SFMEG's counsel proposed adding language to the parties' collective bargaining agreement which would allow employers to follow the "safe harbor" procedures regardless of the existing, more employee-protective contractual no-match provisions. Only this Court's entry of the August 31 TRO, which has precluded the Final Rule from taking effect until October 1, has caused these employers to temporarily suspend their "plan[s] to act in accordance with the procedures specified by [the] new Federal Rule," and their concomitant plans to disregard the conflicting procedure in their contracts with Local 2.

These letters show that Local 2 will suffer at least three actual or imminent "injur[ies] in fact" as a direct result of the Final Rule's taking effect. *Lujan*, 504 U.S. at 559.

First, and most fundamentally, the employers' stated intentions to begin following the "safe harbor" procedures as soon as the Final Rule becomes effective mean that if a preliminary injunction does not issue, Local 2 will immediately lose the benefits of contract provisions it fought hard to win. There is no doubt that when the government takes action causing one party to a contract to repudiate or refrain from following a contractual obligation to another party to the contract, the party victimized by the repudiation has suffered a clear "injury"—loss of the contract right—that suffices to confer standing. *See Greene v. McElroy*, 360 U.S. 474, 493 n. 22 (1958) (employee alleging that government action caused his private employer to alter his contractual relationships with the employer had standing, as he was seeking to vindicate "a legally protected right to be free from arbitrary interference with private contractual

relationships"); *Idaho Power v. Fed. Energy Regulatory Comm'n*, 312 F.3d 454, 460-61 (D.C. Cir. 2002) (agency order that caused a company to lose the right to a ten-year duration provision in supply contract, and to operate under an 18-month provision, caused a cognizable "injury" conferring standing on company). That injury is, furthermore, an "immediate" injury. *Idaho Power*, 312 F.3d at 460.

It is plain, moreover, that this injury was caused by the challenged Final Rule and would be redressed by invalidation of that rule. The adoption of the Final Rule was the sole reason that Marriott and the SFMEG gave in their letters to Local 2 to justify their plan to follow the Final Rule's safe harbor procedure instead of the no-match procedures set forth in their contracts with Local 2. Nor is Local 2's standing defeated by the fact that third parties, Marriott and the SFMEG, will be the most immediate source of the harm to Local 2's contract rights; as just noted, those parties are taking the offending actions solely because of the coercive pressure placed on them by adoption of the Final Rule. See *Greene,* 360 U.S. at 492 n.22. See also *Bennett v. Spear*, 520 U.S. 154, 169 (1997) ("While, as we have said, it does not suffice if the injury complained of is 'th[e] result [of] the independent action of some third party not before the court,' that does not exclude injury produced by determinative or coercive effect upon the action of someone else.") (citations omitted). What is more, the Final Rule was designed for the precise purpose of inducing employers to follow the safe harbor procedures upon receipt of a no-match letter, so there is no room for the Government to argue that the actions of Marriott and SFMEG in response to the adoption of the Final Rule are not fairly traceable to the Rule.

Second, upon the Rule's becoming effective, Local 2 will suffer the type of "frustration of mission" and "diversion of resources" harms discussed in Plaintiffs' Reply at Section V(A), in that the Local will have to divert time and resources it would otherwise expend on representing its members to meeting with the employers to discuss the impact of the Final Rule on the contract provisions at issue. See *Fair Housing of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002); *El Rescate Legal Servs. v. Executive Office of Immigration Review*, 959 F.2d 742, 748 (9th Cir. 1991) (en banc).

Finally, in the less immediate future, but no less likely, if the Final Rule takes effect Local 2 will almost certainly lose the ability to negotiate employee-protective terms like those now in the SFMEG and Marriott collective-bargaining agreements with those employers and all other employers. This is because the Final Rule's promise of immunity from civil and criminal prosecution for employers that follow the "safe harbor" provisions will be so compelling to employers that Local 2, which obviously cannot promise employers immunity of any sort, will be impaired in its ability to persuade employers to agree to alternate procedures which would afford employees more protection. This sort of lost opportunity to successfully negotiate over an issue of concern is an injury in fact. *See Clinton v. City of New York*, 524 U.S. 417, 433-44 n. 22 (holding that claim that Presidential action distorted bargaining process by eliminating an otherwise available "bargaining chip" sufficed to state an injury-in-fact; and noting that "[w]e have held … that a denial of a benefit in the bargaining process can itself crate an Article III injury, irrespective of the end result."); *Competitive Enter. Inst. v. Nat'l Highway Traffic Safety Admin.*, 901 F.2d 107, 113 (D.C. Cir. 1990) (association representing consumers wishing to purchase large automobiles had standing to challenge fuel economy guidelines which would diminish auto makers' incentive to produce large vehicles because the "lost opportunity to purchase vehicles of choice is sufficiently personal and concrete").

For these reasons, Local 2 would suffer a concrete and immediate injury were the Final Rule to take effect, and Local 2 thus has standing to seek a Preliminary Injunction.

## CONCLUSION

For the foregoing reasons, and those set forth in the Union Intervenors' Motion for Preliminary Injunction, Plaintiffs' Opening Brief, and Plaintiffs' Reply Brief, a Preliminary Injunction should be granted.

Respectfully submitted,

_____/s/_____
Matthew Ross (SBN 084703)
Philip Monrad (SBN 151073)
LEONARD, CARDER, LLP
1330 Broadway, Suite 1430
Oakland, CA 94612
Telephone:    (510) 272-0169
Facsimile:    (510) 272-0174
Email:        MRoss@leonardcarder.com;
              PMonrad@leonardcarder.com

Robert M. Weinberg
Leon Dayan
Jennifer L. Hunter
BREDHOFF & KAISER, PLLC
805 Fifteenth Street, NW, Tenth Floor
Washington, D.C. 20008
Telephone:    (202) 842-2600
Facsimile:    (202) 842-1888
Email:        LDayan@bredhoff.com;
              JHunter@bredhoff.com

*Attorneys for Plaintiff-Intervenors UFCW et al.*

Dated: September 25, 2007